JAY EDELSON (Admitted *Pro Hac Vice*)
jedelson@edelson.com
RAFEY S. BALABANIAN (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
BENJAMIN H. RICHMAN (Admitted *Pro Hac Vice*)
brichman@edelson.com
CHANDLER R. GIVENS (Admitted *Pro Hac Vice*)
cgivens@edelson.com
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

SEAN P. REIS (SBN 184044)
sreis@edelson.com
EDELSON MCGUIRE LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

*Attorneys for Plaintiff* VIRGINA KULESA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRGINIA KULESA, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>PC CLEANER, INC., a California corporation,<br><br>*Defendant.* | Case No. 8:12-cv-00725-JVS-AN<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT PC CLEANER, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date: October 15, 2012<br>Time: 1:30 p.m.<br>Place: Courtroom 10C<br>    411 West 4th Street<br>    Santa Ana, CA 92701-4516<br><br>Judge: Honorable James V. Selna<br><br>Action Filed: May 4, 2012 |

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ....................... 4

    A.   **PCI Misrepresents PC Cleaner's Functionality Through Its Websites, Marketing Materials, and In-Software Statements** ......... 4

    B.   **Plaintiff Kulesa Relied on PCI's Fraudulent Misrepresentations and Purchased the Full Version of the PC Cleaner Software** ......... 5

    C.   **Plaintiff's Expert Exposes the True Nature of PCI's Software** ......... 6

    D.   **The Same Fraudulent Methods Are Used Throughout The Industry** ......... 6

III.   ARGUMENT ..................................................................... 7

    A.   **Plaintiff Amply Pleads Concrete and Particularized Injuries and Has Standing to Sue PCI** ......... 8

    B.   **Plaintiff has Satisfied Rule 9(b)'s Heightened Pleading Standard for Her Claims Grounded in Fraud** ......... 11

    C.   **PCI Cannot Disclaim Warranties Derived From the Express Representations Found In Its Advertising Materials, On Its Website and In the PC Cleaner Software Itself** ......... 13

        1.   *The PC Cleaner software is a "good" and not an intellectual property license under the UCC* ......... 14

        2.   *The End User License Agreement (EULA) cannot be considered because it has not been incorporated by reference* ......... 15

        3.   *PCI cannot disclaim the express representations made by its marketing and in-software statements* ......... 16

    D.   **Plaintiff's Contract-Based Claims Clearly Identify the Terms of the Contract and PCI's Breach** ......... 19

        1.   *Plaintiff pleads the existence of a valid and enforceable contract for her purchase of the PC Cleaner software from PCI, which PCI ultimately breached* ......... 19

        2.   *PCI also breached the implied covenant of good faith and fair dealing by frustrating Plaintiff's and the class's ability to obtain the benefits of their contracts for the purchase of PC Cleaner* ......... 20

IV.    CONCLUSION ................................................................ 21

# TABLE OF AUTHORITIES

**United States Supreme Court Cases:**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)..................................................................7

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007)................................................7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..............................................8-9

*Mass. v. E.P.A.*, 549 U.S 497 (2007)........................................................................8

*Sierra Club v. Morton*, 405 U.S. 727 (1972)...........................................................9

*Whitmore v. Ark.*, 495 U.S. 149 (1990) ....................................................................8

**United States Circuit Court of Appeals Cases:**

*Advent Sys. Ltd. v. Unisys Corp.*, 925 F.2d 670 (3d Cir. 1991)..............................14

*In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir.1999) .......................15

*Johnson v. Lucent Tech. Inc.*, 653 F.3d 1000 (9th Cir. 2011) ....................................7

*Kaplan v. Rose*, 49 F.3d 1363 (9th Cir. 1994)..........................................................12

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) .......................................12

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005).....................................................15

*Micro Data Base Sys., Inc. v. Dharma Sys., Inc.*, 148 F.3d 649 (7th Cir. 1998).......14

*Moore v. Kayport Package Express, Inc.*, 885 F.2d 531 (9th Cir. 1989) .................12

*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007)..........................................12

*RRX Indus., Inc. v. Lab-Con, Inc.*, 772 F.2d 543 (9th Cir. 1985).............................14

*Sanford v. MemberWorks, Inc.*, 625 F.3d 550 (9th Cir. 2010) .................................12

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
   806 F.2d 1393 (9th Cir. 1986)........................................................................12, 21

*Walling v. Beverly Enters.*, 476 F.2d 393 (9th Cir. 1973) ........................................12

**United States District Court Cases:**

*AB Avnet EMG v. Sierra Semiconductor Corp.*,
   No. C-93-0087-VRW, 1993 WL 280504 (N.D. Cal. July 9, 1993) ...............17

*Architectronics, Inc. v. Control Sys., Inc.*, 935 F.Supp. 425 (S.D.N.Y. 1996)..........15

*Bastion v. SpeedyPC, Inc.*, No. 3:12-cv-04730-LB (N.D. Cal.)............................2 n.3

*Bilodeau v. McAfee, Inc.*, No. 5:12-cv-04589-PSG (N.D. Cal.)..........................2 n.3

*Brooks v. ComUnity Lending, Inc.*, No. 07-cv-4501,
    2010 WL 2680265 (N.D. Cal. July 6, 2010) .....................................13

*Bros. v. Hewlett-Packard Co.*, No. 06-cv-02254-RMW,
    2007 WL 485979 (N.D. Cal. Feb. 12, 2007)............................................ 16-17

*Cont'l D.I.A. Diamond Prods., Inc. v. Dong Young Diamond Indus. Co., Ltd.*,
    No. C 08-02136 SI, 2009 WL 330948 (N.D. Cal. Feb. 10, 2009) .................15

*Coppes v. Wachovia Mortg. Corp.*, No. 10-cv-01689-GEB,
    2010 WL 4483817 (E.D. Cal. Nov. 1, 2010) ............................................15

*Dahlmann v. Sulcus Hospitality Technologies, Corp.*,
    63 F.Supp.2d 772 (E.D. Mich. 1999) ...............................................15

*ePresence, Inc. v. Evolve Software, Inc.*, 190 F.Supp.2d 159 (D. Mass. 2002) ........14

*F.D.I.C. v. GB Escrow, Inc.*, No. 11-cv-05318 ODW JCG,
    2011 WL 4550831 (C.D. Cal. Sept. 28, 2011)...........................................19

*Gross v. Symantec Corp., et al.*, Case No. 12-cv-0154-CRB,
    2012 WL 3116158 (N.D. Cal.)..............................................2, 2 n.3, 10, 15

*HRPT Properties Trust v. Lingle*, 676 F. Supp. 2d 1036 (D. Haw. 2009) .................8

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices,*
    *and Products Liability Litig.*, 754 F.Supp.2d 1145 (C.D. Cal. 2010) .........8, 10

*LaGarde v. Support.com*, No. 3:12-cv-00609-JSC (N.D. Cal.) .........................2 n.2

*Ledet v. Ascentive LLC*, No. 2:11-cv-00294-PBT (E.D. Pa.) ............................2 n.2

*Morey v. NextFoods, Inc.*, No. 10CV761 JM (NLS),
    2010 WL 2473314 (S.D. Cal. June 7, 2010) .......................................... 17-18

*Newcourt Fin. USA, Inc. v. FT Mortgage Cos.*,
    161 F.Supp.2d 894 (N.D. Ill. 2001) ...............................................14

*Nw. Pipe Co. v. Travelers Indem. Co. of Conn.*,
    No. C-02-04189JF, 2003 WL 24027882 (N.D. Cal. Feb. 12, 2003)...............19

*Pedroza v. RevenueWire, Inc.*,
    No. 2:12-cv-00183-MJP (W.D. Wash.) ...........................................2 n.3

*Phoenix Solutions, Inc. v. Sony Electronics, Inc.*,
    637 F. Supp. 2d 683 (N.D. Cal. 2009) ............................................14

*Sanders v. Apple Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009)..................................18

*Teknekron Customer Info. Solutions, Inc. v. Watkins Motor Lines, Inc.,*
No. C-93-03422 MHP, 1994 WL 11726 (N.D. Cal. Jan. 5, 1994) ................16

*Theis v. AVG Technologies USA, Inc.,*
No. 1:12-cv-10920-RGS (D. Mass.) ...............................................2 n.3

*TK Power, Inc. v. Textron, Inc.,* 433 F.Supp.2d 1058 (N.D. Cal. 2006) ..................14

*Wang v. OCZ Tech. Group, Inc.,* 276 F.R.D. 618 (N.D. Cal. 2011) ....................8, 10

*Webb v. Cleverbridge, Inc. et al,* No. 1:11-cv-04141(N.D. Ill.)...........................2 n.2

*Worley v. Avanquest N. Am., Inc.,*
No. 3:12-cv-04391-MEJ (N.D. Cal.)..........................................2 n.3

**State Court Cases:**

*Auto. Vending Co. v. Wisdom,* 182 Cal. App. 2d 354 (Cal. Ct. App. 1960)..............20

*Carma Developers (California), Inc. v. Marathon Dev. California, Inc.,*
2 Cal. 4th 342 (1992)...............................................................20

*Consolidated Generator-Nevada, Inc. v. Cummins Engine,*
971 P.2d 1251 (Nev. 1998) .......................................................17

*Fundin v. Chicago Pneumatic Tool Co.,*
152 Cal.App.3d 951 (Cal. Ct. App. 1984)................................... 16-18

*Keith v. Buchanan,* 173 Cal. App. 3d 13 (Cal. Ct. App. 1985) .....................16 n.7

*Love v. Fire Ins. Exch.,* 221 Cal. App. 3d 1136 (Cal. Ct. App. 1990)......................20

*Murray v. D&J Motor Co. Inc.,* 958 P.2d 823 (Okla. Civ. App. 1998) ............. 16-17

*Olcott Int'l & Co., v. Micro Data Base Sys., Inc.,*
793 N.E.2d 1063 (Ind. App. 2003)...........................................15

*Perdue v. Crock Nat'l Bank,* 38 Cal. 3d 913 (1985) .................................20

**Statutory Provisions & Other Authorities:**

B.E. Witkin, *Summary of Cal. Law, Sales* § 79 (9th ed. 1987) .................17

Cal. Civ. Code § 1668 ....................................................18 n.8

Cal. Civ. Code § 3294 .....................................................20 n.9

Cal. Com. Code § 2105 .........................................................13

Cal. Com. Code § 2313 ..........................................13, 16 n.1, 20

Cal. Com. Code § 2316 .............................................16, 18

# I.    INTRODUCTION

This case challenges Defendant PC Cleaner, Inc.'s ("PCI" or "Defendant") fraudulent design and marketing of its PC Cleaner Pro software ("PC Cleaner"). Through its marketing materials—found on its website and in the software itself—PCI misrepresents PC Cleaner's functionality and, ultimately, tricks consumers into purchasing the full version of the software. Here's how it works:  A consumer looking to enhance the speed and performance of his or her computer, or cure any number of defects, will encounter Defendant's advertising materials online promising to do just that. PCI then offers a free "scan" that purports to provide a preliminary assessment of the health and security of the consumers' computer, but which invariably overstates and exaggerates the existence of errors and security risks to the system. The sum total of these (mis)representations is to make the consumer think that their computer is at risk or otherwise in need of repair and thus, that they must purchase the full version of the software to address the identified issues.

In the end, neither the free scan nor the full version of PC Cleaner functions as advertised (i.e., accurately detecting, identifying and removing harmful errors, protecting users' privacy, improving a computer's efficiency and performance, and increasing a computer's overall stability). Instead, Defendant intentionally designed the software to exaggerate the health and security risks to any computer, no matter what. As a result, Plaintiff Virginia Kulesa ("Kulesa" or "Plaintiff") and the putative class she seeks to represent, have all been damaged by PCI's conduct in that they were all tricked into paying for software that doesn't perform the beneficial tasks that it says it does, and thus, isn't worth the price they paid.

PCI now seeks dismissal of Plaintiff's First Amended Complaint ("FAC"), arguing primarily that Plaintiff lacks standing because she supposedly fails to allege a concrete and particularized injury. Defendant bases this argument almost entirely on

a recent opinion issued by Judge Feess in a similar class action pending against one of Defendant's industry competitors, *Parker v. Iolo Technologies, Inc.*, in which that court dismissed a complaint with similar allegations. Not unlike the defendant in *Parker*, here PCI argues that because the FAC resembles other complaints filed by Kulesa's counsel against its competitors, the allegations lack credibility.

Citing *Parker*, however, only tells half the story. It doesn't explain why District Judge Breyer and Magistrate Judge Corley from the Northern District of California both found nearly identical allegations—in the face of nearly identical arguments, including those attacking similar research conducted by Plaintiff's consulting expert—sufficient to state claims similar to those alleged here. *See Gross v. Symantec Corp., et al.*, Case No. 12-cv-0154-CRB, 2012 WL 3116158 (N.D. Cal. July 31, 2012); *LaGarde v. Support.com, Inc., et al.*, Case No. 3:12-cv-00609-JSC (N.D. Cal.).[1] The *Parker* opinion also doesn't explain how the software industry is riddled with fraudulent representations regarding the functionality of software of this sort, and this is but one of nearly a dozen class actions pending in state and federal courts across the country dealing with similar issues, many of which have settled,[2] and with the exception of *Parker*, the rest of which are being actively litigated.[3] Thus, that the complaint here resembles others pending against PCI's industry partners is the product of an industry gone wrong. Pointing the finger at plaintiffs (or their

---

[1]   Although the Court ultimately dismissed the complaint with leave to replead, it took no issue with the sufficiency of plaintiff's standing to sue under the circumstances—nearly identical to those presented by this case.

[2]   *See LaGarde v. Support.com*, No. 3:12-cv-00609-JSC (N.D. Cal.) (awaiting preliminary approval of settlement); *Webb v. Cleverbridge, Inc. et al*, No. 1:11-cv-04141, N.D. Ill. (preliminarily approved on August 23, 2012); *Ledet v. Ascentive LLC*, No. 2:11-cv-00294-PBT (E.D. Pa.) (preliminarily approved on August 29, 2012).

[3]   *See Bastion v. SpeedyPC, Inc*. No. 3:12-cv-04730-LB (N.D. Cal.); *Bilodeau v. McAfee, Inc*., No. 5:12-cv-04589-PSG (N.D. Cal.); *Pedroza v. RevenueWire, Inc.*, No. 2:12-cv-00183-MJP (W.D. Wash.); *Theis v. AVG Technologies USA, Inc*., No. 1:12-cv-10920-RGS (D. Mass.); *Worley v. Avanquest N. Am., Inc.*, No. 3:12-cv-04391-MEJ (N.D. Cal.).

lawyers) for bringing these systemic abuses to light, while an understandable tactic, is just a distraction.

What actually matters is that PCI's argument claiming the FAC lacks a concrete and particularized injury ignores its plain allegations. Indeed, Kulesa expressly pleads that she viewed PCI's representations about its PC Cleaner software, followed PCI's directions to download a free trial version of the software, ran a "free diagnostic scan" using the software, and relied upon the ominous, exaggerated, and ultimately false feedback she received regarding the status of her computer by purchasing a full version of the software—software that had a significantly diminished value (i.e., it could not perform as PCI advertised).

PCI also takes aim at Plaintiff's fraud-based claims, asserting that they lack particularity under Rule 9(b) and attacks Plaintiff's express warranty claim because the sale of PC Cleaner is, to hear Defendant tell it, not a "sale of goods" under the California Commercial Code. PCI also contends that the FAC fails to adequately identify a breach of express warranty, breach of contract, or breach of the implied covenant of good faith and fair dealing, and asserts that the supposed End User License Agreement ("EULA") between the Parties bars all express or implied warranties through a disclaimer.

None of these arguments justify dismissal. Despite what PCI says, Plaintiff has pled facts satisfying all of the elements of her claims and has detailed the who, what, where, when and how of PCI's false statements, in full satisfaction of Rule 9(b)'s heightened pleading standard. Likewise, PCI's argument that its software isn't a "good" is just wrong. Courts throughout the country have consistently held that consumer software products like the PC Cleaner software here are "goods" within the meaning of the U.C.C., including California's Commercial Code.

PCI's disclaimer arguments also fail. As an initial matter, it would be inappropriate for the Court to take judicial notice of or consider the EULA as part of Defendant's motion to dismiss because Plaintiff does not reference, incorporate, or rely upon the EULA in her FAC. But even if the Court were to take the EULA into consideration, it changes nothing—PCI cannot waive the explicit representations it made about the software's supposed functionality on its website and within the software, which provide the basis for the bargain between the Parties. Accordingly, Plaintiff has more than adequately pled the existence of a contract, the agreement's express terms and warranties, and Plaintiff's reliance upon the contract and PCI's breach. As such, Plaintiff's claims for breach of contract, breach of express warranties, and breach of the implied covenant of good faith and fair dealing should stand as well.

For these reasons and as explained further below, the Court should deny PCI's motion to dismiss in its entirety.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   PCI Misrepresents PC Cleaner's Functionality Through Its Websites, Marketing Materials, and In-Software Statements.

Founded in 2001, PCI markets itself as a software company dedicated to "improving and maximizing [the] true potential" of consumers' computers. (First Amended Complaint, Dkt. No. 39 [cited as "FAC"] ¶ 13.) Through its websites and marketing materials, PCI represents that its premier software product—PC Cleaner Pro—is capable of providing numerous functions, such as: fixing PC errors, removing malicious programs, protecting user privacy, and boosting computer performance. (*Id.* ¶¶ 14-19.) To convince consumers of the software's supposed utility, and to encourage consumers to purchase the full version of PC Cleaner, PCI recommends consumers download a trial version of PC Cleaner and conduct a "free diagnostic scan" to detect issues and other problems existing on their computers.

(FAC ¶ 21.) After the user does so, the "free diagnostic scan" invariably reports the existence of numerous errors and other problems on the computer. (*Id.* ¶ 24.) PCI further represents that these errors, often characterized as "Critical" and requiring "immediate attention," can be "fixed" if the consumer simply purchases the full version of the software. (*Id.* ¶¶ 25-26.)

Despite PCI's representations, however, the free trial version of PC Cleaner does not accurately identify computer errors and problems on a user's computer. Instead, by intentional design, the program misrepresents and exaggerates the severity and existence of errors and problems on a consumer's PC so as to induce them to purchase the full version of the software. (*Id.* ¶¶ 27-29.) Further, once purchased, the full version of the software operates in a nearly identical and deceptive manner so as to lull the consumer into a false sense of security that the software is functioning as advertised. Since the full version is designed in the same deceptive manner, it is also incapable of repairing the reported errors and problems, or otherwise functioning as advertised. (*Id.* ¶ 30.)

**B.     Plaintiff Kulesa Relied on PCI's Fraudulent Misrepresentations and Purchased the Full Version of the PC Cleaner Software.**

In early 2011, Plaintiff Kulesa searched the Internet for software to repair problems on her PC and came across an advertisement for PCI's "PC Cleaner." (*Id.* ¶¶ 32-33.) Plaintiff viewed PCI's representations in its advertisements and on its website—specifically that the software would truthfully scan and fix computer errors, protect her privacy, and speed up her computer—and downloaded a trial version of the PC Cleaner software to run a "free diagnostic scan." (*Id.* ¶¶ 34-35.) After performing the "free scan" on Plaintiff's PC, the software reported that the PC had numerous "Critical" errors and other problems, and that its "Performance" and "Security" levels were "in the red." (*Id.* ¶ 35.) The software further reported that in order to fix these problems, Plaintiff would need to purchase a full version of PC

Cleaner, conveniently available through the "Fix All" button displayed on the screen. (FAC ¶ 36) As a result of and based on these representations, Plaintiff clicked on the "Fix All" button within the software and was directed to a website, whereupon she was directed to purchase and download the full version of PC Cleaner for $39.95. (*Id.*) Plaintiff later discovered that the full version of the PC Cleaner software could not and did not perform as advertised. (*Id.* ¶ 38.)

### C.   Plaintiff's Expert Exposes the True Nature of PCI's Software.

Plaintiff, acting through her counsel, subsequently engaged a computer forensic expert to examine both the trial and full versions of PC Cleaner. (*Id.* ¶ 28.) The expert ran a series of diagnostic tests in a controlled environment and determined that PCI had intentionally designed its software to invariably, and deceptively, report that the computer's "Security" and " Performance" levels were red, and that "Critical" errors exist on the system. (*Id.* ¶¶ 49-50.) Plaintiff's expert also discovered that PCI programmed both the free and full versions of its software to (i) always identify problems on a user's computer (even where none exist), (ii) artificially inflate the number of errors detected on a user's computer, (iii) characterize innocuous files as errors, (iv) arbitrarily report that the user's "Security" and "Performance" are low without any credible assessment of these issues, (v) arbitrarily characterize individual errors as "Critical," and (vi) prevent users from exiting the software without purchasing the full version. (*Id.* ¶ 29.)

### D.   The Same Fraudulent Methods are Used Throughout the Industry.

Unfortunately for consumers, PCI is not alone in its use of the sorts of fraudulent programming design and marketing practices at issue in this case. Rather, the utility software industry has been fraught with these unscrupulous practices for over a decade. It is only recently, however, that consumers have caught on and software developers—like PCI and its competitors—have been called to account for

the fraudulent ways in which they profit off the legitimate fears of average consumers (who are also unable to identify the fraudulent technological design and methodologies underlying this type of supposedly performance enhancing software).

Indeed, numerous lawsuits have been filed against well-known competitors of PCI (e.g., Symantec Corp. and McAfee, Inc.)—including several by Plaintiff's counsel here—alleging similar claims related to the fraudulent design and marketing of so-called utility software products. However, contrary to PCI's unfounded assertions that Plaintiff's counsel have conducted "a failed attempt to attack the software industry," several of those cases have resulted in classwide settlements and industry-changing modifications to the software products at issue—making their detection, reporting and repairing mechanisms far more transparent and accurate when it comes to threats posed by existing errors on computers. With the exception of *Parker v. iolo*, the cases that haven't settled are actively being litigated.

Rather than make the necessary changes to its software so that it *actually* detects, reports and repairs harmful errors and problems on users' PCs, however, PCI has remained steadfast in its fraudulent conduct and, to this day, continues to profit from it.

## III. ARGUMENT

"On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Johnson v. Lucent Tech. Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011). While federal pleading standards require more than "formulaic recitation of the elements" of a claim or "naked assertions," a complaint survives dismissal where it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550

U.S. 554, 555-57 (2007)). As explained below, Plaintiff's FAC readily meets and exceeds these standards.

### A.   Plaintiff Amply Pleads Concrete and Particularized Injuries and Has Standing to Sue PCI.

PCI first argues that Plaintiff has supposedly failed to allege facts establishing that she suffered a concrete and particularized injury such that she has standing to sue. (*See* Defendant's Motion to Dismiss the FAC ("Def. Mot.") 6.) Specifically, PCI claims that Plaintiff lacks standing because the FAC doesn't allege that PC Cleaner actually failed to "improve the performance of her computer," "repair errors," or "protect the computer from security risks," and thus, fails to "demonstrate injury resulting from [Plaintiff's] purchase." (Def. Mot. 6-7.) That argument ignores the plain language of the FAC, as Plaintiff makes these very allegations.

To show standing, Plaintiff must "demonstrate that [she] has suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that injury." *Mass. v. E.P.A.*, 549 U.S 497, 517 (2007); *see Whitmore v. Ark.*, 495 U.S. 149, 154 (1990). But, even though the burden of establishing standing lies with the party asserting federal jurisdiction, "the manner and degree of evidence necessary to meet this burden varies depending on the stage of litigation." *HRPT Properties Trust v. Lingle*, 676 F. Supp. 2d 1036, 1042 (D. Haw. 2009) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* (internal citations and quotations omitted). The "precise dollar value of [ ] losses" is not required at the pleading stage, so long as the plaintiff "allege[s] a tangible loss that can be proved or disproved upon discovery." *Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618, 625 (N.D. Cal. 2011) (citing *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litig.*,

754 F.Supp.2d 1145, 1166 (C.D. Cal. 2010)). Here, Kulesa's injuries readily meet the requirements for standing at this stage of the litigation.

First, Kulesa repeatedly makes specific allegations that the PC Cleaner software she purchased failed to perform the beneficial tasks as represented (i.e., that it failed to improve performance or repair errors and threats to her computer) and resulted in economic injury in the amount of the money she paid for software that did not work as advertised (the specific injury). (FAC ¶¶ 38, 62, 73, 80, 88, 98.) (*See, e.g.,* FAC ¶ 38) ("The full version of the PC Cleaner software that Kulesa purchased could not and did not perform as advertised…and was incapable of repairing the reported errors and problems."); *see also Sierra Club v. Morton*, 405 U.S. 727, 733 (1972) ("[P]alpable economic injuries have long been recognized as sufficient to lay the basis for standing, with or without a specific statutory provision for judicial review."). Plaintiff expressly alleges that she personally purchased the software for $39.95 (which she later learned does not do what PCI purports) and was injured in the amount of her overpayment for the product. (FAC ¶¶ 32-39.) Further, PCI's marketing and sale of a product that lacked the advertised qualities deprived Kulesa of the benefit of her bargain. This type of economic harm is quantifiable, directly traceable to PCI's unlawful conduct, and redressable by damages.

Second, the injuries are particularized, because they are specific to Kulesa in a personal way. *See Lujan*, 504 U.S. at 560 n.1. ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way."). Kulesa herself downloaded the trial version of PC Cleaner and used it to scan her personal computer. Kulesa then purchased and installed the full version of PC Cleaner for $39.95 (in reliance on the results of the scan, as well as on PCI's representations as to what the software could do). Finally, Kulesa herself suffered harm in the form of

money paid for software that did not function as PCI advertised and that did not and could not enhance the performance of or repair the errors and threats to her computer.

Moreover, Plaintiff's damage theory has been recognized and endorsed by courts throughout California. *See, e.g., Gross*, 2012 WL 3116158 at *6 ("The FAC alleges the results of an investigation by computer forensic experts, *and not the actual status of Plaintiff's computer*, revealed the falsity of Symantec's representations" and "[a]s Plaintiff's belief derives from the results of the forensic analysis, the allegations in the FAC sufficiently establish a basis for believing Symantec's statements to be false.") (emphasis added); *see also Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618, 625 (N.D. Cal. 2011) (finding "[t]he fact that [Plaintiff] does not state the purchase price…allege an exact dollar amount in lost value, or point to the specific advertisements relied upon in his purchase is not determinative" and that it is "sufficient that [Plaintiff] has alleged [] [Defendant] misrepresented [] performance and capacity characteristics through its product packaging, marketing materials, and website, and that this conduct caused him either to buy a product that he would not have bought, or to buy a product that was inferior, of lower quality and less value, than that offered."); *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Prac., and Prod. Liability Litig.*, 754 F. Supp. 2d at 1161–62, 1165–66 (where the court found that allegations of economic injury, based on actual or perceived reduction in value constituted a redressable injury traceable to Defendant's conduct and likewise affirmed a "benefit of the bargain" theory in which plaintiffs who contracted to purchase their vehicles to perform in one manner, and had those vehicles perform in another, substandard manner, had standing on the basis of alleged overpayment or loss in value from later-discovered defects).

Despite Plaintiff's allegations and well-settled law, PCI's argument primarily (and improperly) focuses on Plaintiff's "copy of the software on her own computer."

But, the manner in which Plaintiff's individual copy of PC Cleaner operated on her computer, specifically,[4] is not what Plaintiff alleges her injury should be traced to. Rather, Plaintiff's injury lies with her purchase of software that couldn't perform the beneficial tasks that PCI promised it could—as confirmed by Plaintiff's expert's analysis of the software—and thus, wasn't worth the price that she paid for it.

At its core, PCI's argument amounts to little more than an attack on Plaintiff's counsel for filing similar lawsuits against other fraudulent software operators—as if counsel has somehow created the fraudulent software industry. Indeed, PCI repeatedly (and almost exclusively) cites to the *Parker* case where the court admittedly reached an unfavorable conclusion on facts similar to those alleged here. However, the court's decision in *Parker* failed to consider the arguments offered here—in particular, that Plaintiff's injury was her receipt of a product of diminished value and that she had been denied the "benefit of the bargain." Instead, the *Parker* court focused almost entirely on the plaintiff's specific experience in that case, holding that the complaint did not allege facts demonstrating the software failed to function as advertised. As explained above, the *Parker* court's decision is at odds with rulings made by other courts throughout California, and, in any event, should not be controlling in this case.[5]

Accordingly, and contrary to PCI's assertions, Plaintiff's FAC has sufficiently pled a concrete and particularized injury to satisfy standing.

**B.    Plaintiff has Satisfied Rule 9(b)'s Heightened Pleading Standard for Her Claims Grounded in Fraud.**

Plaintiff's claims also readily satisfy the rigors of Rule 9(b). PCI argues otherwise, stating that Plaintiff's claims "fail[] to particularly identify any specific

---

[4]    Of course, it is Plaintiff's position that every copy of Defendant's mass-produced PC Cleaner software operates in an identical way.

[5]    For the reasons outlined above and others, Parker is currently pursuing an appeal of Judge Feess' ruling in the matter.

false statement that PC Cleaner made to Plaintiff." (Def. Mot. 10.) PCI further argues that the FAC does not describe how PCI failed to deliver on its advertising statements. Once again, PCI's arguments ignore Plaintiff's actual allegations.

First, Rule 9(b) only requires an "identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir. 1986)); *see also Walling v. Beverly Enters.*, 476 F.2d 393, 397 (9th Cir. 1973) (Rule 9(b) "does not require nor make legitimate the pleading of detailed evidentiary matter," but alleging in conclusory fashion that defendant's conduct is fraudulent is insufficient); *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994), *cert. denied*, 516 U.S. 810 (1995); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989). The circumstances constituting the alleged fraud must "be specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotations and citations omitted). To "avoid dismissal for inadequacy under Rule 9(b), [the] complaint [must] state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010).

In this case, Kulesa's FAC provides the requisite time, place, content, and parties involved in PCI's fraudulent conduct. Specifically, Plaintiff alleges that in early 2011 ("when") while searching on the Internet ("where"), she came across, downloaded and utilized a "free diagnostic scan" of her PC provided by PCI through its PC Cleaner software, viewed specific representations regarding the supposed health and performance of her PC made within the software and, as a result,

purchased a full version of the software ("what") from PCI ("who"). (FAC ¶¶ 32-39.)

PCI's misrepresentations (the "content") are specifically detailed and expressly

quoted throughout the FAC, including that PCI made uniform misrepresentations—to

Plaintiff, specifically, and the putative class, generally—about what PC Cleaner does

(*Id.* ¶¶ 16-19),[6] how it purports to identify and fix errors on a consumer's computer

(*Id.* ¶¶ 24-25), how PCI notifies consumers of such errors and promotes the purchase

of the full PC Cleaner product (*Id.* ¶ 26), and why PCI engages in such deceptive

practices—i.e., to deceive consumers into believing their computers suffer from

errors so as to induce them into purchasing (and enable PCI to profit from) the full

version of the PC Cleaner software. (*Id.* ¶ 31.)[7] These allegations undoubtedly satisfy

the purpose of Rule 9(b) by giving PCI specific notice of the "particular misconduct

which is alleged to constitute the fraud charged." *See Brooks v. ComUnity Lending,*

*Inc.*, No. 07-cv-4501, 2010 WL 2680265, *9 (N.D. Cal. July 6, 2010).

Ultimately, the FAC carefully details PCI's misrepresentations and methods

for inducing consumers into purchasing PC Cleaner. Contrary to PCI's implied

assertion that Plaintiff must prove her claims at the pleading stage, Rule 9(b) does not

require anything of the sort, and PCI's motion should be denied on this basis as well.

### C. PCI Cannot Disclaim Warranties Derived From the Express Representations Found In Its Advertising Materials, On Its Website and In the PC Cleaner Software Itself.

PCI also argues that Plaintiff's claim for breach of express warranties cannot

stand because, purportedly (i) Cal. Com. Code § 2313 does not apply to software

---

[6]     For example, Plaintiff alleges that PCI expressly claims on its website (www.pc-cleanerpro.net) that PC Cleaner will (i) "boost Windows startup and Web speed"; (ii) "protect you by cleaning up all the unwanted…data…which could…put you at risk of identity theft"; (iii) "optimize PC[s]"; (iv) "Fix PC Errors"; (v) "Detect known and unknown threats"; and (vi) "Remove all types of viruses." (FAC ¶ 19.)

[7]     Plaintiff also specifically alleges the statements made by PCI in its online advertisements to further frighten consumers into purchasing software: (i) "Malware steals your information and can cause permanent damage…"; (ii) "[Y]our system's registry is vulnerable to errors that can cause computer slowdowns, error messages, frozen programs, system crashes and applications that no longer work…." (*Id.* ¶ 16.)

licenses, (ii) Plaintiff fails to adequately plead the existence, terms, and breach of any express warranties, and (iii) the PC Cleaner EULA (which it improperly asks that the Court take judicial notice of) expressly disclaims any such warranties. Each of these arguments fails and is taken in turn below.

### 1. The PC Cleaner software is a "good" and not an intellectual property license under the UCC.

PCI takes the position that software is not considered a "good" under the U.C.C. The California Uniform Commercial Code defines "goods" as things "which are movable at the time of identification to the contract for sale." Cal. Com. Code § 2105; *TK Power, Inc. v. Textron, Inc.*, 433 F.Supp.2d 1058, 1061 (N.D. Cal. 2006). In determining whether a transaction involves goods or services, "the courts must [consider] which predominates by examining the essence of the agreement." *Phoenix Solutions, Inc. v. Sony Electronics, Inc.*, 637 F. Supp. 2d 683, 694 (N.D. Cal. 2009) (citing *TK Power*, 433 F.Supp.2d at 1061; *RRX Indus., Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 546 (9th Cir. 1985)).

In making such a determination, courts throughout the country, including in California, have consistently distinguished cases such as this, where the transaction involves the mere purchase of a software package, from those cases that involve the design of a software product and/or a transfer of the corresponding intellectual property rights. In the former, as in this case, the software has properly and consistently been classified as a "good" for purposes of the U.C.C. *See*, *e.g.*, *RRX Indus., Inc.*, 772 F.2d at 546-47 (applying California law); *ePresence, Inc. v. Evolve Software, Inc.*, 190 F.Supp.2d 159, 163 (D. Mass. 2002) (applying California law); *Micro Data Base Sys., Inc. v. Dharma Sys., Inc.*, 148 F.3d 649, 654 (7th Cir. 1998) (applying New Hampshire law); *Advent Sys. Ltd. v. Unisys Corp.*, 925 F.2d 670, 675–76 (3d Cir. 1991) (applying Pennsylvania law); *Newcourt Fin. USA, Inc. v. FT Mortgage Cos.*, 161 F.Supp.2d 894, 897 (N.D. Ill. 2001) (applying Illinois law);

*Dahlmann v. Sulcus Hospitality Technologies, Corp.*, 63 F.Supp.2d 772, 775 (E.D. Mich. 1999) (applying Michigan law); *Architectronics, Inc. v. Control Sys., Inc.*, 935 F.Supp. 425, 432 (S.D.N.Y. 1996) (applying New York law); *Olcott Int'l & Co., v. Micro Data Base Sys., Inc.*, 793 N.E.2d 1063, 1071 (Ind. App. 2003). Tellingly, Judge Breyer recently rejected an identical argument from a scareware developer in *Gross v. Symantec*. *See Gross*, 2012 WL 3116158, at * 9 (holding that California's U.C.C. covered defendant Symantec's "Registry Mechanic" software where, like here, Plaintiff purchased, downloaded and installed the consumer-focused software).

Thus, because PCI does not and cannot seriously contend that this case involves the transfer of any rights to the intellectual property underlying its software, the software at issue is properly considered a good and California's U.C.C. applies.

> 2.    *The End User License Agreement (EULA) cannot be considered because it has not been incorporated by reference.*

Next, despite it not being referenced in Plaintiff's FAC, PCI improperly requests that the Court take judicial notice of the EULA under the "incorporation by reference" doctrine. This request should be denied. Under the "incorporation by reference" doctrine, a court may only consider documents that are not physically attached to the plaintiff's pleading when their contents are alleged in a complaint and their authenticity is not in question. *Cont'l D.I.A. Diamond Prods., Inc. v. Dong Young Diamond Indus. Co., Ltd.*, No. C 08-02136 SI, 2009 WL 330948, *3 n.2 (N.D. Cal. Feb. 10, 2009) (citing *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir.1999)); *see also Coppes v. Wachovia Mortg. Corp.*, No. 10-cv-01689-GEB, 2010 WL 4483817, *2 (E.D. Cal. Nov. 1, 2010) (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)) ("doctrine [applies] to situations in which the plaintiff's claim depends on the contents of a document…").

Here, the incorporation by reference doctrine simply does not apply. Kulesa does not allege the "contents" of the EULA in her Complaint nor does she seek to

rely on them—even though its existence sharply undercuts PCI's assertion that Plaintiff failed to plead a contract ever existed. (*See* Def. Mot. 15.) Thus, the EULA (along with its supposed disclaimers) is not the proper subject of judicial notice.

> 3.  *PCI cannot disclaim the express representations made by its marketing and in-software statements.*

Finally, even if the EULA were found to apply (it does not), Plaintiff properly alleges the existence of express warranties PCI made regarding PC Cleaner, which cannot be disclaimed. Under California law, disclaimers of express warranties are "generally void," *Teknekron Customer Info. Solutions, Inc. v. Watkins Motor Lines, Inc.*, No. C-93-03422 MHP, 1994 WL 11726 (N.D. Cal. Jan. 5, 1994), and "[s]trict construction against the person who has both warranted a particular fact to be true and then attempted to disclaim the warranty is especially appropriate in light of the fact that [a] disclaimer of an express warranty is essentially contradictory." *Bros. v. Hewlett-Packard Co.*, No. 06-cv-02254-RMW, 2007 WL 485979, *7 (N.D. Cal. Feb. 12, 2007) (citing *Fundin v. Chicago Pneumatic Tool Co.*, 152 Cal.App.3d 951, 957-58 (Cal. App. Ct. 1984)); *see also* 3 B.E. Witkin, *Summary of Cal. Law, Sales* § 79 (9th ed. 1987) ("disclaimer of an express warranty is essentially contradictory"). Indeed, the California Commercial Code explains that "creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other" and "negation or limitation is inoperative to the extent that such construction is unreasonable." *See* Cal. Com. Code § 2316(1).

Courts agree that express warranties by description[8] cannot be disclaimed because such warranties constitute the basis of the bargain. *See, e.g., Murray v. D&J*

---

[8]  Under California law, express warranties arise by "[a]ny description of the goods which is made part of the basis of the bargain." Cal. Com. Code § 2313(b)(1). Because such descriptions are "presumptively part of the basis of the bargain, the burden is on the seller to prove that the resulting bargain does not rest at all on the representation." *Keith v. Buchanan*, 173 Cal. App. 3d 13, 23 (Cal. Ct. App. 1985).

*Motor Co. Inc.*, 958 P.2d 823, 829 (Okla. Civ. App. 1998) (finding "[e]ven in cases of blanket disclaimers of all warranties there remains a warranty of description. A buyer and seller transact about some 'thing' which [is]…the essence of their transaction"); *Consolidated Generator-Nevada, Inc. v. Cummins Engine*, 971 P.2d 1251, 1255 (Nev. 1998) ("[U]nder California law, a manufacturer cannot disclaim express descriptions of certain detailed capacities in brochures.").

California courts have reached comparable decisions. For example, in *Fundin* the court held that express warranties in a manufacturer's sales brochure could not be disclaimed or excluded. The court reasoned, "when a product has been expressly described by its manufacturer as having certain detailed capacities under certain conditions, it would be both unfair and unreasonable to construe the language [of the disclaimer] as negating the express description." 152 Cal.App.3d at 957 (citation omitted); *see also Bros.*, 2007 WL 485979 (refusing to dismiss breach of express warranty claim, noting that "disclaimers to exclude a manufacturer's express representations of product specifications would be unfair"); *see also AB Avnet EMG v. Sierra Semiconductor Corp.*, No. C-93-0087-VRW, 1993 WL 280504 (N.D. Cal. July 9, 1993) *aff'd*, 81 F.3d 167 (9th Cir. 1996) (favorably discussing legal principles in *Fundin*, but refusing to adopt for distributor-plaintiff "because consumers, unlike merchants, are generally unable to bargain for risk allocation with the manufacturer of a product").

In this case, the supposed disclaimer of all warranties found in the PC Cleaner EULA is completely at odds with the representations in PCI's advertising materials, on its website, and in the software itself. *See, e.g., Fundin*, 152 Cal. App. 3d at 957 (warranties by description may arise through advertisements, catalogs, brochures, labels, etc.); *see also Morey v. NextFoods, Inc.*, No. 10CV761 JM (NLS), 2010 WL 2473314, *2 (S.D. Cal. June 7, 2010) (finding product packaging sufficient to state a

claim for breach of warranty when it contained pictures and statements asserting the product "Support[ed] Healthy Digestion [and] Natural Immunity" and has "Clinically Tested Live Cultures.") From there, and given the software's actual functionality, it is not difficult to construct a breach of express warranty claim.

To plead an action for breach of express warranty under California law, a plaintiff must allege (1) the exact terms of the warranty; (2) reasonable reliance on those terms; and (3) a breach of warranty which proximately caused plaintiff's injury. *See, e.g., Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 986–87 (N.D. Cal. 2009). Here, Kulesa alleges that PCI advertised and represented that PC Cleaner would improve a computer's efficiency and performance, increase its stability, repair system errors, and detect known and unknown threats. (FAC ¶¶ 18-19.) These representations are the exact terms of the warranty that Plaintiff reasonably relied upon when deciding to purchase the full version of PC Cleaner. However, despite PCI's express representations, the software does not "accurately identify and report the actual condition" of a user's computer or otherwise perform the functions that PCI represented. (*Id.* ¶¶ 37-38.) PCI's failure to provide software that functioned as expressly represented and promised constitutes the breach of warranty that ultimately caused Plaintiff's injury (in the form of money paid for software that did not work as advertised). Accordingly, Plaintiff has adequately and specifically pled her claim for breach of express warranties.

As with the long line of California authorities, it would be "unfair and unreasonable to construe the language of the [EULA]" as negating the PCI's express affirmations of PC Cleaner's functionality. *Fundin*, 152 Cal.App.3d at 957; *see also* Cal. Com. Code § 2316(1) ("negation or limitation" of disclaimer "is inoperative to the extent that such construction is unreasonable").[9] Thus, PCI has not and cannot

---

[9]    California contract law would also prohibit enforcement of the EULA's purported waiver of express warranties insofar as the provision would exculpate PCI

disclaim its express representations, and this Court should refuse to dismiss Plaintiff's breach of express warranty claim.

### D. Plaintiff's Contract-Based Claims Clearly Identify the Terms of the Contract and PCI's Breach.

PCI further argues that Plaintiff's breach of contract and breach of the implied covenant of good faith and fair dealing claims fail by not identifying the contract at issue, its terms, or PCI's supposed breach. PCI is again mistaken.

> *1. Plaintiff pleads the existence of a valid and enforceable contract for her purchase of the PC Cleaner software from PCI, which PCI ultimately breached.*

To state a claim for breach of contract, Plaintiff was required to (and did) allege: "(1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to the plaintiff." *F.D.I.C. v. GB Escrow, Inc.*, No. 11-cv-05318 ODW JCG, 2011 WL 4550831, *4 (C.D. Cal. Sept. 28, 2011); *see Nw. Pipe Co. v. Travelers Indem. Co. of Conn.*, No. C-02-04189JF, 2003 WL 24027882, *3 (N.D. Cal. Feb. 12, 2003).

Here, Kulesa alleges the existence of a valid sales contract whereby PCI agreed to sell, and Plaintiff and the class agreed to purchase, software that would accurately identify, report and repair legitimate computer errors found on, and improve the overall performance of Plaintiff's and the class's PCs (the "contract"). (*See* FAC ¶ 83.) Plaintiff also alleges that she and the class paid, and PCI accepted, the purchase price of the software ("performance") (*Id.* ¶ 86), that PCI failed to provide software that performed the agreed-upon functions ("breach") (*Id.* ¶ 87), and damages resulting from the breach—i.e., the amounts Plaintiff and the class members overpaid for the software. (*Id.* ¶ 88.) Plaintiff thus adequately pleads the elements of her breach of contract claim.

---

for its willful and fraudulent conduct. *See* Cal. Civ. Code § 1668 ("All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud…are against the policy of the law.").

2.   *PCI also breached the implied covenant of good faith and fair dealing by frustrating Plaintiff's and the class's ability to obtain the benefits of their contracts for the purchase of PC Cleaner.*

Additionally, Plaintiff properly alleges that implicit in her contract with PCI was a covenant that PC Cleaner would honestly and accurately diagnose and remove threats from her and the class's computers and that PCI would comply with all applicable laws (statutory and otherwise), including Cal. Com. Code § 2313. (FAC ¶¶ 94-96.) PCI breached that covenant.

Under California law, a breach of the implied covenant of good faith and fair dealing occurs when one party to a contract exercises its discretion in such a way as to deprive the other party of the benefits of the bargain. *See Perdue v. Crock Nat'l Bank*, 38 Cal. 3d 913, 923 (1985); *Auto. Vending Co. v. Wisdom*, 182 Cal. App. 2d 354, 358 (Cal. Ct. App. 1960); *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1147 (Cal. Ct. App. 1990) (covenant of good faith and fair dealing "implied in every contract as a method to protect the interests of the parties in having the contractual promises and purposes performed."). That is precisely what happened here. PCI abused its discretion by intentionally designing PC Cleaner so that it would not honestly and accurately detect, report and repair legitimate errors and threats on consumers' computers. *See Carma Developers (California), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 372 n.11 (1992). PCI's behavior deprived Plaintiff of receiving her bargained-for benefit and frustrated the purpose of the Parties' contract. (FAC ¶¶ 97-98.)

As a result, the Court should find that Plaintiff has adequately stated her claims for breach of contract and breach of the implied covenant of good faith and fair dealing.[10]

---

[10]   PCI additionally argues for dismissal of Plaintiff's request for punitive damages. However, Cal. Civ. Code § 3294 permits the imposition of punitive damages where there is "clear and convincing evidence that the defendant is guilty of

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff Virginia Kulesa, individually and on behalf of all others similarly situated individuals, respectfully requests that the Court enter an Order (i) denying PCI's motion to dismiss in its entirety, (ii) requiring PCI to answer Plaintiff's First Amended Class Action Complaint, and (iii) providing such other and further relief as the Court deems equitable and just.[11]

Respectfully submitted,

**VIRGINIA KULESA**, individually and on behalf of all others similarly situated,

Dated: September 24, 2012

By: /s/ Benjamin H. Richman
One of Plaintiff's Attorneys

JAY EDELSON (*Pro Hac Vice*)
jedelson@edelson.com
RAFEY S. BALABANIAN (*Pro Hac Vice*)
rbalabanian@edelson.com
BENJAMIN H. RICHMAN (*Pro Hac Vice*)
brichman@edelson.com
CHANDLER R. GIVENS (*Pro Hac Vice*)
cgivens@edelson.com
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone:  (312) 589-6370
Facsimile:  (312) 589-6378

SEAN P. REIS (No. 184044)
sreis@edelson.com
EDELSON MCGUIRE LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone:  (949) 459-2124
Facsimile:  (949) 459-2123

---

oppression, fraud, or malice." As Plaintiff alleges PCI intentionally designed its software to defraud consumers, the request for punitive damages is appropriate.

[11]   In the event the Court disagrees with Plaintiff and grants Defendant's motion, Plaintiff respectfully requests leave to add further detail, additional claims, or otherwise take steps necessary to cure any defects found by the Court in her pleadings. *See Schreiber Distrib. Co.*, 806 F.2d at 1401 (leave should be granted unless complaint cannot be cured).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I, Benjamin H. Richman, an attorney, hereby certify that on September 24, 2012, I served the above and foregoing ***Plaintiff's Opposition to Defendant PC Cleaner Inc.'s Motion to Dismiss First Amended Complaint***, by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the Court's CM/ECF electronic filing system, on this the 24th day of September 2012.

/s/ Benjamin H. Richman