1  JAY EDELSON (Admitted *Pro Hac Vice*)
   jedelson@edelson.com
2  RAFEY S. BALABANIAN (Admitted *Pro Hac Vice*)
   rbalabanian@edelson.com
3  BENJAMIN H. RICHMAN (Admitted *Pro Hac Vice*)
   brichman@edelson.com
4  CHANDLER R. GIVENS (Admitted *Pro Hac Vice*)
   cgivens@edelson.com
5  EDELSON MCGUIRE LLC
   350 North LaSalle Street, Suite 1300
6  Chicago, Illinois 60654
   Telephone: (312) 589-6370
7  Facsimile: (312) 589-6378

8  SEAN P. REIS (SBN 184044)
   sreis@edelson.com
9  EDELSON MCGUIRE LLP
   30021 Tomas Street, Suite 300
10 Rancho Santa Margarita, California 92688
   Telephone: (949) 459-2124
11 Facsimile: (949) 459-2123

12 *Attorneys for Plaintiff* VIRGINIA KULESA

13
                    UNITED STATES DISTRICT COURT
14
               FOR THE CENTRAL DISTRICT OF CALIFORNIA
15

16 VIRGINIA KULESA, individually and         Case No. 8:12-cv-00725-JVS-AN
   on behalf of all others similarly situated,
17                                            **PLAINTIFF'S RESPONSE IN**
                        *Plaintiff,*          **OPPOSITION TO DEFENDANT**
18                                            **PC CLEANER, INC.'S MOTION**
           *v.*                               **TO DISMISS SECOND**
19                                            **AMENDED COMPLAINT**
   PC CLEANER, INC., a California
20 corporation,                               Date:  January 7, 2013
                                              Time: 1:30 p.m.
21                      *Defendant.*          Place: Courtroom 10C
                                                     411 West 4th Street
22                                                   Santa Ana, CA 92701-4516
23                                            Judge: Honorable James V. Selna
24                                            Action Filed: May 4, 2012
25
26
27
28

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................... 1

II. FACTUAL AND PROCEDURAL BACKGROUND ................................ 2

    A.  The Court Dismissed Plaintiff's FAC With Leave to
        Amend .............................................................................................. 2

    B.  The SAC Squarely Addresses the Issues Raised in the
        Court's Order ................................................................................ 3

III. ARGUMENT ........................................................................................... 3

    A.  As An Initial Matter, Rule 9(b) Only Applies to Kulesa's
        Fraud Claims—Her Breach of Contract, Breach of
        Warranty, and Other Non-Fraud Claims Are Not
        Subject to Heightened Pleading Standards ................................ 4

    B.  Kulesa Pleads Her Fraud-Based Claims in Accordance
        With the Court's FAC Order and Rule 9(b) ............................... 4

        1.  *PCI ignores the SAC's allegations detailing when
            Kulesa saw the misleading advertisements during her
            Google search and her reliance on them* ................................ 5

        2.  *The SAC includes actual copies of the misleading
            advertisements and explains the falsity of the statements
            —PCI knows which of its (apparently numerous)
            misrepresentations are being challenged in this lawsuit* ............. 5

        3.  *The SAC explains that the full version of PC Cleaner
            Pro failed to fix any of the problems Kulesa was
            experiencing with her computer* ................................................ 7

    C.  PCI Has Breached the Express Warranties Appearing
        In Its Advertising Materials, on its Websites and in its
        Software ......................................................................................... 9

    D.  Plaintiff's Amended Contract Claims Identify the Essential
        Terms of the Parties' Agreement—Kulesa's Money in
        Exchange for a Software Program That Would Fix the
        Problems She was Experiencing With Her Computer ............... 12

        1.  *The SAC details the essential terms of the contract and
            PCI's breach of its terms* ........................................................ 12

        2.  *Kulesa also adequately pleads her claim for breach of
            the implied covenant of good faith and fair dealing* ............... 14

    E.  Kulesa Properly Seeks Punitive Damages and Injunctive
        Relief to Counteract PCI's Continued Fraud on Her and
        the Putative Class Members .......................................................... 15

1

**IV.    CONCLUSION**................................................................................16

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

**United States Supreme Court Cases:**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)..................................................................3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007)................................................3

**United States Circuit Court of Appeals Cases:**

*Johnson v. Lucent Tech. Inc.*, 653 F.3d 1000 (9th Cir. 2011) .....................................3

*Hampton v. Gebhardt's Chili Powder Co.,* 294 F.2d 172 (9th Cir. 1961)................11

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393
    (9th Cir. 1986) .....................................................................................................16

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003)..................................4

**United States District Court Cases:**

*B & O Mfg., Inc. v. Home Depot U.S.A., Inc.,* No. C 07–02864 JSW,
    2007 WL 3232276 (N.D. Cal. Nov.1, 2007)............................................ 12-13

*Brooks v. ComUnity Lending, Inc.*, No. 07-cv-4501,
    2010 WL 2680265 (N.D. Cal. July 6, 2010) .......................................................9

*F.D.I.C. v. GB Escrow, Inc.,* No. 11-cv-05318 ODW JCG,
    2011 WL 4550831 (C.D. Cal. Sept. 28, 2011)..................................................12

*Green v. McClendon*, No. 08 CIV 8496 JGK, 2010 WL 3701333
    (S.D.N.Y. Sept. 20, 2010) ................................................................................13

*HRPT Properties Trust v. Lingle*, 676 F. Supp. 2d 1036 (D. Haw. 2009)

*In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953 (N.D. Ill. 2007)...........10

*In re Renfro-Wadenstein*, 47 F.2d 238 (W.D. Wash. 1931) ....................................12

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices,
    and Products Liability Litig.,* 754 F.Supp.2d 1145 (C.D. Cal. 2010) ............11

*Nw. Pipe Co. v. Travelers Indem. Co. of Conn.,*
    No. C-02-04189JF, 2003 WL 24027882 (N.D. Cal. Feb. 12, 2003)..............12

*Ranger v. T-Mobile USA, Inc.*, No. EDCV 08-1518VAP(JCX),
    2009 WL 416003 (C.D. Cal. Feb. 19, 2009)........................................................4

*Sanbrook v. Office Depot, Inc.*, No. C-07-05938 RMW, 2008 WL 1994884
    (N.D. Cal. May 5, 2008).....................................................................................15

*Sanders v. Apple Inc.*, 672 F. Supp. 2d 978 (N.D. Cal. 2009)....................................9

*Unihan Corp. v. Max Group Corp.*, No. CV 09-07921 MMM PLAX,
  2011 WL 6814044 (C.D. Cal. Dec. 28, 2011) ...................................................12

*Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231 (N.D. Cal. 1998) ................................6

**State Court Cases:**

*Auto. Vending Co. v. Wisdom*, 182 Cal. App. 2d 354 (Cal. Ct. App. 1960)..............14

*Carma Developers (California), Inc. v. Marathon Dev. California, Inc.*,
  2 Cal. 4th 342 (1992)......................................................................................14

*Fundin v. Chicago Pneumatic Tool Co.,* 152 Cal. App. 3d 951
  (Cal. Ct. App. 1984) ................................................................................... 9-10

*Keith v. Buchanan*, 173 Cal. App. 3d 13 (Cal. Ct. App. 1985) ..................................9

*Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136 (Cal. Ct. App. 1990).....................14

*Metowski v. Traid Corp.*, 28 Cal. App. 3d 332 (Cal. Ct. App. 1972).......................11

*Perdue v. Crock Nat'l Bank*, 38 Cal. 3d 913 (1985) ...............................................14

**Statutory Provisions & Other Authorities:**

Cal. Civ. Code § 3294 ...............................................................................................16

# I.  INTRODUCTION

To hear Defendant PC Cleaner, Inc. ("PCI" or "Defendant") tell it, Plaintiff Kulesa's Second Amended Complaint ("SAC") fails to add any of the details needed for PCI to figure out which of its fraudulent advertisements and software programs are being challenged in this litigation. Indeed, and despite a wealth of new facts and specifics in the SAC, PCI claims that Kulesa's allegations still fall short of Rule 9(b)'s heightened pleading requirements—as if in drafting the SAC, Kulesa simply ignored the issues identified by the Court in its October 12, 2012 Order dismissing the First Amended Complaint without prejudice (the "FAC Order"). (Dkt. 49.)

The problem for PCI is that, far from overlooking the FAC Order, the SAC took special care to address each of the deficiencies it identified head on—providing specifics regarding the who, what, where, and when of PCI's false advertisements, explaining the functionality of the full version of PCI's software, showing PCI's notice of its breaches of warranty, detailing the terms of the Parties' agreement, and even going so far as to include individual screenshots of each of PCI's advertisements, in-software display screens, and other representations at issue. PCI's efforts to discount these additional allegations, which more than satisfy Rule 9(b) where relevant, fall flat. Head in the sand, PCI pretends that it still doesn't know which version of its software is at issue, which advertisements are being challenged, whether Plaintiff alleges she saw these ads, and whether the full version delivered on any of its promises to fix her computer—despite the fact the SAC plainly provides such details. In the process, PCI demands too much—turning whatever previously passed for legitimate gripes about its need for additional information into a transparent attempt to force Kulesa into proving her claims at the pleadings stage.

Accordingly, and as explained further below, this Court should deny PCI's third attack on the pleading and allow Plaintiff to proceed with discovery into PCI's illicit

software program and marketing materials. Holding otherwise would place a pleading burden on Plaintiff Kulesa that simply no litigant is required to meet.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Court Dismissed Plaintiff's FAC With Leave to Amend.

On May 4, 2012, Plaintiff Kulesa filed her original class action complaint against PCI alleging claims for violations of California's Unfair Competition Law, fraudulent inducement, breach of express warranties, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. (Dkt. 1.) Kulesa filed her First Amended Complaint on August 17, 2012, which removed her claim for unjust enrichment (the "FAC"). (Dkt. 39.) Thereafter, PCI moved to dismiss the FAC pursuant to Fed. R. Civ. P. 12(b)(6), which was fully briefed by the Parties. (Dkt. 41, 46, 47.)

On October 12, 2012, the Court issued the FAC Order, dismissing Plaintiff's claims without prejudice. (Dkt. 49.) The FAC Order found that Plaintiff "adequately establish[ed] standing under Article III," that the PC Cleaner software was a "good" under the Uniform Commercial Code, and that PCI could not disclaim its express warranties. (FAC Order, pp. 6, 12, 15.) The Court dismissed the FAC without prejudice, however, finding it lacked sufficient detail about the specific advertisements Kulesa saw and relied on when purchasing the product and how the full version of the software operated on her computer. (FAC Order, pp. 7-11.) The FAC Order further found that the FAC failed to plead the "essential terms" of the Parties' sales contract and that it lacked allegations about whether adequate notice of the breach was given for Plaintiff's express warranty claim. (FAC Order, pp. 11, 14, 16.)

**B. The SAC Squarely Addresses the Issues Raised in the Court's Order.**

On November 13, 2012, Kulesa filed the SAC specifically addressing the issues identified in the FAC Order. (Dkt. 53.) The SAC includes more detailed allegations regarding the specific representations that Kulesa alleges she viewed and relied upon—including screenshots of the actual ads (or substantially similar ads)—how the software actually operated on Plaintiff's computer (including results from use of the software), and how the software failed to accurately identify and fix actual errors. (*See* Section III.B.) Further, the SAC expressly sets forth the terms and obligations of the contract formed between the Parties, including what each Party specifically bargained for and received, and PCI's breaches of the agreement. (*See* Section III.D.) The SAC also includes information relating to the actual and constructive notice of the breach of express warranties provided to PCI. (*See* Section III.C.)

Ultimately, the SAC's allegations fully cure the defects identified by the Court, notwithstanding PCI's apparent preference that their inclusion be ignored.

## III. ARGUMENT

"On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Johnson v. Lucent Tech. Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011). While federal pleading standards require more than "formulaic recitation of the elements" of a claim or "naked assertions," a complaint survives dismissal where it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555-57 (2007)). As explained below, Plaintiff's SAC readily meets and exceeds these standards.

**A. As An Initial Matter, Rule 9(b) Only Applies to Kulesa's Fraud Claims—Her Breach of Contract, Breach of Warranty, and Other Non-Fraud Claims Are Not Subject to Heightened Pleading Standards.**

As a preliminary matter, PCI's attempt to have this Court apply Rule 9(b) across the board—even to those claims, like for breach of contract and express warranty, that don't "sound in fraud" (Dkt. 54, "Def. Mot." p. 5)—should be rejected. Contrary to PCI's legal assertions, even where a fraudulent scheme is alleged generally, only claims that actually sound in fraud are subject to heightened pleading. *See Ranger v. T-Mobile USA, Inc.*, No. EDCV 08-1518VAP(JCX), 2009 WL 416003, *2 (C.D. Cal. Feb. 19, 2009) ("Although the Complaint has a section describing Defendant's purportedly fraudulent scheme, it is merely background information, and does not relate specifically to each of Plaintiff's claims … As only Plaintiff's second and third claims 'sound in fraud,' only they are subject to the heightened pleading requirement of Rule 9(b).") (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003)). Thus, this Court should only apply Rule 9(b) to the fraud claims—the breach of contract and other claims remain subject to the (less rigorous) standards of Federal Rule 8(a).

**B. Kulesa Pleads Her Fraud-Based Claims in Accordance With the Court's FAC Order and Rule 9(b).**

The FAC Order identified specific issues with respect to Plaintiff's fraud-based claims. Regarding PCI's advertising, the Court faulted the FAC for not indicating "what version of PC Cleaner Pro the advertisements referenced, whether they existed when Plaintiff discovered the software, or whether Plaintiff saw and relied on them." (FAC Order, p. 9.) The Court also found that Plaintiff's summaries of "the results of the free diagnostic scan by PC Cleaner Pro" did not "state what PC Cleaner Pro actually said regarding her computer's status and what solutions it recommended." (FAC Order, p. 10) ("The FAC's paraphrasing, with brief quotations, of various statements Plaintiff claims she saw cannot satisfy Rule 9(b).") Further, the Court

1    indicated that Kulesa hadn't "indicate[d] specific ways her purchase fell short of its

2    advertised qualities, e.g. actual versus expected repairs to the computer system."

3    (FAC Order, pp. 10-11) ("Plaintiff offers no particularized allegations that PC

4    Cleaner Pro did not deliver on any supposed promises with respect to her

5    malfunctioning computer…the FAC is unclear as to what exactly the expert actually

6    uncovered regarding the full version of the software and how it operates.")

7       As explained below, the SAC answers each of these questions so as to survive

8    dismissal—notwithstanding PCI's demands for ever-greater detail.

9       **1. PCI ignores the SAC's allegations detailing when Kulesa saw the
10         misleading advertisements during her Google search and her reliance
           on them.**

11      First, the SAC specifies the date Kulesa searched for software to fix her computer

12   and saw the Defendant's advertisements—on and around January 17, 2012. (SAC ¶¶

13   43-44.) Second, the SAC provides *where* Kulesa saw the advertisements—as banner

14   ads during her Google search and on PCI's website, www.pccleanerpro.com,

15   demonstrating the ads existed when she discovered the software. (SAC ¶¶ 15 n.1, 43-

16   45.) Third, Kulesa identifies the particular version of the software—PC Cleaner Pro

17   2012—she claims she purchased as a result of the ads, noting that all versions of the

18   software functioned in substantially the same way. (SAC ¶ 47.) Thus, the SAC

19   plainly answers *when* Kulesa saw the ads (January 17, 2012), *where* she saw them (as

20   banner ads on Google and PCI's website), and that she relied on them to purchase the

21   2012 version of the program.

22      **2. The SAC includes actual copies of the misleading advertisements and
23         explains the falsity of the statements—PCI knows which of its
           (apparently numerous) misrepresentations are being challenged in this
24         lawsuit.**

25      The SAC also cures the FAC's mere "paraphrasing" of PCI's misleading

26   advertisements and "the results of the free diagnostic scan." Removing any

27

28

guesswork, the SAC includes actual screenshots of PCI's banner ads that Kulesa saw.[1] (SAC ¶¶ 43-44, Figures 7-14) (*Cf, Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1246 (N.D. Cal. 1998) (finding paraphrasing of oral representations insufficient under Rule 9(b)). These images show how PCI's ads promised Kulesa, who reasonably relied on them, that PC Cleaner would "Boost PC Speed", "Fix PC Errors", "Stop Malware", "Optimize Memory" and improve the performance of her PC. (SAC ¶ 45, Figure 8.)

The SAC also explains the role of PCI's diagnostic scan and includes sample results—laying out frames of the images Kulesa saw when she ran the program on her system. Figure 3 shows how the scan supposedly identified thousands of errors and displayed them as "critical" and requiring "immediate attention" and that "[t]o fix the … detected problems it is necessary to" purchase a license and register the full version of the software. (SAC ¶ 29.) Figure 4 further reveals how the software exaggerates the threat level of various files to scare consumers into purchasing the full version, classifying harmless files as "critical … System Problems" and "serious … Malware." (SAC ¶¶ 33-34.) By reporting the existence of thousands of these critical errors, a reasonable consumer would necessarily believe that the problems affecting his or her computer's performance would be resolved by such a supposedly all-embracing repair.

Unfortunately for Kulesa and numerous others, as the SAC explains, these advertisements and statements on the website were false: "The truth is that, at its core, PC Cleaner performs only two main functions: it's a registry cleaner and it removes superfluous 'temporary' files from a user's hard drive … [N]either of these

---

[1]     At the time, Plaintiff was unaware that PCI's software was fraudulently designed and that she'd be involved in this litigation. As such, she didn't take screenshots of the exact images she viewed or of the results of the scan on her computer. Of course, PCI will have information about which specific banner ads it ran in January 2012 to determine whether any meaningful differences exist.

functions will remove viruses, protect a user's privacy, eliminate any credible security threats, nor stop commonly occurring PC errors." (SAC ¶ 21.) Thus, the ads and diagnostic results falsely inflate and otherwise misrepresent the existence of errors and the supposed danger they present to the consumer's computer, with the fix being that the consumer must pay and register the full version of the software.

Hence, the SAC alleges "what the software *actually said* regarding her computer's performance," as well as the software's solution for fixing the errors identified (that she purchase the full version of the software) and that the representations were false. (FAC Order, p. 10.) Likewise, as explained next, the SAC describes how even the full version of PC Cleaner failed to solve the issues Kulesa was experiencing that initially lead her to search for software to fix her computer in the first place.

### 3.  The SAC explains that the full version of PC Cleaner Pro failed to fix any of the problems Kulesa was experiencing with her computer.

In addition to addressing the FAC Order's concerns regarding the date, location, and substance of PCI's representations and why they were false, the SAC includes allegations regarding the full version of PC Cleaner Pro and its effect on Kulesa's computer. (FAC Order, pp. 10-11.) (The FAC has "no allegations about whether the software attempted to fix the errors on her computer once Plaintiff installed and ran it, whether the software continued to erroneously diagnose her computer as being 'in the red,' what other statements the software may have made to her, or whether the software actually made any of the advertised improvements to her computer."). The SAC expressly alleges that:

> the full version of the PC Cleaner software that Kulesa purchased could not and did not perform as advertised by PCI. Instead, PCI designed the full version, like the trial version, to invariably return false errors as detailed in Section II.C. above. In fact, every time Kulesa ran PC Cleaner, the software reported that harmful errors were adversely affecting her computer and that she needed to "fix" the errors using PC Cleaner. Yet, despite the fact that she repeatedly ran PC Cleaner's scan, and purportedly "fixed" the reported errors, her computer continued to

suffer from the same problems she experienced prior to purchasing and running the software.

(SAC ¶ 49.)

PCI attempts to discount these allegations with arguments that are conclusory all their own. (Def. Mot. p. 10.) The reality is that the FAC Order faulted the FAC for failing to allege what happened when Kulesa installed the full version of the software. The SAC does so expressly—the full version didn't fix anything like it said it would, other than removing innocuous errors that weren't actually affecting her system's performance (while attempting to trick her into thinking her computer continued to suffer from those and other errors that supposedly made maintaining the software on her system a necessity).

In reality, PC Cleaner will always falsely report and inflate the severity of minor errors (which it can "fix" without conferring the advertised benefits on the user's computer) while failing to seriously repair any real damage that may affect the user's computer (which the consumer purchased the product to address in the first place). As it cannot remove viruses, protect a user's privacy, eliminate credible security threats, or stop other commonly occurring PC errors as PCI expressly represents it will do through its advertisements and test results, PCI failed to deliver on its promises.

Accordingly, the SAC addresses the defects set forth in the FAC Order and provides the requisite time, place, content, and parties involved in PCI's fraudulent conduct, and specifically alleges: (1) the "when" (January 17, 2012), (2) the "where" (on the Google browser and on PCI's website at www.pccleanerpro.com), (3) the "what" (Kulesa came across the PCI advertisements depicted in Figures 8-14, downloaded and utilized a "free diagnostic scan" of her PC provided by Defendant's PC Cleaner software, viewed specific representations regarding the supposed danger to and performance of her PC made within the software (as depicted in Figures 3-4 )

and, relied upon the representations by purchasing a full version of the software) and (4) the "who" (from PCI to those searching for its products and on its website). (SAC ¶¶ 43-50.) These allegations and accompanying screenshots undoubtedly satisfy the purpose of Rule 9(b) by giving PCI specific notice of the "particular misconduct which is alleged to constitute the fraud charged." *See Brooks v. ComUnity Lending, Inc.*, No. 07-cv-4501, 2010 WL 2680265, *9 (N.D. Cal. July 6, 2010).[2] Accordingly, this Court should deny PCI's motion to dismiss pursuant to Rule 9(b).

### C. PCI Has Breached the Express Warranties Appearing in its Advertising Materials, on its Websites and in its Software.

PCI also argues that Plaintiff's claim for breach of express warranties cannot stand because, purportedly, Kulesa fails to adequately plead "the terms of the warranty, how Plaintiff came to rely on the warranty, how PC Cleaner breached the warranty, or how the breach caused Plaintiff harm." (Def. Mot. p. 10.) PCI further claims that Kulesa didn't provide adequate notice of the breach. (*Id*. at 11.) PCI is mistaken.

To plead an action for breach of express warranty under California law, a plaintiff must allege: (1) the exact terms of the warranty; (2) reasonable reliance on those terms; and (3) a breach of warranty which proximately caused plaintiff's injury. *See, e.g., Sanders v. Apple Inc*., 672 F. Supp. 2d 978, 986–87 (N.D. Cal. 2009). Express warranties can be created by advertising statements disseminated to the public. *See Keith v. Buchanan*, 173 Cal. App. 3d 13, 22 (Cal. Ct. App. 1985) ("It is clear that statements made by a manufacturer or retailer in an advertising brochure which is disseminated to the consuming public in order to induce sales can create express warranties."); *see also Fundin v. Chicago Pneumatic Tool Co.*, 152 Cal. App. 3d 951

---

[2]     Although the circumstances constituting fraud must be pled with particularity, averments relating to knowledge and intent may be alleged generally. See Rule 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). In any case, there is nothing to suggest that PCI was in any way ignorant of the deceptive design and marketing of its PC Cleaner Pro software.

1   (Cal. Ct. App. 1984). Here, the SAC alleges, and directly quotes, PCI's
2   advertisements and representations that PC Cleaner would improve a computer's
3   efficiency and performance, fix PC errors, increase its stability, repair system errors,
4   and detect known and unknown threats. (SAC ¶¶ 19, 20.) These representations are
5   the exact terms of the express warranty that Plaintiff reasonably relied upon when
6   deciding to purchase the full version of PC Cleaner.

7       Plaintiff reasonably relied upon PCI's express warranties when she purchased and
8   downloaded the PC Cleaner software. (SAC ¶¶ 45, 50.) Contrary to PCI's express
9   representations, however, the software does not "accurately identify and report the
10  actual condition" of her computer, fix the errors causing the performance issues she
11  was experiencing with her computer, or otherwise perform the functions that PCI
12  represented it would. (*Id.* ¶¶ 34-37.)

13      Further, PCI had both actual and constructive notice of the breach. First, as the
14  designer and manufacturer of the software, PCI intentionally designed PC Cleaner to
15  perform in breach of its express warranties. *See In re McDonald's French Fries*
16  *Litig.*, 503 F. Supp. 2d 953, 956 (N.D. Ill. 2007) ("Direct notice is not required when
17  [] the seller has actual knowledge of the defect of the particular product"). As PCI
18  intended that the software be incapable of performing as represented by its marketing
19  materials, it had notice of its breach of express warranties.

20      PCI additionally had actual notice of Kulesa's dissatisfaction with its software.
21  The case was filed on May 4, 2012. On June 7, 2012, Plaintiff's counsel engaged in a
22  visual teleconference with then-defense counsel, Sean Flynn of Musick Peeler, during
23  which they explained Plaintiff's claims and provided counsel with a presentation of
24  the claimed defects in Defendant's software product. (*See* Declaration of Benjamin
25  H. Richman ¶¶ 3-4, attached as Exhibit 1.) Plaintiff's counsel followed up the
26  teleconference with a letter that outlined in further detail the landscape of similar

27
28

litigation then pending against Defendant's industry competitors and attached the presentation slides already shown to Defendant's counsel (including various screenshots of advertisements and in-software representations). (*Id.* ¶ 5.) The same presentation was given to Defendant's current counsel on July 19th, and the same letter forwarded on August 27th. (*Id.* ¶¶ 6-7.) While the phone call and written notices were provided after Kulesa had already initiated the action (but well before the instant SAC), such post-suit notice is sufficient to fulfill Plaintiff's notice requirement. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.,* 754 F. Supp. 2d 1145, 1180 (C.D. Cal. 2010) (post-filing notice may be given in satisfaction of requirement for breach of warranty claims) (relying on *Hampton v. Gebhardt's Chili Powder Co.*, 294 F.2d 172, 174 (9th Cir. 1961)) (finding that the notice requirement required by section 2607(3)(A) may be "given within a reasonable period of time…follow[ing] the commencement of the lawsuit provided it is subsequently and properly pleaded.").

And in any case, several months prior to filing suit, in January 2012, Kulesa posted an online complaint relating to the defects of the PC Cleaner Pro software. (*See* Kulesa Declaration, attached as Exhibit 2 and containing a true and accurate copy of the complaint.) PCI was well aware of Kulesa's online complaint, and in fact, responded to it in August 2012. Such complaints also satisfy Kulesa's notice burden. (*See* FAC Order, p. 14) (suggesting notice may be given in the form of a request for refund or complaint to PCI); *see also Metowski v. Traid Corp.*, 28 Cal. App. 3d 332, 339 (Ct. App. 1972) ("Conceivably, the statutory demand for notice might be satisfied by proof of complaints from some but not all the buyers of the product."). Accordingly, Kulesa has adequately pled her claim for breach of express warranties.

**D. Plaintiff's Amended Contract Claims Identify the Essential Terms of the Parties' Agreement—Kulesa's Money in Exchange for a Software Program That Would Fix the Problems She was Experiencing With Her Computer.**

PCI renews its argument that Kulesa's breach of contract and breach of the implied covenant of good faith and fair dealing claims fail to identify the "essential terms" of the contract and PCI's breach. This argument does not withstand careful scrutiny. The SAC provides specific details establishing the existence of the Parties' contract and PCI's breach.

**1. The SAC details the essential terms of the contract and PCI's breach of its terms.**

Under California law, a breach of contract claim must allege: "(1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to the plaintiff." *F.D.I.C. v. GB Escrow, Inc.*, No. 11-cv-05318 ODW JCG, 2011 WL 4550831, *4 (C.D. Cal. Sept. 28, 2011); *see Nw. Pipe Co. v. Travelers Indem. Co. of Conn.*, No. C-02-04189JF, 2003 WL 24027882, *3 (N.D. Cal. Feb. 12, 2003). For a sales contract, terms such as an agreed-upon price, a description of the product, the timing of delivery and payment, the parties involved, and whether or not those parties agreed to sell or buy an item for the agreed price, are generally required. *See In re Renfro-Wadenstein*, 47 F.2d 238, 243 (W.D. Wash. 1931) *modified*, 53 F.2d 834 (9th Cir. 1931) ("An agreed price, a vendor, a vendee, an agreement to sell for the agreed price, and agreement of vendee to buy for and pay the agreed price are essential elements of a contract of sale."); *Unihan Corp. v. Max Group Corp.*, No. CV 09-07921 MMM PLAX, 2011 WL 6814044 (C.D. Cal. Dec. 28, 2011), *appeal dismissed* (May 9, 2012) (citing *B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*, No. C 07–02864 JSW, 2007 WL 3232276, *7 (N.D. Cal. Nov. 1, 2007)) ("[E]ssential terms were not included in the promise, but rather, [ ] the [contract was] missing essential terms, such as price, contract duration, description of products, timing of purchases,

and quantity of products….”); *Green v. McClendon*, No. 08 CIV 8496 JGK, 2010 WL 3701333, *5 (S.D.N.Y. Sept. 20, 2010) *reconsideration denied*, No. 08 CIV 8496 JGK, 2010 WL 4642351 (S.D.N.Y. Nov. 16, 2010) (“The essential terms of a contract for the sale of goods are ‘quantity, price, and time and manner of delivery.’”) (internal citations and quotations omitted).

In this case, Kulesa alleges the price ($29.97) of PC Cleaner Pro 2012, a detailed description of the software and its supposed capabilities, specifically the ability to fix the detected errors and threats supposedly afflicting Kulesa’s computer, the parties involved in the contract—Plaintiff and the Class on one hand and PCI on the other— PCI’s sale of the software to Kulesa, and the timing and exchange of consideration. (SAC ¶¶ 47, 96.) Plaintiff and the Class accepted these terms and, upon remitting payment for the full version of the PC Cleaner software, entered into contracts with PCI. Plaintiff and the Class’s performance became complete once she and the Class paid, and PCI accepted, the purchase price of the software. (*Id.* ¶ 97.) These allegations more than adequately identify the essential terms of the Parties’ contract.

The SAC also explains PCI’s breach—its failure to provide software that performed the promised functions. (*Id.* ¶ 99.) Rather than provide software that could accurately detect and fix legitimate PC errors as advertised, PCI intentionally designed PC Cleaner to mischaracterize the true condition of computers. Further, the full version of the PC Cleaner software was incapable of improving performance, protecting privacy, or enhancing the security of any consumer’s computer. This is evident through Plaintiff’s allegation that “despite the fact that she repeatedly ran PC Cleaner’s scan, and purportedly ‘fixed’ the reported errors, her computer continued to suffer from the same problems she experienced prior to purchasing and running the software.” (*Id.* ¶ 49.) Thus, contrary to what Kulesa bargained-for, the PC Cleaner software didn’t fix the actual errors that were adversely affecting her computer’s

performance (like it said that it would do/was doing). (*Id.*) That the software would perform this critical function was perhaps the material term of the agreement, and what Plaintiff and the Class expected to receive from the contract. PCI's failure to provide software capable of fixing reported errors and threats—and capable of identifying and reporting the actual condition of a consumer's computer—plainly constitutes a breach of the sales contract.

As a result, Plaintiff and the Class suffered damages in the form of economic injury—overpaying for software that does not perform even close to as promised. (*Id.* ¶ 100.) Plaintiff thus adequately pleads the elements of her breach of contract claim.

### 2. Kulesa also adequately pleads her claim for breach of the implied covenant of good faith and fair dealing.

Because Kulesa sufficiently alleges the terms and existence of a valid sales contract, her claim for breach of the implied covenant of good faith and fair dealing survives as well. Under California law, a breach of the implied covenant of good faith and fair dealing occurs when one party to a contract exercises its discretion in such a way as to deprive the other party of the benefits of the bargain. *See Perdue v. Crock Nat'l Bank*, 38 Cal. 3d 913, 923 (1985); *Auto. Vending Co. v. Wisdom*, 182 Cal. App. 2d 354, 358 (Cal. Ct. App. 1960); *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1147 (Cal. Ct. App. 1990) (covenant of good faith and fair dealing "implied in every contract as a method to protect the interests of the parties in having the contractual promises and purposes performed."). Here, PCI exercised its discretion by intentionally designing PC Cleaner so that it would only pretend to be fixing serious PC errors instead of the issues actually adversely affecting the performance of her computer and so as to make it difficult for consumers to uncover its fraudulent design. *See Carma Developers (California), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 372 n.11 (1992). PCI's behavior created the illusion that the benefits of the contract were being supplied (when in fact, they were not), deprived Kulesa of the

benefit of the agreement, and frustrated the contract's entire purpose. (SAC ¶¶ 97, 98.) Thus, whereas the FAC didn't detail the alleged contract that was breached so as to support an implied covenant claim (FAC Order, p. 16), the SAC specifically sets forth the contract terms PCI failed to honor. As a result, the Court should find that Plaintiff has adequately stated her claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

### E. Kulesa Properly Seeks Punitive Damages and Injunctive Relief to Counteract PCI's Continued Fraud on Her and the Putative Class Members.

PCI next argues that Kulesa cannot seek injunctive relief as the SAC does not allege that she faces a likelihood of future injury. PCI's argument, however, fails to consider that the PC Cleaner software at issue remains on the market (in substantially the same form), and thus it is possible for Kulesa and other customers to re-encounter PCI's misleading products. Furthermore, Kulesa's annual software "license" has yet to expire. Thus, she is still entitled to what PCI represented she was paying for— functioning software that would accurately identify and fix the errors negatively affecting her computer's performance.

The instant facts are similar to those faced by the court in *Sanbrook v. Office Depot*, where despite being refunded the full purchase price of her computer insurance plan, the court found the plaintiff was still entitled to the remaining months of coverage under her plan and had standing to seek injunctive relief under the UCL. *Sanbrook v. Office Depot, Inc.*, No. C-07-05938 RMW, 2008 WL 1994884 (N.D. Cal. May 5, 2008). In *Sanbrook*, the court found defendant's argument "that there is no evidence that Sanbrook's injury is likely to be repeated because the return of Sanbrook's purchase price for the Plan demonstrates that she is no longer utilizing the Plan, and…the two-year term of the Plan is due to expire in less than seven months and there is no evidence that Sanbrook's computer will fail again during that

1   time" to be unavailing. *Id.* Instead, the court found that plaintiff had standing to seek

2   injunctive relief because "there is still a likelihood that some repair or replacement of

3   the computer may be required during the time remaining on the Plan." Similarly here,

4   Kulesa remains entitled to the value of her time left under the license, and thus, has

5   standing to seek injunctive relief that will ensure the software functions (as

6   advertised) during that time. As such, Kulesa has standing to pursue injunctive relief.

7   Ultimately, PCI's argument threatens a court's ability to order injunctive relief in

8   any case where the fraudulent transaction giving rise to the claim has been

9   consummated. PCI offers no reason the Court should restrain itself.

10   PCI finally argues for dismissal of Plaintiff's request for punitive damages,

11   claiming the request is inappropriate under Cal. Civ. Code § 3294 and that the SAC is

12   not specific enough to plead such damages. Section 3294 permits the imposition of

13   punitive damages, however, "in an action for the breach of an obligation not arising

14   from contract" and where there is "clear and convincing evidence that the defendant

15   is guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294. As Plaintiff now

16   alleges fraud with the requisite specificity, her request for punitive damages should

17   stand as well.

18   **IV. CONCLUSION**

19   For the foregoing reasons, Plaintiff Virginia Kulesa, individually and on behalf of

20   all other similarly situated individuals, respectfully requests that the Court enter an

21   Order (i) denying PCI's motion to dismiss in its entirety, (ii) requiring PCI to answer

22   Plaintiff's Second Amended Class Action Complaint, and (iii) providing such other

23   and further relief as the Court deems reasonable and just.[3]

24

25   _____
    [3]      In the event the Court disagrees with Plaintiff and grants Defendant's motion,
26   Plaintiff respectfully requests leave to add further detail, additional claims, or
    otherwise take steps necessary to cure any defects found by the Court in her
27   pleadings. *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393,
    1401 (9th Cir. 1986) (leave should be granted unless complaint cannot be cured).
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

**VIRGINIA KULESA**, individually and on behalf of all others similarly situated,

Dated: December 17, 2012

By: /s/ Benjamin H. Richman
    One of Plaintiff's Attorneys

JAY EDELSON (*Pro Hac Vice*)
jedelson@edelson.com
RAFEY S. BALABANIAN (*Pro Hac Vice*)
rbalabanian@edelson.com
BENJAMIN H. RICHMAN (*Pro Hac Vice*)
brichman@edelson.com
CHANDLER R. GIVENS (*Pro Hac Vice*)
cgivens@edelson.com
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone:  (312) 589-6370
Facsimile:  (312) 589-6378

SEAN P. REIS (No. 184044)
sreis@edelson.com
EDELSON MCGUIRE LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone:  (949) 459-2124
Facsimile:  (949) 459-2123

1

## <u>CERTIFICATE OF SERVICE</u>

2

   I, Benjamin H. Richman, an attorney, hereby certify that on December 17,
3    2012, I served the above and foregoing ***Plaintiff's Response in Opposition to
     Defendant PC Cleaner Inc.'s Motion to Dismiss Second Amended Complaint***, by
4    causing a true and accurate copy of such paper to be filed and served on all counsel
     of record via the Court's CM/ECF electronic filing system, on this the 17th day of
5    December 2012.

6                                        /s/ Benjamin H. Richman

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28