1   JAY EDELSON (Admitted *Pro Hac Vice*)
    jedelson@edelson.com
2   RAFEY S. BALABANIAN (Admitted *Pro Hac Vice*)
    rbalabanian@edelson.com
3   BENJAMIN H. RICHMAN (Admitted *Pro Hac Vice*)
    brichman@edelson.com
4   CHANDLER R. GIVENS (Admitted *Pro Hac Vice*)
    cgivens@edelson.com
5   EDELSON MCGUIRE, LLC
    350 North LaSalle Street, Suite 1300
6   Chicago, Illinois 60654
    Telephone: (312) 589-6370
7   Facsimile: (312) 589-6378

8   SEAN P. REIS (SBN 184044)
    sreis@edelson.com
9   EDELSON MCGUIRE, LLP
    30021 Tomas Street, Suite 300
10  Rancho Santa Margarita, California 92688
    Telephone: (949) 459-2124
11  Facsimile: (949) 459-2123

12  *Attorneys for Plaintiff* VIRGINIA KULESA

13          **IN THE UNITED STATES DISTRICT COURT**

14          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

15
    VIRGINIA KULESA, individually and         Case No. 12-CV-00725-JVS-AN
16  on behalf of all others similarly situated,
                                                **THIRD AMENDED**
17          *Plaintiff,*                        **COMPLAINT FOR:**

18      *v.*                                    1.  **Violations of California's Unfair**
                                                    **Competition Law, Cal. Bus. &**
19  PC CLEANER, INC., a California                  **Prof. Code §§ 17200,** *et seq.***;**
    corporation,                                2.  **Fraudulent Inducement;**
20                                              3.  **Breach of Express Warranties,**
            *Defendant.*                            **Cal. Com. Code § 2313;**
21                                              4.  **Breach of Contract; and**
                                                5.  **Breach of the Implied Covenant**
22                                                  **of Good Faith and Fair Dealing.**

23                                              Judge: Honorable James V. Selna

24                                              Action Filed: May 4, 2012

25

26

27

28

---

THIRD AMENDED COMPLAINT                     CASE NO. 12-CV-00725-JVS-AN

1    Plaintiff Virginia Kulesa ("Kulesa" or "Plaintiff") brings this Second Amended

2  Class Action Complaint ("Complaint") against Defendant PC Cleaner, Inc. ("PCI" or

3  "Defendant") for its deceptive design and sale of its PC Cleaner Pro software to the

4  detriment of Plaintiff and all similarly situated individuals. Plaintiff, for her

5  Complaint, alleges as follows upon personal knowledge as to herself and her own

6  acts and experiences and, as to all other matters, upon information and belief,

7  including investigation conducted by her attorneys.

8                              **NATURE OF THE ACTION**

9      1.    PCI develops software that it claims will increase the speed,

10  performance, and stability of a consumer's personal computer ("PC"), protect against

11  privacy risks, and remove harmful system errors. Unfortunately for consumers,

12  however, PCI's methods of inducing consumers to purchase the software, as well as

13  the product itself, are deceptive and misleading.

14      2.    Through a common deceptive scheme, PCI uniformly deceives

15  consumers into purchasing the software product at issue in this lawsuit—PC Cleaner

16  Pro ("PC Cleaner").

17      3.    PCI first represents to consumers that PC Cleaner was designed to,

18  among other things, improve the speed and performance of computers, protect against

19  privacy and security threats such as viruses and malware, and remove harmful PC

20  errors.

21      4.    Next, to convince a given consumer of PC Cleaner's supposed value,

22  PCI strongly encourages downloading a free trial version of the software to conduct a

23  diagnostic scan of the consumer's computer. This scan purportedly detects errors that

24  lead to the problems explained above—problems that PC Cleaner is supposedly

25  designed to fix. PCI then invariably reports in alarmist fashion that the consumer's

26  computer suffers from thousands of harmful errors, including viruses, and privacy

27

28

---

THIRD AMENDED COMPLAINT            2            CASE NO. 12-CV-00725-JVS-AN

1  and security threats. Finally, PCI informs the consumer that to fully remove the

2  purported errors, the consumer must purchase and register the full version of PC

3  Cleaner.

4      5.      Despite the foregoing, and contrary to PCI's marketing and in-software

5  representations, neither the free trial version nor the full registered version of PC

6  Cleaner *performs any credible diagnostic testing* on the consumer's computer. In

7  reality, PCI intentionally designed PC Cleaner to invariably and ominously report

8  that the consumer's PC needs repair and is at risk due to harmful errors, privacy risks,

9  and other computer problems—regardless of the real condition of the computer.

10      6.      The misrepresentations described above—both through PCI's marketing

11  and in-software graphical and textual assertions—are used to fraudulently induce and

12  trick consumers into purchasing, and continuing to use the PC Cleaner software.

13      7.      PCI holds itself out as a reputable developer of software designed to

14  protect consumers' computers. Because average consumers lack the requisite

15  technical expertise to understand the underlying functionality of PCI's software, they

16  trust PCI to convey truthful information, and to honestly and accurately identify and

17  remove harmful errors from their computers. PCI betrayed that trust, and as a result,

18  thousands of consumers have been, and continue to be, duped into buying software

19  they do not need. In light of PCI's willful conduct, Plaintiff seeks punitive damages.

20                              **PARTIES**

21      8.      Plaintiff Virginia Kulesa is a natural person and citizen of the State of

22  New York.

23      9.      Defendant PC Cleaner, Inc. is a corporation incorporated in and existing

24  under the laws of the State of California with its headquarters and principal place of

25  business located at 220 Newport Center Drive, Suite 197, Newport Beach, California

26  92660. PCI does business throughout the State of California and the United States.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) at least one Class member is a citizen of a different state than PCI, (b) the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

11.    This Court has personal jurisdiction over PCI because it conducts all of its business operations in this District and the unlawful conduct alleged herein occurred in, was directed to, and/or emanated from this District. Additionally, PCI is headquartered in this District.

12.    Venue is proper in this District under 28 U.S.C. § 1391(a) because PCI resides in this District, and the injuries of which Plaintiff complains were directed to, and/or emanated from this District. Venue is additionally proper because PCI conducts significant business in this District, including soliciting consumer business and entering into consumer and business contracts.

## FACTUAL BACKGROUND

### I.    A Brief Overview of PC Cleaner, Inc.

13.    Founded in 2001, PC Cleaner, Inc. purports to be a company dedicated to developing "Internet security and PC optimization tools" with the mission of "improving and maximizing [the] true potential" of its customers' computers.

14.    PCI claims that PC Cleaner, now in its tenth version, is capable of fixing PC errors, removing malware, protecting the user's privacy, "boost[ing] performance by up to 200%," and speeding up the user's Internet browsing experience.

**II.      PCI Uses Scare Tactics to Trick Consumers into Purchasing PC Cleaner.**

15.     PCI heavily promotes PC Cleaner[1] through online advertisements and on its websites as software capable of increasing computer speed or performance, removing harmful computer errors, and protecting users' privacy and security.

16.     For example, if a consumer searches the World Wide Web for software to enhance their computer's performance, he or she will likely encounter PCI's advertisements for PC Cleaner, including the following:

- "Repair, Secure & Optimize Your PC in Minutes!";
- "Safely clean, repair and optimize your PC now"; and
- "Clean your computer from unneeded files, system junk and application leftovers."[2]

17.     When a consumer clicks on a hyperlink in one of these advertisements, PCI presents the consumer with representations designed to frighten the consumer into believing that their computer is at serious risk. For instance, PCI warns that:

- "Malware steals your information and can cause permanent damage to your computer";
- "[Y]our system's registry is vulnerable to errors that can cause computer slowdowns, error messages, frozen programs, system crashes and applications that no longer work";
- "9 out of every 10 PCs have errors or may be infected"; and
- "[E]very 10 computers have infections, PC errors, System clutter, Un-optimized PC and internet connections, and unreliable or no

---

[1]      PCI has several versions of PC Cleaner, including PC Cleaner Pro 2010, 2011, and 2012. While different in name, each version of the software is substantially similar in functionality.
[2]      These and other similar representations are displayed in the form of "banner" advertisements and sponsored hyperlinks displayed when a user conducts an Internet search for software to fix computer problems, as well as on Defendant's websites located at www.pccleanerpro.com, www.pc-cleaners.com, and www.pc-cleanerpro.net.

1        privacy protection."[3]

2        18.    Regardless of where the consumer encounters these statements, PCI

3 strongly encourages the consumer to download PC Cleaner to protect their computer,

4 thus triggering the initial phase of PCI's deceptive scheme: misrepresenting PC

5 Cleaner's utility.

6       **A.    PCI misrepresents the utility of PC Cleaner.**

7        19.    On its website, PCI asserts that PC Cleaner will improve a computer's

8 efficiency and performance, increase its stability, repair system errors, and provide a

9 "comprehensive tool to fix [a variety of other computer] problems."

10      20.    More specifically, PCI expressly warrants that PC Cleaner was designed

11 to perform the following tasks:

12        • "[B]oost Windows startup and Web speed";

13        • "[P]rotect you by cleaning up all the unwanted history data on your

14           computer which could also put you at risk of identity theft";

15        • "[O]ptimize PC[s]";

16        • "Fix PC Errors";

17        • "Detect known and unknown threats"; and

18        • "Remove all types of viruses."

19      21.    But these representations do not accurately reflect PC Cleaner's true

20 capabilities. The truth is that, at its core, PC Cleaner performs only two main

21 functions: it's a registry cleaner[4] and it removes superfluous 'temporary' files from a

22 user's hard drive. These operations do not come close to squaring with PCI's

23 representations about the functionality of PC Cleaner. For instance, neither of these

24

---

25  [3]   *Id.*

26  [4]   "Registry cleaner" software is a type of utility program designed to remove unwanted or redundant items from the Microsoft Windows operating system registry.

27 The "registry" is a database of configuration settings that helps facilitate the operation of computer applications in the operating system.

28

1    functions will remove viruses, protect a user's privacy, eliminate any credible

2    security threats, nor stop commonly occurring PC errors.

3        22.    After consumers—most of whom are searching for software to fix

4    seriously malfunctioning computers—are informed that PC Cleaner is capable of

5    performing the tasks above, PCI moves to the second phase of its deceptive scheme:

6    convincing consumers that their computers are afflicted by errors that lead to the

7    problems PCI claims PC Cleaner was designed to fix.

8        **B.**    **PCI falsely informs consumers that their computers need repair.**

9        23.    Through its website, PCI recommends that the consumer download the

10   trial version of PC Cleaner and conduct a free scan to detect issues that the product is

11   supposedly designed to identify and fix. *See* Figures 1-2 (showing screenshots of

12   advertisements displayed on PCI's websites for the free trial version of PC Cleaner).



**(Figure 1.)**



**(Figure 2.)**

25       24.    The problem with PCI's approach is that, through these marketing

26   materials, consumers are lead to believe that PC Cleaner's free scan will detect the

---

THIRD AMENDED COMPLAINT       7       CASE NO. 12-CV-00725-JVS-AN

1  sort of computer errors causing the problems that PCI claims PC Cleaner will fix

2  (*i.e.*, errors, viruses, and security and privacy threats). But, as explained above, that is

3  simply not true.

4          25.    Immediately after installing PC Cleaner, the third phase of the scheme

5  begins: the software informs the user that thousands of harmful errors exist on the

6  computer, and then offers to fix such "errors"— but only after purchase of the full,

7  registered version of PC Cleaner.

8          **C.    PCI designed PC Cleaner to invariably report benign errors as**

9          **harmful to induce users to purchase its software.**

10         26.    After the consumer downloads and installs PC Cleaner, the software

11  immediately begins conducting the "free diagnostic scan."

12         27.    Once the scan is complete, PC Cleaner displays a warning to the user in

13  alarmist fashion that *thousands* of serious problems exist on the computer and

14  "require attention." The software also warns—using ominous white on red typeface

15  and a graphical depiction of an alert sign—that the "Performance" and "Security" of

16  the user's PC is in "Critical" condition.

17         28.    In addition to the graphical depictions of the computer's overall status,

18  PC Cleaner displays an itemized list of errors and problems purportedly identified by

19  the software. These problems are broken down by category and accompanied by a

20  gauge, which ranges from "Good" to "Critical," and represents the supposed

21  "Damage Level[s]" caused by the problem. Next to the gauge, PC Cleaner displays

22  the number of problems purportedly identified by the software, accompanied by

23  descriptions of the implications of leaving the problems unfixed.

24         29.    After viewing the results of the diagnostic scan, PC Cleaner displays to

25  the user a half-page warning with bold red letters stating: "PC Cleaner Pro has

26  determined that your computer requires immediate attention!" *See* Figure 3 (showing

27  a screenshot of PC Cleaner's error reporting interface and registration and/or

28

1    activation page). The user is then given the option to purchase the full version of the

2    software to "fix" and repair the harmful errors detected.



13   **(Figure 3.)**

14        30.    The truth, however, is that PC Cleaner's alarmist messages are simply

15   scare tactics—common to this industry—used by PCI to frighten consumers into

16   purchasing its software.

17        31.    Through her attorneys, Plaintiff engaged a computer forensics expert to

18   examine PC Cleaner. The results of this investigation confirm that PC Cleaner is

19   designed to *always* report that a user's computer is severely damaged—regardless of

20   the condition or type of computer the software is installed on. Ostensibly, these

21   representations scare the user into believing that the computer is damaged, or at risk,

22   and that the purchase, and continued use of PC Cleaner is necessary to "fix" these

23   problems. Worse, Plaintiff's expert revealed that the errors reported as "Critical" are

24   *not* credible threats to a computer's functionality.

25        32.    For example, Figure 4 below shows the results of a diagnostic scan

26   conducted by the expert *on a brand new computer*.

27

28

THIRD AMENDED COMPLAINT            9            CASE NO. 12-CV-00725-JVS-AN

**(Figure 4.)**

33.    Figure 4 shows PC Cleaner indicating that the overall "Performance" of the computer, as illustrated by the gauge on the top right of the screen, is "in the red," that "1126 problems require attention," and that at least some of those problems, are causing "Critical" or "Serious" damage to the computer system—even though this test computer has never been used.

34.    The expert's research also shows that PC Cleaner was deliberately designed to mischaracterize the severity of errors to shock consumers into believing their computers are damaged. For example, in Figure 5 below, the expert planted a number of fake, innocuous errors (displayed in the circle shown in the Figure) that cannot cause damage to a computer. Tellingly, Figure 5 below shows PC Cleaner detecting this fake error and reporting that it is causing the computer "Critical" damage—a flagrant mischaracterization of this fake, non-damage causing error.



**(Figure 5.)**

35.   Not only does PC Cleaner detect and mischaracterize non-damaging items as harmful, but the software also identifies naturally recurring system files as threatening. In simple terms, this means that the software will *always* report that certain files, which are not actually detrimental to a PC, are causing the computer harm because the files will always exist due to the normal operations of the computer system. *See* Figure 6 (showing an automatically recurring Microsoft Windows log file being detected by PC Cleaner as an error that causes "Minor Damage" to the computer).



**(Figure 6.)**

36.     These examples are just the tip of the iceberg. In total, Plaintiff's expert uncovered that PCI programmed both the free trial and full registered version of PC Cleaner to (i) always identify problems on a user's computer (even where none exist), (ii) artificially inflate the number of errors and security risks detected on a user's computer, (iii) characterize innocuous items as errors, (iv) arbitrarily report that the user's "Security" and "Performance" are low without any credible assessment of these issues, (v) arbitrarily characterize individual errors as "Critical," and (vi) prevent users from exiting the software without purchase of the product.

37.     Indeed, even after purchasing the full, registered version of the software, PC Cleaner continues to falsely detect and report errors (as it was intentionally designed by PCI to do). Presumably this is designed to defraud users into believing that the continued use of the software is necessary to repair so-called errors on their computers, and eventually, to induce them to upgrade or re-purchase the software after it expires.

38.     Through the deceptive scheme described above, PCI has profited, and continues to profit, by defrauding consumers into believing that their computers are

1  severely damaged and/or at risk, and that the purchase—for $29.97—and continued

2  use of the PC Cleaner software is necessary to "fix" these problems. But, because the

3  software does not actually provide the benefits advertised, PC Cleaner does not

4  deliver on its promises to its users.

5  **III.    PCI is Not Alone in its Fraudulent Conduct.**

6  39.    Unfortunately for consumers, PCI is not alone in its use of the sorts of

7  fraudulent programmatic design and marketing practices at issue in this case. Rather,

8  the utility software industry has been fraught with these tactics for over a decade. It is

9  only recently, however, that software developers—like PCI and its competitors—

10  have been called to account for their profiting off of consumers who are unable to

11  identify the fraudulent technological design and methodologies underlying this type

12  of supposedly performance-enhancing software.

13  40.    Indeed, numerous lawsuits have been filed against well-known

14  competitors of PCI (e.g., Symantec Corp. and AVG Technologies)—including

15  several by Plaintiff's counsel here—alleging similar claims related to the fraudulent

16  design and marketing of so-called software utility products. Several of those cases

17  have resulted in classwide settlements and industry-changing modifications to the

18  software products at issue—making their detection, reporting and repairing

19  mechanisms far more transparent and more accurate when it comes to informing

20  consumers of the threats posed by existing errors on their computers—and still others

21  are being actively litigated.

22  41.    But, rather than make the necessary changes to its software so that it

23  *actually* detects, reports and repairs harmful errors and problems on users' PCs, PCI

24  continues to profit handsomely through its fraudulent conduct.

25  **IV.    Plaintiff Kulesa's Experience.**

26  42.    In 2011, Kulesa's computer began malfunctioning. Her computer and

27

28

THIRD AMENDED COMPLAINT          13          CASE NO. 12-CV-00725-JVS-AN

1  Internet speed drastically decreased, she began to receive numerous error messages

2  on her computer screen, and her PC would often freeze. As a result, Kulesa began

3  performing Internet searches for software to fix her computer.

4        43.    On or around January 17, 2012, after performing a Google search,

5  Kulesa encountered one of PCI's sponsored advertisements for PC Cleaner—

6  substantially similar to the advertisement shown in Figure 7 below. *See* Figure 7

7  (showing a screenshot of PCI's sponsored advertisement displayed through a Google

8  search).

9



10

11

12  **(Figure 7.)**

13        44.    After viewing PCI's advertisement for PC Cleaner, Kulesa navigated to

14  PCI's website (www.pccleanerpro.com) and read PCI's express warranties about the

15  software's utility, which were the same, or substantially similar to the representations

16  shown in Figures 8-14 below. *See* Figures 8-14 (showing screenshots of PCI's

17  advertisements for the PC Cleaner software maintained on PCI's websites).

18



19

20

21  **(Figure 8.)**

22

23

24

25

26  **(Figure 9.)**

27

28

1

2

3


**Increase Your PC's Performance**
PC optimization is the quickest way to adjust your system settings at once. PC Cleaner will analyze your system & adjust your PC to function at its maximum potential performance.

4

5

**(Figure 10.)**

6

7


**Boost Your PC's Speed**
PC Cleaner will tweak your complete system to help boost your PC speed and overall system performance. You could have faster downloads, uploads, web surfing and more.

8

9

**(Figure 11.)**

10

11


**Clean Your System**
In using a computer from day to day you're going to accumulate system clutter. You can significantly increase your PC performance & stability by removing these files.

12

13

**(Figure 12.)**

14

15


**Privacy Protection**
PC Cleaner is designed to protect you by cleaning up all the unwanted history data on your computer which could also put you at risk of identity theft.

16

17

**(Figure 13.)**

18

19

**System Optimizer**
PC System Optimizer is the fastest way to adjust all your system settings at once. The PC Optimizer works by determining what type of PC you have and what programs you have installed. Then it will adjust system settings so that your machine will function at its maximum capacity.

20

21

**(Figure 14.)**

22    45.    Relying upon the representations made by PCI—namely, that PC

23  Cleaner would "Boost PC Speed," "Fix PC Errors," "Stop Malware" and "Repair,

24  Secure & Optimize [her] PC" and Internet connection, and perform the other tasks

25  described in Figures 8-14—Kulesa downloaded the software.

26    46.    After Kulesa installed PC Cleaner, the software conducted a "scan" of

27

28

---

THIRD AMENDED COMPLAINT          15          CASE NO. 12-CV-00725-JVS-AN

1  her computer. Kulesa recalls that the software informed her that thousands of serious

2  errors were detected, at least some of which PC Cleaner informed her were causing

3  her computer "Critical" damage. PC Cleaner also displayed gauges representing her

4  system's "Performance" and "Security" levels, with both gauges containing a needle

5  pointing "in the red" (indicating that such levels were in "Critical" condition).

6  Additionally, PC Cleaner warned her, both aurally and through text, that these

7  problems were decreasing her computer's performance and compromising her

8  security—thus requiring her immediate attention—and urged her to purchase the

9  software in order to "fix" these problems. *See* Figure 3 above (showing a screenshot

10  of PC Cleaner's error reporting interface and registration and/or activation page).

11       47.     After clicking a button labeled "Fix All," Kulesa was forwarded to a PCI

12  webpage to "register" PC Cleaner in order to fix the thousands of purported problems

13  identified on her computer. Reasonably believing that PC Cleaner's analysis was

14  correct and that her computer urgently needed repair, Kulesa paid PCI $29.97 to

15  activate her copy of PC Cleaner (specifically, the PC Cleaner Pro 2012 version),

16  allowing her to repair the purported errors.

17       48.     In reality, as discussed above, PC Cleaner did not actually detect

18  thousands of "Critical" errors as Defendant claimed that it would—because the

19  software arbitrarily detects and reports problems as "Critical" and cannot actually

20  perform the beneficial tasks described in its marketing materials and advertisements.

21  Nor did the software accurately identify and report the *actual* condition of Kulesa's

22  computer. Rather, PC Cleaner was designed to always report the damning results

23  discussed above. As such, Kulesa was misled into believing that her computer was at-

24  risk, and that she needed to pay to register PC Cleaner in order to repair it.

25       49.     Similarly, the full version of the PC Cleaner software that Kulesa

26  purchased could not and did not perform as advertised by PCI. Instead, PCI designed

27

28

---

1    the full version, like the trial version, to invariably return false errors as detailed in

2    Section II.C above. In fact, every time Kulesa ran PC Cleaner, the software reported

3    that harmful errors were adversely affecting her computer and that she needed to

4    "fix" the errors using PC Cleaner. Yet, despite the fact that she repeatedly ran PC

5    Cleaner's scan, and purportedly "fixed" the reported errors, her computer continued

6    to suffer from the same problems she experienced prior to purchasing and running the

7    software.

8         50.    Defendant was aware of Kulesa's experience with its software.

9         51.    Indeed, on or around January 29, 2012, Kulesa posted an online

10   complaint about PC Cleaner Pro 2012 software on the online consumer complaint

11   website, www.Scambook.com. The online complaint referenced the deceptive nature

12   of the PC Cleaner Pro marketing materials and software, and how the software failed

13   to operate as PCI represented it would.

14        52.    On August 23, 2012, Kulesa received an e-mail notification from

15   Scambook.com indicating that Defendant had reviewed her online complaint and

16   wished to resolve it. However, because this lawsuit was already underway, she did

17   not respond.

18        53.    In short, but for PCI's misrepresentations—regarding the functionality

19   of PC Cleaner and that her computer had "Critical" system problems, poor

20   "Performance" and "Security" statuses, and that thousands of other problems

21   urgently needed repair—Kulesa would not have paid to register a full version of

22   PCI's PC Cleaner software.

                                **CLASS ALLEGATIONS**

24        54.    **Class Definition:** Plaintiff Kulesa brings this action pursuant to Fed. R.

25   Civ. P. 23(b)(2) and (b)(3) on behalf of herself and a class (the "Class") of similarly

26   situated persons, defined as follows:

27

28

All individuals and entities in the United States and its territories that have purchased PC Cleaner Pro from PC Cleaner, Inc.

Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released, and (5) the legal representatives, successors, or assigns of any such excluded person.

55.     **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but on information and belief, PCI has sold its software to thousands of Class members throughout the country, making joinder of each individual member impracticable. Ultimately, the Class members will be easily identified through PCI's records.

56.     **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of PCI's uniform wrongful conduct during transactions with Plaintiff and the Class.

57.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and PCI has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor her counsel has any interest adverse to those of the other members of the Class.

58.     **Commonality and Predominance**: Common questions of law and fact

1    exist as to all members of the Class and predominate over any questions affecting

2    only individual members:

   a)    whether Defendant intentionally designed PC Cleaner to
         invariably report that harmful errors and threats exist on a user's
         computer, regardless of the computer's actual condition;

   b)    whether Defendant intentionally misrepresented the functionality
         of its PC Cleaner software;

   c)    whether Defendant's conduct described herein was willful;

   d)    whether Defendant's conduct described herein constitutes a
         violation of California's Unfair Competition Law (Cal. Bus. & Prof.
         Code §§ 17200, *et seq.*);

   e)    whether Defendant's conduct described herein constitutes
         fraudulent inducement;

   f)    whether Defendant has breached its express warranties;

   g)    whether Defendant's conduct described herein constitutes a
         breach of contract; and

   h)    whether Defendant's conduct described herein constitutes a
         breach of the implied covenant of good faith and fair dealing.

19          59.    **Superiority**: This class action is appropriate for certification because

20    class proceedings are superior to all other available methods for the fair and efficient

21    adjudication of this controversy and joinder of all members of the Class is

22    impracticable. The damages suffered by the individual members of the Class will

23    likely be small relative to the burden and expense of individual prosecution of the

24    complex litigation necessitated by PCI's wrongful conduct. Thus, it would be

25    virtually impossible for the individual members of the Class to obtain effective relief

26    from PCI's misconduct. Even if members of the Class could sustain such individual

1   litigation, it would not be preferable to a class action because individual litigation

2   would increase the delay and expense to all parties due to the complex legal and

3   factual controversies presented in this Complaint. By contrast, a class action presents

4   far fewer management difficulties and provides the benefits of single adjudication,

5   economies of scale, and comprehensive supervision by a single court. Economies of

6   time, effort, and expense will be fostered, and uniformity of decisions will be

7   ensured.

8         60.   **Policies Generally Applicable to the Class**: This class action is also

9   appropriate for certification because PCI has acted or refused to act on grounds

10   generally applicable to the Class, thereby requiring the Court's imposition of uniform

11   relief to ensure compatible standards of conduct toward the members of the Class,

12   and making final injunctive relief appropriate with respect to the Class as a whole.

13   PCI's policies challenged herein apply and affect members of the Class uniformly

14   and Plaintiff's challenge of these policies hinges on PCI's conduct with respect to the

15   Class as a whole, not on facts or law applicable only to Plaintiff. PCI has acted and

16   failed to act on grounds generally applicable to Plaintiff and the other members of the

17   Class, requiring the Court's imposition of uniform relief to ensure compatible

18   standards of conduct toward Plaintiff and the other members of the Class.

19         61.   Plaintiff reserves the right to revise the foregoing "Class Allegations"

20   and "Class Definition" based on facts learned in discovery.

**FIRST CAUSE OF ACTION**
**Violations of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiff and the Class)**

21

22

23

24         62.   Plaintiff incorporates by reference the foregoing allegations as if fully

set forth herein.

25

26         63.   California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200,

27   *et seq.* ("UCL"), protects both consumers and competitors by promoting fair

28

---

1   competition in commercial markets for goods and services.

2       64.   The UCL prohibits any unlawful, unfair, or fraudulent business act or

3   practice. A business practice need only meet one of the three criteria to be considered

4   unfair competition.

5       65.   The utility of a consumer product is a material term of any transaction

6   because it directly affects a consumer's choice of, or conduct regarding, whether to

7   purchase a product. Any deception or fraud related to the utility of a product is

8   materially misleading.

9       66.   As described herein, PCI engaged in fraudulent, unfair, and unlawful

10  business practices, as defined by the UCL, by, *inter alia*: (i) misrepresenting PC

11  Cleaner's utility, including through assertions such as those depicted in Figures 1-2

12  and 7-14; (ii) misrepresenting the health, performance and security of users'

13  computers through in-software representations found in the trial and full version of

14  the software as described in Section II.C; (iii) using the misrepresentations to induce

15  consumers into purchasing and continuing to use PC Cleaner; and (iv) selling a full

16  version of the software that lacked the advertised utility, similarly produced false

17  errors reports and otherwise was incapable of functioning as PCI represented it

18  would.

19      67.   Essentially, Defendant affirmatively represented to Plaintiff and the

20  Class that PC Cleaner would honestly and accurately scan their computers for

21  harmful problems, increase the speed and stability of their computers, and protect

22  their privacy. Further, through PC Cleaner's in-software representations found in

23  both the trial and full versions of the software, PCI affirmatively represented that the

24  health, performance and security of Plaintiff's and the Class's computers were

25  "Critical," and that thousands of harmful errors existed on their computers.

26      68.   PCI's representations were, in fact, false. PCI's PC Cleaner does not

27

28

(and cannot) actually perform all of the benefits Defendant promises through its marketing materials and websites. Likewise, PC Cleaner's scan results were false, because PC Cleaner did not perform any meaningful evaluation of Plaintiff's and the Class's computers before representing to Plaintiff and the Class that their computers needed repair.

69.     Furthermore, the *only reason* for consumers to purchase PC Cleaner is to ensure that computer errors are fixed and to increase their computers' performance. As such, the trial scan's false results and its failure to offer all of the utility advertised were deceptive and were likely to mislead reasonable consumers. Likewise, the full version is likely to mislead reasonable consumers into believing that the software is functioning as advertised and that it is necessary to continue to use the software to maintain the health and security of their computers.

70.     PCI has violated the UCL's "fraudulent" prong by knowingly making false representations of consumers'—including Plaintiff's and the Class's—computer's need for repair, with the specific intent to defraud as many consumers as possible into purchasing and continuing to use its PC Cleaner software.

71.     Reasonable consumers are likely to be, and Plaintiff and the Class were, deceived by PCI's misrepresentations about the scope of benefits that PC Cleaner offers.

72.     Reasonable consumers are also likely to be, and Plaintiff and the Class were deceived by PCI's misrepresentations regarding the health, performance and security of their computers and the computers' need for repair.

73.     PCI also violated the UCL's "unfair" prong by causing substantial injury to consumers through its fraudulent conduct described herein. The injuries caused by PCI's unfair conduct are not outweighed by any countervailing benefits to consumers or competition. Given the inequity of information between PCI and consumers

1   regarding PC Cleaner's functionality, PCI knew or had reason to know that Plaintiff

2   and the Class could not reasonably have known of or discovered the falsity of PCI's

3   representations or avoided the harm those misrepresentations caused.

4         74.    Further, PCI violated the UCL's "unlawful" prong by breaching its

5   express warranties to Plaintiff and the Class, in violation of Cal. Com. Code § 2313,

6   as detailed in Count III below. PCI's fraudulent marketing practices also violate

7   California's public policies favoring enforcement of implied and express warranties.

8         75.    PCI's fraudulent, unfair, and unlawful conduct occurred during the

9   marketing and sale of computer software products, and therefore occurred in the

10   course of Defendant's business practices.

11         76.    PCI's fraudulent, unfair, and unlawful conduct directly and proximately

12   caused Plaintiff and the Class actual monetary damages in the form of the price paid

13   (or a portion thereof) for PC Cleaner—typically $29.97.

14         77.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order (1)

15   awarding Plaintiff and the Class all appropriate damages, and (2) awarding

16   reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

17                      **SECOND CAUSE OF ACTION**
                       **Fraudulent Inducement**
18              **(On Behalf of Plaintiff and the Class)**

19         78.    Plaintiff incorporates by reference the foregoing allegations as if fully

20   set forth herein.

21         79.    As depicted with particularity in Figures 1-2 and 7-14, and throughout

22   all Counts of this Complaint, PCI has used, and continues to use, marketing tactics it

23   knows or reasonably should know are false and misleading.

24         80.    To induce Plaintiff and the Class to purchase PC Cleaner, PCI

25   affirmatively represented that PC Cleaner possessed certain utility. Specifically, PCI

26   represented that PC Cleaner would honestly and accurately scan Plaintiff's and the

27

28

Class's computers for harmful problems, increase their computers' speed and stability, protect their computers' security, and otherwise perform the beneficial tasks described in Section II. Further, through PC Cleaner itself, PCI affirmatively represented that the health of Plaintiff' and the Class's computers were "Critical" and that thousands of harmful errors existed on their computers.

81. PCI's affirmative representations were in fact false. In particular, PCI's PC Cleaner does not increase a computer's performance and stability in the manner PCI described, nor does it protect the user's security as represented. Likewise, PC Cleaner's representations upon installation were false, because it had not performed any meaningful evaluation of Plaintiff's and the Class's computers when it warned them of the need for computer repair.

82. The utility of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the utility of a product is materially misleading.

83. As PC Cleaner's designer, PCI knew that its representations about PC Cleaner's utility were false. PCI intentionally designed its public representations to mislead consumers about PC Cleaner's utility, and programmed PC Cleaner (both the trial and full version) to falsely report computer errors and to deceive users about the health, performance and security of their computers.

84. PCI intended that its misrepresentations would induce consumers to rely on, and act based on, the false claims of a computer's health or lack thereof. Defendant made these misrepresentations with the specific purpose to induce Plaintiff and the other members of the Class to rely upon them when downloading and paying to register a full version of the PC Cleaner software, and thereafter continuing to use the software.

1    85.   As a consumer lacking the requisite technical expertise to independently
2  gauge PC Cleaner's underlying functionality, and taking PCI's statements at face
3  value, Plaintiff justifiably relied upon PCI's misrepresentations, and would not have
4  purchased, nor continued to use, PC Cleaner but for the misrepresentations that her
5  computer needed PC Cleaner to perform the beneficial tasks advertised.

6    86.   By using false and fraudulent marketing tactics, and exaggerated and
7  fraudulent in-software representations, PCI has engaged in fraudulent practices
8  designed to mislead and deceive consumers into purchasing PC Cleaner.

9    87.   As a result of their reasonable reliance upon on PCI's
10  misrepresentations, Plaintiff and the Class have been damaged in the amount of PC
11  Cleaner's purchase price, or at least a portion thereof.

12    88.   Plaintiff therefore prays for relief in the amount of the purchase price (or
13  at least a portion thereof) of PCI's PC Cleaner. Plaintiff further alleges that PCI's
14  conduct and misrepresentations were made with malice and in conscious disregard
15  for Plaintiff's and the Class's rights, thereby entitling them to punitive damages
16  against PCI in an amount sufficient to deter such conduct in the future.

17              **THIRD CAUSE OF ACTION**
                **Breach of Express Warranties**
18            **Pursuant to Cal. Com. Code § 2313**
               **(On Behalf of Plaintiff and the Class)**
19
20    89.   Plaintiff incorporates by reference the foregoing allegations as if fully
   set forth herein.
21
22    90.   Pursuant to California Commercial Code § 2313, PCI's sale of PC
23  Cleaner included express warranties created by PCI's affirmation of facts and
   promises through its advertisements, websites, and in-software representations.
24
25    91.   PCI's express warranties included affirmations of fact and promises that
26  PC Cleaner would honestly and accurately identify, report and repair computer
   errors; increase computer speed, performance and stability; protect against privacy
27
28

---

THIRD AMENDED COMPLAINT          25          CASE NO. 12-CV-00725-JVS-AN

1   risks; remove harmful errors; and perform the tasks depicted in Figures 1-2 and 7-14

2   and described in Section II. In actuality, PCI intentionally designed its software to

3   falsely identify and/or exaggerate the presence of harmful errors, and misrepresent

4   the overall status of consumers' computers to deceive consumers into thinking the

5   software provided some utility. PC Cleaner simply cannot, and does not, perform the

6   tasks that PCI's marketing claims that it does.

7       92.    Plaintiff and the Class relied upon PCI's affirmations and promises

8   when purchasing PC Cleaner, and the affirmations formed the basis of the bargain, in

9   that Plaintiff and the Class believed they were purchasing software that would

10   honestly and accurately scan and repair their computers. But for PCI's affirmations

11   and promises, Plaintiff and the Class would not have purchased PC Cleaner.

12      93.    PCI breached its express warranties because both the free trial and full

13   versions of PC Cleaner did not perform any real diagnostic test on Plaintiff's or the

14   Class's computer systems. Rather, the software artificially and arbitrarily reported

15   that Plaintiff's and the Class's computers were afflicted with thousands of harmful

16   errors and that the health, "Performance" and "Security" levels of the computers were

17   "Critical," regardless of their actual condition. Moreover, the software failed to

18   increase the performance of Plaintiff's and the Class's computers.

19      94.    PCI's breach injured Plaintiff and the Class because they purchased a

20   product that was not worth the price they paid—software that does not actually

21   perform the beneficial tasks represented to them through PCI's affirmations and

22   promises.

23      95.    At all times, Defendant was on notice that it had breached its express

24   warranties made to Plaintiff and the Class, inasmuch as Defendant intentionally

25   designed PC Cleaner to falsely identify and/or exaggerate the presence of harmful

26   errors, and the overall health and security of their computers, and therefore, knew that

27

28

1   the software did not meet its warranties to the contrary.

2       96.   Defendant has been on notice that it breached its express warranties ever

3   since the development of its software and corresponding marketing materials, thus

4   PCI is fully aware that the software does not actually perform the tasks it claims

5   through representations on its websites and within the software itself.

6       97.   Further, following its review and response to her online complaint about

7   the software, Defendant also had notice of its breach of express warranties with

8   respect to Kulesa specifically.

9       98.   Accordingly, Plaintiff and the Class request maximum damages for

10   Defendant's breach of express warranties as provided by the California Commercial

11   Code.

12                **FOURTH CAUSE OF ACTION**
                    **Breach of Contract**

13           **(On Behalf of Plaintiff and the Class)**

14       99.   Plaintiff incorporates by reference the foregoing allegations as if fully

15   set forth herein.

16       100.   Plaintiff and the Class members entered into agreements with PCI

17   whereby PCI agreed to sell, and Plaintiff and the Class agreed to purchase, software

18   that would detect and remove legitimate computer errors from Plaintiff's and the

19   Class's computers. More specifically, PCI agreed to sell Plaintiff and the Class

20   software that was purportedly designed to increase the speed, performance and

21   stability of their computers and also to detect and repair a variety of harmful

22   computer errors, as depicted in Figures 1-2 and 7-14, and described in Section II.

23   Based on the foregoing representations, Plaintiff agreed to purchase PCI's software

24   and paid PCI $29.97.

25       101.   Plaintiff and the Class paid, and PCI accepted, PC Cleaner's purchase

26   price, and therefore performed their obligations under the contracts.

27

28

---

102.   As such, PCI voluntarily assumed a contractual obligation to provide Plaintiff and the Class with software that would perform the benefits depicted in Figures 1-2 and 7-14, and described in Section II, and that it would honestly diagnose and remove problems and/or errors from their computers.

103.   PCI breached its contracts with Plaintiff and the Class by intentionally designing the full version of the PC Cleaner software to mischaracterize the true condition of computers, and further by failing to provide software that performed the tasks depicted in Figures 1-2 and 7-14, and described in Section II—namely, improvements in the performance, privacy protection, and security of their computers. This obligation is a material term of the agreement. PCI did not honor this obligation as PC Cleaner did not increase the speed, performance, and stability of Plaintiff's and the Class's computers, nor did it protect against privacy risks or remove harmful system errors.

104.   The aforementioned breaches of contract have caused Plaintiff and the Class economic injury and other damages, including in the form of the purchase price of the PC Cleaner software, because they purchased a product that does not perform as PCI promised, and therefore lacks the utility contracted for.

## FIFTH CAUSE OF ACTION
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (On Behalf of Plaintiff and the Class)

105.   Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

106.   In order to benefit from PCI's purported utility software, Plaintiff and the Class affirmatively allowed PCI to install full versions of the PC Cleaner on their computers.

107.   PCI's agreement to install the full version of the software so as to increase the speed, performance and stability of Plaintiff's and the Class's computers and also to diagnose and remove harmful errors and threats from their computers—as

---

1   depicted in Figures 1-2 and 7-14, and described in Section II—in exchange for a fee

2   is a valid and enforceable contract between Plaintiff and the Class on the one hand,

3   and PCI on the other.

4       108.   This obligation is a material term of the agreement. PCI did not honor

5   this obligation.

6       109.   PCI acted in bad faith and breached the provisions of the agreement,

7   specifically by not honoring its responsibilities to perform truthful diagnostic and

8   remedial operations, as described herein, and instead, providing software that it

9   intentionally designed to produce false error reports, misrepresent the actual health

10  and security status of users' computer, and which was incapable of repairing the

11  purported errors. Indeed, PC Cleaner never provided any of the advertised benefits to

12  Plaintiff's and the Class's computers as it did not increase the speed, performance,

13  and stability of their computers, nor did it protect against privacy risks or remove

14  harmful system errors.

15      110.   California contract law recognizes the implied covenant of good faith

16  and fair dealing in every contract.

17      111.   Implicit in each contract with Plaintiff and the Class were provisions

18  prohibiting PCI from engaging in conduct that frustrated or injured Plaintiff's and the

19  Class's rights to receive the benefits of the agreement.

20      112.   Furthermore, PCI was obligated to comply with the provisions of Cal.

21  Com. Code § 2313.

22      113.   PCI voluntarily assumed a contractual obligation to provide software

23  that would honestly diagnose errors and threats on Plaintiff's and the Class's

24  computers, honestly indicate whether any such problems exist, and repair those

25  problems. This obligation is a material term of the agreement. PCI did not honor this

26  obligation.

27

28

1     114.   PCI breached the implied covenant of good faith and fair dealing by

2 failing to (i) provide a full version of the software that would perform the benefits

3 depicted in Figures 1-2 and 7-14, (ii) honestly and accurately inform consumers

4 about the true condition of their computers, and (iii) fully comply with the

5 proscriptions of applicable statutory law.

6     115.   PCI's misconduct and breach of the implied covenant of good faith and

7 fair dealing as described herein resulted in injury to Plaintiff and the Class in the

8 form of the price paid (or at least a portion thereof) for the full version of the

9 software and/or the price paid in excess of the software's actual utility, which

10 Defendant knowingly and wrongfully retained.

11                     **PRAYER FOR RELIEF**

12     WHEREFORE, Plaintiff Kulesa, on behalf of herself and the Class,

13 respectfully requests that this Court enter an order:

14     A.    Certifying this case as a class action on behalf of the Class defined

15 above, appointing Virginia Kulesa as class representative, and appointing her counsel

16 as class counsel;

17     B.    Declaring that Defendant's actions, as set out above, violate California's

18 Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), and constitute

19 fraudulent inducement, breach of express warranties pursuant to Cal. Com. Code

20 § 2313, breach of contract, and breach of the implied covenant of good faith and fair

21 dealing;

22     C.    Awarding damages, including statutory and punitive damages where

23 applicable, to Plaintiff and the Class in an amount to be determined at trial;

24     D.    Awarding Plaintiff and the Class their reasonable litigation expenses and

25 attorneys' fees;

26     E.    Awarding Plaintiff and the Class pre- and post-judgment interest, to the

27

28

1   extent allowable; and

2       F.    Awarding such other and further relief as equity and justice may require.

3   **DEMAND FOR JURY TRIAL**

4   Plaintiff demands a trial by jury for all issues so triable.

5   Respectfully submitted,

6   **VIRGINIA KULESA**, individually and on
    behalf of all others similarly situated,

7

8

9   Dated: January 18, 2013    By: _____
                            One of Plaintiff's Attorneys

10  JAY EDELSON (*Pro Hac Vice*)
    jedelson@edelson.com

11  RAFEY S. BALABANIAN (*Pro Hac Vice*)
    rbalabanian@edelson.com

12  BENJAMIN H. RICHMAN (*Pro Hac Vice*)
    brichman@edelson.com

13  CHANDLER R. GIVENS (*Pro Hac Vice*)
    cgivens@edelson.com

14  EDELSON MCGUIRE LLC
    350 North LaSalle Street, Suite 1300

15  Chicago, Illinois 60654
    Telephone: (312) 589-6370

16  Facsimile: (312) 589-6378

17  SEAN P. REIS (SBN 184044)
    sreis@edelson.com

18  EDELSON MCGUIRE LLP
    30021 Tomas Street, Suite 300

19  Rancho Santa Margarita, California 92688
    Telephone: (949) 459-2124

20  Facsimile: (949) 459-2123

21

22

23

24

25

26

27

28

---

THIRD AMENDED COMPLAINT      31      CASE NO. 12-CV-00725-JVS-AN

1

## CERTIFICATE OF SERVICE

2        I, Benjamin H. Richman, an attorney, hereby certify that on January 18, 2012, I
served the above and foregoing ***Plaintiff's Third Amended Class Action Complaint***,
3 by causing a true and accurate copy of such paper to be delivered to the persons show
below via electronic mail, and further by placing a true and accurate copy of such
4 paper in a postage prepaid envelope addressed to the persons shown below and
depositing such envelope in the U.S. Mailbox located at 350 North LaSalle Street,
5 Chicago, Illinois 60654, on this the 18th day of January 2012.

6 Hunter R. Eley
William H. Edmonson
7 Doll Amir and Eley LLP
1888 Century Park East, Suite 1850
8 Los Angeles, California 90067
heley@dolamir.com
9 wedmonson@dollamir.com

10

11

12                             Benjamin H. Richman

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| THIRD AMENDED COMPLAINT | 32 | CASE NO. 12-CV-00725-JVS-AN |