**FILED**
**CLERK, U.S. DISTRICT COURT**

**OCTOBER 4, 2013**

**CENTRAL DISTRICT OF CALIFORNIA**
**BY: _____jloz_____ DEPUTY**

1  JAY EDELSON (Admitted *Pro Hac Vice*)
   jedelson@edelson.com
2  RAFEY S. BALABANIAN (Admitted *Pro Hac Vice*)
   rbalabanian@edelson.com
3  BENJAMIN H. RICHMAN (Admitted *Pro Hac Vice*)
   brichman@edelson.com
4  CHANDLER R. GIVENS (Admitted *Pro Hac Vice*)
   cgivens@edelson.com
5  EDELSON LLC
   350 North LaSalle Street, Suite 1300
6  Chicago, Illinois 60654
   Telephone:  (312) 589-6370
7  Facsimile:  (312) 589-6378

8  SEAN P. REIS (SBN 184044)
   sreis@edelson.com
9  30021 Tomas Street, Suite 300
   Rancho Santa Margarita, California 92688
10 Telephone: (949) 459-2124
   Facsimile: (949) 459-2123

11

12 *Attorneys for Plaintiff* VIRGINIA KULESA *and the putative class*

13        **IN THE UNITED STATES DISTRICT COURT**

14        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

15 VIRGINIA KULESA, individually and       Case No. 8:12-cv-00725-FMO-AN
   on behalf of all others similarly
16 situated,                                **PLAINTIFF'S RENEWED MOTION**
                                            **FOR AND MEMORANDUM IN**
17              *Plaintiff*,                **SUPPORT OF PRELIMINARY**
                                            **APPROVAL OF CLASS ACTION**
18       *v.*                               **SETTLEMENT**

19 PC CLEANER, INC., a California           Date: November 7, 2013
   corporation,                            Time: 10:00 a.m.
20                                          Location: Courtroom 22, 5th Floor
              *Defendant*.                  Judge: Honorable Fernando M. Olguin
21

22

23

24

25

26

27

28

**To all parties and their counsel of record:**

**PLEASE TAKE NOTICE THAT** on November 7, 2013, at 10:00 a.m. PT, or as soon thereafter as this matter may be heard, Plaintiff Virginia Kulesa will appear, through counsel, before the Honorable Fernando M. Olguin, or any judge sitting in his stead, in Courtroom 22, 5th Floor at the United States District Courthouse for the Central District of California, Los Angeles Division, located at 312 North Spring Street, Los Angeles, California 90012, and then and there move the Court for an Order (i) granting preliminary approval of the Parties' proposed class action settlement, (ii) certifying the proposed Settlement Class for settlement purposes, (iii) approving the form and content of the proposed notice to the members of the Settlement Class, (iv) appointing Plaintiff Virginia Kulesa as Class Representative, (v) appointing her counsel as Class Counsel, and (vi) scheduling a Fairness Hearing in this matter.

Plaintiff's motion is based upon this Notice, the Memorandum of Points and Authorities filed herewith, the exhibits attached thereto, and the record in this Action, along with any oral argument that may be presented to the Court and evidence submitted in connection therewith.

This motion is made following the conference of counsel pursuant to L.R. 7-3.

Respectfully submitted,

**VIRGINIA KULESA**, individually and on behalf of all others similarly situated,

Dated: September 26, 2013        By: /s/ Benjamin H. Richman
                                         One of Plaintiff's Attorneys

# TABLE OF CONTENTS

I.    INTRODUCTION ......................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND................................. 4

    A.   Plaintiff's Allegations Regarding PCI's Design and Marketing of the Software Products ........................................................ 4

    B.   Plaintiff's Expert Confirms Her Allegations............................... 5

    C.   The Litigation History, Negotiations, and Settlement ................... 6

    D.   Plaintiff's Initial Motion for Preliminary Approval, the Parties' Addendum, and Additional Briefing ...................................... 8

    E.   PCI's Defenses and Denials .................................................. 8

III.  TERMS OF THE SETTLEMENT ................................................... 9

    A.   Settlement Class Definition .................................................. 9

    B.   Improvements to the Software Products.................................... 9

    C.   Monetary Relief ................................................................ 9

    D.   Additional Relief ............................................................. 10

        1.   Anti-Spyware Software ................................................. 10

        2.   Payment of Notice and Administrative Expenses .................. 10

        3.   Compensation for the Class Representative......................... 10

        4.   Payment of Attorneys' Fees and Expenses ......................... 10

    E.   Release ........................................................................ 10

IV.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED AND PLAINTIFF'S COUNSEL APPOINTED AS CLASS COUNSEL ............................................................... 10

    A.   The Numerosity Requirement is Satisfied ............................... 11

    B.   The Commonality Requirement is Satisfied ............................. 12

    C.   The Typicality Requirement is Satisfied ................................. 14

    D.   The Adequacy of Representation Requirement is Satisfied .......... 14

    E.   The Proposed Settlement Class Meets Rule 23(b)(3)'s Requirements ................................................................ 16

        1.   Common Questions of Law and Fact Predominate ................. 17

       *2.   A Class Action is the Superior Method for Adjudicating this Controversy* ................................................................................ 18

  F.   **Plaintiff's Counsel Should be Appointed Class Counsel** ................ 19

**V.  THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND THUS WARRANTS PRELIMINARY APPROVAL** ...................................................................... 20

  A.   **The First and Second *Bluetooth* Factors: the Risks of Further Litigation Weighed Against the Relief Achieved Render Approval Appropriate** ....................................................................22

  B.   **The Third *Bluetooth* Factor: the Risks Involved in Maintaining Class Action Status Render Approval Appropriate** ..........................................................................................25

  C.   **The Fourth *Bluetooth* Factor: the Settlement Offers an Appropriate Amount of Relief** ...........................................................27

  D.   **The Fifth *Bluetooth* Factor: the Settlement is a Product of a Well-Developed Factual Record and Therefore, Warrants Approval** ..........................................................................................30

  E.   **The Sixth *Bluetooth* Factor: the Experience and Views of Counsel Favor Preliminary Approval of the Settlement** ................31

**VI.  THE PROPOSED NOTICE PLAN SHOULD BE APPROVED**............32

**VII.  CONCLUSION** ........................................................................................34

## **TABLE OF AUTHORITIES**

**United States Supreme Court Cases:**

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997)......................10-11, 14, 17-18

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ......................................................32

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ..................................................... 12

*Protective Comm. for Indep. Stockholders v. Anderson*, 390 U.S. 414 (1968) ..........22

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ................................. 12, 17, 26

**United States Circuit Court of Appeals Cases:**

*Blake v. Arnett*, 663 F.2d 906 (9th Cir. 1981) ......................................................... 11

*Churchill Vill., L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004) ................ 21

*Fendler v. Westgate-Cal. Corp.*, 527 F.2d 1168 (9th Cir. 1975)............................. 15

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................... 14, 17, 21, 27

*In re Bluetooth Headset Products Liab. Litig.,*
   654 F.3d 935 (9th Cir. 2011) ....................................................................... 21

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995)........................... 22, 31

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) ................................. 21-22

*In re Wells Fargo Home Mortg. Overtime Pay Litig.,*
   571 F.3d 953 (9th Cir. 2007) ....................................................................... 17

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ..............................30

*Moore v. Hughes Helicopters*, 708 F.2d 475 (9th Cir. 1983)................................. 11

*Officers for Justice v. Civil Serv. Comm'n,*
   688 F.2d 615 (9th Cir. 1982) .......................................................... 21, 23, 25

*Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157 (9th Cir. 2013).............. 29

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ................................27

*United Steel v. Conocophillips Co.*, 593 F.3d 802 (9th Cir. 2010)...........................11

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996)............................ 18

*Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168 (9th Cir. 2010).............. 18

*Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010).................... 18

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) .................... 16

**United States District Court Cases:**

*Acosta v. Trans Union, LLC*, 243 F.R.D. 377 (C.D. Cal. 2007)................................ 20

*Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589 (E.D. Cal. 1999) ..................12

*Barbosa v. Cargill Meat Solutions Corp.*, No. 1:11-CV-00275-SKO,
    2013 WL 3340939 (E.D. Cal. July 2, 2013).................................................. 29

*Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413-W-AJB,
    2008 WL 5458986 (S.D. Cal. Dec. 10, 2008) .........................................30

*Bilodeau v. McAfee, Inc., et al.*, No. 12-cv-4589-LHK (N.D. Cal.) ..............................16

*Brown v. NFL Players Ass'n.*, 281 F.R.D. 437 (C.D. Cal. 2012) ............................ 14

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010)............ 29

*Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568 (C.D. Cal. 2007) ........................ 15

*Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO,
    2012 WL 5364575 (E.D. Cal. Oct. 31, 2012)................................................ 29

*Gardner v. GC Servs., LP*, No. 10-CV-0997-IEG CAB,
    2012 WL 1119534 (S.D. Cal. Apr. 2, 2012)................................................25, 30

*Garner v. State Farm*, No. 08-cv-1365,
    2010 WL 1687832 (N.D. Cal. April 22, 2010)................................................23

*Grannan v. Alliant Law Grp., P.C.*, C10-02803 HRL,
    2012 WL 216522 (N.D. Cal. Jan. 24, 2012)................................................ 21

*Gross v. Symantec Corp., et al.*, No. 12-cv-00154-CRB (N.D. Cal.) ..............................3

*Hall v. Tuneup Corp.*, No. 1:13-cv-1804 (N.D. Ill.)........................................16

*Heneghan, et al. v. SlimWare Utilities, Inc.*, No. 13-cv-4056 (N.D. Ill.).......................16

*Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL,
    2009 WL 928133 (N.D. Cal. Apr. 3, 2009)................................................ 29

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
    No. MDL 901, 1993 WL 144861 (C.D. Cal. Feb. 26, 1993) ..............................17

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)..........................22, 30

*In re Omnivision*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................. 22, 30-31

*In re Warner Comm'ns Sec. Litig.*, 618 F. Supp. 735 (S.D.N.Y. 1985) ....................30

*Lagarde v. Support.com*, No. 3:12-cv-00609 (N.D. Cal.) ......................................... 3

*Ledet v. Ascentive, LLC*, No. 2:11-cv-294 (E.D. Penn.) .............................................. 3

*Lo v. Oxnard European Motors*, LLC, No. 11CV1009 JLS MDD,
  2011 WL 6300050 (S.D. Cal. Dec. 15, 2011) ................................................. 21

*Martin v. Ameripride Serv., Inc.*, No. 08-cv-440-MMA (JMA),
  2011 WL 2313604 (S.D. Cal. June 9, 2011).................................................21, 31

*Moore v. Verizon Commc'ns Inc.*, C 09-1823 SBA,
  2013 WL 4610764 (N.D. Cal. Aug. 28, 2013) .............................................. 29

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) .................................................... 20, 22, 30-31

*O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311 (C.D. Cal. 1998)......................... 11

*Parker v. iolo Techs., LLC*, No. 12-cv-00984 (C.D. Cal.) ............................................16

*Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580 (C.D. Cal. 2008) ........................ 12

*Rottner v. AVG Techs. CZ, s.r.o.*, No. 12-cv-10920 (D. Mass.).....................................16

*Shames v. Hertz Corp.*, No. 07-CV-2174-MMA WMC,
  2012 WL 5392159 (S.D. Cal. Nov. 5, 2012)...............................................22

*Slaven v. BP Am., Inc.*, 190 F.R.D. 649 (C.D. Cal. 2000) .................................... 11-12

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012)............. 11-12

*True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010) ................. 21

*Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554 (C.D. Cal. 2012) ................. 19

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ................. 29

*Vinh Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 563 (C.D. Cal. 2012)............. 11

*Webb, et al. v. cleverbridge, Inc., et al.*, No. 1:11-cv-04141 (N.D. Ill.)................... 3

*Worley v. Avanquest N. Am., Inc.*, No. 12-cv-4391-WHO (N.D. Cal.) .........................16

**State Court Cases:**

*Drymon, et al. v. Cyberdefender Corp.*,
  No. 11 CH 16779 (Cir. Ct. Cook County, Ill.) ................................................. 3

**Statutory Provisions:**

Fed. R. Civ. P. 23.................................................................................. *passim*

**Miscellaneous Authorities:**

Alba Conte & Herbert B. Newberg,
  Newberg on Class Actions (4th ed. 2002) .................................................. 12, 20

Manual for Complex Litigation § 21.632 (4th ed. 2004) .......................................... 10

## I.   INTRODUCTION

As explained in Plaintiff Kulesa's initial motion for preliminary approval, following more than a year of hard-fought litigation, briefing on numerous substantive motions, formal discovery, in-person meetings, informational exchanges, arms'-length negotiations and a private mediation session, Plaintiff Virginia Kulesa and Defendant PC Cleaner, Inc. ("PCI") have reached a proposed class action settlement that will finally resolve the claims against PCI in this Action related to the alleged deceptive design and marketing of its PC Cleaner Pro software (the "Settlement"). If approved, the Settlement will provide the proposed Settlement Class[1] with industry-changing prospective measures to ensure that the challenged practices do not continue into the future—including design changes to the current version of the Software Products—the chance to get a refund that represents a nearly full recovery of the amounts Kulesa and the proposed Class paid in excess of the Software Products' actual value, and valuable in-kind relief.

In particular, the terms of the Settlement require that PCI modify the Software Products to accurately identify the functions they perform on users' computers and the results of those operations. Further, PCI has agreed to include within the Software itself and on its own web pages additional disclosures that explain in a clear and concise manner the factors considered by the Software Products in determining a computer's overall health, as well as the potential harm and severity of the issues the Software detects. PCI has also agreed to pay each Settlement Class Member who submits a Valid Claim a set-cash payment of $10.00, the costs of notice and settlement administration, an incentive award to Kulesa as Class Representative, and reasonable attorneys' fees and expenses, as approved by this Court.

---

[1]    Unless otherwise stated herein, capitalized terms shall have the same meaning as set forth in the Parties' Stipulation of Class Action Settlement, attached as Exhibit 1.

Additionally, PCI has agreed to provide each Settlement Class Member three months of free access to its proprietary PC Antivirus Pro software, regardless of whether they submit a claim under the Settlement. At a cost of $29.95 for a six-month license, this in-kind component of the settlement represents approximately $15 in additional relief to each Settlement Class Member.

On August 29, 2013, the Court held a hearing to determine whether preliminary approval of the proposed Settlement was appropriate. Although the Court found that many aspects of the Settlement and the factual circumstances leading to it supported preliminary approval (e.g., the arms' length negotiations between experienced counsel) it nevertheless requested that the Parties provide additional briefing and information regarding certain issues, namely: (i) with respect to the numerosity and adequacy requirements for class certification—an additional description of how the total number of Settlement Class Members was determined (numerosity) and a declaration from Plaintiff Kulesa regarding her efforts on behalf of the Class in this litigation (adequacy of representation); (ii) briefing regarding the *In re Bluetooth* factors focused on the strength of the Class's case, the risks and expense of continued litigation, and the risks of maintaining class action status through trial; and (iii) briefing on the appropriateness of the proposed incentive award in light of the Ninth Circuit's opinion in *Radcliffe v. Experian*. Additionally, the Court suggested that the Parties attempt to include in the Notice Plan an alternative form of notice to Class Members to whom direct e-mail notice is undeliverable (if the necessary Class Member information was available); create an Opt-Out Form that Class Members may complete to request to be excluded from the Settlement; and, clarify the language of the Release under the Settlement by, for example, listing within it each of the Software Products at issue in this case.

Since the hearing, the Parties have conferred amongst themselves and with the Settlement Administrator to address each of the issues identified by the Court. First, the Parties executed an Addendum to their Settlement Agreement that (i) modifies the Release language to more clearly identify what claims are being released and with respect to which Software Products, (ii) creates a mechanism by which Class Members may request to be excluded from the Settlement by submitting an Opt-Out Form (either electronically on the Settlement Website or by mail to the Settlement Administrator), and (iii) requires the Settlement Administrator to attempt to locate valid mailing addresses for and disseminate direct postcard notice to all Class Members to whom the e-mail notice is undeliverable. (*See* Addendum to Stipulation of Class Action Settlement, attached as Exhibit 2.) Similarly and as set out further below, Plaintiff has also now provided a declaration regarding her efforts in the litigation to date (*see* Declaration of Virginia Kulesa, attached as Exhibit 3) and provides herein additional briefing and explanation of the appropriateness of class certification and approving the Settlement in light of the factors set out by the Ninth Circuit in *In re Bluetooth*.

In the end and as described further below, the Parties' Settlement—which is in line with other settlements reached with PCI's industry competitors that have either received preliminary or final approval (or are awaiting the same) from the various state and federal courts in which they are pending[2]—and as enhanced by the Court's

---

[2]    The settlements reached with PCI's industry competitors are in the following cases: (i) *Drymon, et al. v. Cyberdefender Corp.*, No. 11 CH 16779 (Cir. Ct. Cook County, Ill.) (creating $9.75 million settlement fund from which class members could make a claim for $10 for each software product purchase; prospective relief requiring defendant to provide consumers with enhanced disclosures regarding the functionality and methodology of the software products at issue, as well as certain changes to the software itself; settlement finally approved on September 13, 2011); (ii) *Webb, et al. v. cleverbridge, Inc., et al.*, No. 1:11-cv-04141 (N.D. Ill.) (creating $4 million settlement fund from which class members could make a claim for $8 for each software product purchase; prospective relief requiring Defendant to provide consumers with enhanced disclosures regarding the functionality and methodology of the software products at issue; settlement finally

---

suggestions, is well within the range of possible approval. Accordingly, Kulesa respectfully requests that the Court grant the instant motion in its entirety.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Plaintiff's Allegations Regarding PCI's Design and Marketing of the Software Products.

On January 18, 2013, Kulesa filed her Third Amended Complaint (the "Complaint") in this Court. (Dkt. 59, cited herein as "Compl.") In her Complaint, Kulesa alleges that through its websites and marketing materials, PCI represents that its premier software product—PC Cleaner Pro—is capable of providing numerous functions, such as fixing PC errors, removing malicious programs, protecting user privacy, and boosting computer performance. (*Id.* ¶¶ 1, 3, 19-20.) To convince consumers of the Software's supposed utility, and to encourage consumers to purchase the full version of the Products, PCI recommends consumers download a trial version of the Software and conduct a "free diagnostic scan" to detect issues and other problems existing on their computers. (*Id.* ¶¶ 23-26.) After the user does so, the "free diagnostic scan" invariably reports the existence of numerous errors and

---

approved on December 7, 2012); (iii) *Ledet v. Ascentive, LLC*, No. 2:11-cv-294 (E.D. Penn.) (creating $9.6 million settlement fund from which class members could make a claim for a collective amount of $18; prospective relief requiring defendant to provide consumers with enhanced disclosures regarding the functionality and methodology of the software products at issue, as well as certain changes to the software itself; settlement finally approved on November 19, 2012); (iv) *LaGarde v. Support.com*, No. 3:12-cv-00609 (N.D. Cal.) (creating $8.595 million settlement fund from which class members could make claim for $10 for each software product purchase; prospective relief requiring Defendant to modify the source code of the software to more accurately identify the functions performed and errors detected and repaired on a user's computer as well as provide disclosures about the software's functionality; in-kind relief of three months of free access to proprietary anti-spyware software; settlement finally approved on March 26, 2013); and (v) *Gross v. Symantec Corp.*, *et al.*, No. 3:12-cv-00154 (N.D. Cal.) (creating $11 million settlement fund from which class members could make claim for $9 for each software product purchase; prospective relief requiring Defendant to modify software to more accurately identify the functions performed and errors detected and repaired on a user's computer as well as provide disclosures about the software's functionality; in-kind relief of three months of free access to proprietary anti-spyware software; settlement preliminarily approved on May 28, 2013).

other problems on the computer. (*Id.* ¶ 27.) PCI offers to fix these errors, often characterized as "Critical" and requiring "immediate attention," if the consumer simply purchases the full version of the Software. (*Id.* ¶¶ 27, 29.)

According to the Complaint, despite PCI's representations, the free trial version of the Software Products does not accurately identify errors and problems on a user's computer. Instead, the program misrepresents and exaggerates the severity and existence of errors and problems on a given PC so as to induce consumers to purchase the full version of the Software. (*Id.* ¶ 37.) Further, once purchased, the full version of the Software operates in a nearly identical manner so as to lull consumers into a false sense of security that it is functioning as advertised. That design, in conjunction with marketing statements about the Software's supposed utility, was intended to and did induce consumers to pay for and continue to use the Products, which allegedly cannot live up to PCI's promises and thus, were worth less than their purchase price. (*Id.* ¶¶ 37-38.)

**B.    Plaintiff's Expert Confirms Her Allegations.**

Prior to filing this Action, Kulesa's counsel engaged a computer forensic expert—in addition to their own independent investigation through interviews with proposed Settlement Class Members and review of PCI's promotional materials—to analyze the functionality of the Software Products. (*Id.* ¶ 31.) The expert ran a series of diagnostic tests in a controlled environment and determined that the Software Products would invariably report that the computer's "Performance" levels were in the red, and that "Critical" errors existed on the system. (*Id.* ¶¶ 31-34.) Kulesa's expert also discovered that both the free and full versions of its Software would (i) always identify problems on a user's computer (even where none exist), (ii) artificially inflate the number of errors detected on a user's computer, (iii) characterize innocuous files as errors, (iv) arbitrarily report that the user's

"Performance" is low without any credible assessment of these issues, and (v) arbitrarily characterize individual errors as "Critical." (*Id.*) At all times, PCI has disputed and continues to dispute these findings.

### C.    The Litigation, Negotiations, and Settlement.

On May 4, 2012, Kulesa filed her original complaint, alleging claims for damages, injunctive, and declaratory relief against PCI arising out of its design, marketing, and sale of the Software Products. (Dkt. 1.) Shortly thereafter, on June 7th, the Parties held an initial meeting via WebEx and teleconference, during which Kulesa's lawyers explained their views of the case, including presenting PCI with specific findings from Kulesa's computer forensics expert detailing the design and functionality of PCI's Software Products. (*See* Declaration of Benjamin H. Richman ¶ 3, attached as Exhibit 4.) During that meeting, PCI's counsel (who later withdrew from the representation) contended that the Court lacked jurisdiction under CAFA due to the purportedly low number of sales of the Software at issue and insisted that the case be dismissed. (*Id.* ¶ 4.) Although Kulesa's attorneys doubted those assertions, they nevertheless agreed to seriously consider and weigh any competent proof that PCI was willing to provide. (*Id.* ¶ 4.) While counsel for the Parties engaged in a series of communications and PCI offered some information regarding its sales, Kulesa's counsel was ultimately unconvinced that the case needed to be dismissed for lack of subject matter jurisdiction. (*Id.* ¶ 5.) Before any additional discussions could be had, however, PCI's then counsel withdrew from their representation of the company. Following that, Kulesa's attorneys gave the same WebEx presentation to PCI's current counsel and the Parties began what would be nearly nine months of discussions regarding the potential resolution of this matter. (*Id.* ¶ 6.)

Around that same time, Kulesa filed her First Amended Complaint, which PCI

moved to dismiss. (Dkt. 41.) Following full briefing and oral argument by the Parties, on October 12th, the Honorable James V. Selna granted PCI's motion and dismissed Kulesa's complaint without prejudice, directing her to file an amended pleading that provided additional details regarding PCI's alleged deceptive practices. (Dkt. 49.) On November 13th, Kulesa filed her Second Amended Complaint, which provided additional details regarding PCI's design and marketing of the Software Products, including computer screenshots of PCI's promotional materials and the Products as they functioned on a user's computer. (Dkt. 53.) Once again, PCI moved to dismiss; that motion was granted in part and denied in part. (Dkts. 54, 57.) And, on January 18, 2013, Kulesa filed her Third Amended Complaint, (Dkt. 59), which PCI ultimately answered. (Dkt. 62.)

Subsequently, Kulesa also served and PCI responded to written discovery requests—including interrogatories and requests for documents and electronic information. (Richman Decl. ¶ 7.) Similarly, throughout the litigation and since their initial discussions and Kulesa's presentations, the Parties kept the lines of communication open and had additional exchanges of information and conversations aimed at exploring their views of the case and potential resolution. (*Id.* ¶ 8.)

Ultimately, the Parties believed they had obtained sufficient information that indicated a resolution may be possible and thus, began more fulsome discussions regarding how a classwide settlement of the Action could be structured. Although they made substantial progress toward a proposed resolution through negotiations between their respective counsel, in the end, the Parties would require a private mediation session before third-party neutral John Bates of JAMS to reach agreement. (*Id.* ¶¶ 9-10.) With the assistance of Mr. Bates, the Parties reached an agreement in principle as to the primary terms of a classwide settlement that would resolve each of the claims against PCI in the Action related to the alleged fraudulent

design and marketing of the Software Products. Notwithstanding, it would take several more months of discussions to finalize all of the ancillary terms and reduce their agreement to writing in the form of their Stipulation of Class Action Settlement (the "Agreement") now before the Court. (*Id.* ¶ 10.)[3]

**D.  Plaintiff's Initial Motion for Preliminary Approval, the Parties' Addendum, and Additional Briefing.**

On July 16, 2013, Plaintiff filed her first motion for preliminary approval of the Settlement. (Dkt. 73.) Thereafter, on August 29th, the Court held a hearing on the motion to determine whether preliminary approval of the Settlement would be granted. Although the Court found that many aspects of the Settlement and the factual circumstances leading to it supported preliminary approval, it nevertheless requested that the Parties provide additional briefing and information regarding certain aspects of the Settlement. Since the hearing, the Parties have conferred amongst themselves and with the Settlement Administrator to address each of the issues identified by the Court. Those efforts resulted in the Parties' Addendum to their Stipulation of Class Action Settlement now before the Court and the additional briefing contained herein.

**E.  PCI's Defenses and Denials.**

At all times, PCI has denied and continues to deny any and all wrongdoing. (*See* Agreement § III.) Nonetheless, PCI has entered into the Agreement, determining that continued litigation would be risky, burdensome, and expensive, and that immediate resolution of Kulesa's and the proposed Settlement Class's claims, and release from future claims (as defined in the Agreement) are desirable and beneficial at this time. (*Id.*)

---

[3]    It was only after the Parties agreed upon the Settlement Benefits to the Class that they negotiated and reached agreement on the amount of proposed Class Counsel's Fee Award and an incentive award to Kulesa as Class Representative, both of which are subject to Court approval. (Richman Decl. ¶ 11.)

**III.    TERMS OF THE SETTLEMENT**

The terms of the Parties' Settlement are summarized as follows:

**A.    Settlement Class Definition:** The Settlement Class includes all individuals and entities residing in the United States and its territories that, prior to the date on which the Court enters an order preliminarily approving the settlement,[4] purchased any and all versions of PC Cleaner Pro 2011, PC Cleaner Pro 2012 and PC Cleaner Pro 2013. (Agreement § II.)

**B.    Improvements to the Software Products:** PCI has agreed to modify the current versions of its Software Products to:

(i)    Eliminate usage of the term "Damage Level" when referring to the harm posed by items detected during and as a result of the software's diagnostics scans.

(ii)    Include accurate in-software "hoverbox" (i.e., a dialog box displayed when the user rolls over an icon with their mouse) descriptions proximate to the software's graphical representations about the "Scan items" categories and the overall Performance and Security gauge. These "hoverboxes" shall describe the path to in-software links that direct the user to documentation contained on PCI's website that explains the Software Products' concern levels for the types of items detected through the software's scans. (*Id.* § VI.A.)

**C.    Monetary Relief:** PCI shall pay Settlement Administration Expenses, Notice Expenses, the Fee Award to Class Counsel (subject to Court approval), the incentive award to Kulesa as Class Representative (also subject to Court approval), and Settlement Payments to the Settlement Class Members. Each Settlement Class

---

[4]    At the August 29th hearing, the Court also requested that the Parties limit the Settlement Class to those individuals and entities who purchased the Software Products prior to the date a preliminary approval order is entered, which they have done.

Member that submits a valid Claim Form will be entitled to receive a one-time payment of $10.00. (Agreement § VI.B.2.)

**D.     Additional Relief:** In addition to the individual and prospective relief described above, PCI has agreed to the following relief:

 *1.     Anti-Spyware Software***:** Each Settlement Class Member will be entitled to receive three (3) months of free access to PCI's proprietary PC Antivirus Pro 2013 software. (*Id.* § VI.B.3.)

 *2.     Payment of Notice and Administrative Expenses***:** PCI has agreed to pay all notice and administration expenses. (*Id.* §§ II, VII.C.)

 *3.     Compensation for the Class Representative***:** PCI has agreed to pay, subject to Court approval, an incentive award to Kulesa as Class Representative in the amount of $2,000. (*Id.* § XI.A.)

 *4.     Payment of Attorneys' Fees and Expenses***:** PCI has agreed that proposed Class Counsel may apply for and it will not object to or challenge a Fee Award in the amount of $318,000, subject to Court approval. The Fee Award shall include all attorneys' fees and reimbursement of expenses associated with this Action. (*Id.* § XI.B.)

**E.     Release:** Upon the entry of the Judgment, and in consideration of the Settlement Benefits, each Settlement Class Member shall be deemed to have released, acquitted and forever discharged PCI and each of the Released Parties from any and all "Released Claims." (*Id.* § V.)

## IV.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED AND PLAINTIFF'S COUNSEL APPOINTED AS CLASS COUNSEL.

Before granting preliminary approval of the proposed Settlement, the Court should determine that certification of the proposed Settlement Class is appropriate. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation § 21.632 (4th ed. 2004). This is a two-step process. First, the Court must

determine that the proposed Settlement Class satisfies each of Rule 23(a)'s four requisites to certification: numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a). Second, the proposed Settlement Class must also satisfy the requisites to certification under at least one of the three subsections of Rule 23(b). *See* Fed. R. Civ. P. 23(b); *Blake v. Arnett*, 663 F.2d 906, 912 (9th Cir. 1981). When, as here, a plaintiff seeks certification under Rule 23(b)(3), he or she must demonstrate that the questions of law or fact common to class members predominate over any individual issues and that maintaining the lawsuit as a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615-16.[5]

As explained further below, the proposed Settlement Class in this Action easily meets the requisites to certification under Rules 23(a) and (b)(3), and should be certified for settlement purposes.

### A.    The Numerosity Requirement is Satisfied.

Rule 23(a)'s first requirement, numerosity, is satisfied where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). There is no specific number of class members necessary, nor is a plaintiff required to calculate the exact number of potential class members. *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000). Rather, the class need simply be ascertainable, *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998), and courts are permitted to make assumptions based on "general knowledge and common

---

[5]    When considering the appropriateness of certification for settlement purposes, Kulesa's allegations should be accepted as true, but the Court may also consider matters beyond the pleadings to determine if the claims are suitable for resolution on a class-wide basis. *See, e.g., United Steel v. Conocophillips Co.*, 593 F.3d 802, 808-809 (9th Cir. 2010); *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 490 (C.D. Cal. 2012) (citing *Moore v. Hughes Helicopters*, 708 F.2d 475, 480 (9th Cir. 1983)).

sense" that support a finding that joinder would be impracticable." *Vinh Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 563, 569 (C.D. Cal. 2012); *see also* Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 7.20, 66 (4th ed. 2002). That said, courts have typically found that classes of 40 or more members are sufficiently numerous for certification. *Tait*, 289 F.R.D. at 473; *see also Slaven*, 190 F.R.D. at 654.

The proposed Settlement Class in this case easily satisfies Rule 23's numerosity requirement. According to PCI's records, tens of thousands of individuals and entities have purchased the Software Products at issue. (*See* Declaration of Cahsier Myricks ¶ 4, attached as Exhibit 5.)[6] Thus, there is no question that joinder of all Settlement Class Members would be impractical and that Rule 23(a)(1)'s numerosity requirement is satisfied.

## B.     The Commonality Requirement is Satisfied.

Next, Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Commonality requires Kulesa to demonstrate that the proposed Class Members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). The threshold for commonality is not high, *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 594 (C.D. Cal. 2008), and Kulesa need only establish that a common nucleus of operative fact exists among the Settlement Class, even if as to

---

[6]       As explained in Mr. Myricks's declaration, an inadvertent error led Defendant to use the same internal identification code for purchases of the Software Products at issue here and several other products it markets and sells, thus making it difficult to determine the exact number of Settlement Class Members. (Myricks Decl. ¶ 3.) Notwithstanding, based on, *inter alia*, Defendant's records of the sales of the Software Products during the relevant period that were not affected by the internal coding error, refund requests and other available records, Defendant reasonably believes that tens of thousands of individuals and entities purchased the Software Products—and certainly more than 40 or more individuals typically required for class certification. (*Id.* ¶¶ 3-4.) However, out of an abundance of caution the Parties have agreed to follow the notice procedures for each of the individuals whose purchases were identified internally by Defendant with the overlapping code.

just one question of law or fact. *Ballard v. Equifax Check Servs., Inc.*, 186 F.R.D. 589, 594-95 (E.D. Cal. 1999) (holding that the commonality requirement may be satisfied if the defendant has "engaged in standardized conduct toward the members of the proposed class.").

Commonality is satisfied here. Kulesa alleges that PCI designed its Software Products so that they functioned in essentially the same manner on each Settlement Class Member's computer and also disseminated substantially the same marketing and promotional materials regarding that functionality. PCI's standardized conduct in this regard raises several common issues of fact for the Settlement Class, including: (i) whether PCI intentionally designed the Software Products to falsely report the existence of errors on users' computers; (ii) whether the Software Products exaggerate the severity of errors detected on users' computers; (iii) whether PCI intentionally designed the Software Products, and their respective promotional materials, to deceive consumers into purchasing the Products; and (iv) whether Kulesa and the Settlement Class overpaid for the Software Products that they contend overstate errors and other problems and thus, cannot fix all of the errors and problems as reported. Those common factual questions lead to several legal questions common to the Settlement Class as well, including whether PCI's alleged conduct constitutes (i) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, (ii) fraudulent inducement, (iii) breach of express warranties, (iv) breach of contract, and (v) breach of the implied covenant of good faith and fair dealing.

Thus, there are multiple questions of law and fact common to the Settlement Class Members, and the commonality requirement is satisfied.

### C.     The Typicality Requirement is Satisfied.

Next, Rule 23(a)(3)'s typicality requirement looks to whether Kulesa's claims are typical of those of the proposed Settlement Class. Typicality is closely related to commonality and is satisfied here because Kulesa's claims arise from "the same event or practice or course of conduct that gives rise to the claims of other class members and…are based on the same legal theory." *Brown v. NFL Players Ass'n.*, 281 F.R.D. 437, 442 (C.D. Cal. 2012). Kulesa's claims need only be "reasonably coextensive" with those of the Settlement Class—that is, the specific facts of her claims "need not be…identical" to all the other Class Members'. *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

In this Action, Kulesa's and the Settlement Class's claims have the same essential characteristics and are based upon the same set of facts and legal theories: They each claim that PCI misrepresented the true functionality of the Software Products, intentionally designed the Software to falsely report the condition of their computers, and induced them to purchase a full version of the Software despite knowing that it doesn't possess the promised utility. As a result of that conduct, Kulesa and the Settlement Class were damaged in a nearly identical manner—i.e., in the form of the monies collected from them for their purchases of the Software Products. Accordingly, by pursuing her own claims, Kulesa has necessarily advanced the interests of the Settlement Class in satisfaction of Rule 23(a)(3)'s typicality requirement.

### D.     The Adequacy of Representation Requirement is Satisfied.

Finally, Rule 23(a)(4) requires that Kulesa, as the proposed Class Representative, has and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Amchem*, 521 U.S. at 625. To satisfy the adequacy requirement, Kulesa must establish that (i) her claims are not in conflict

with those of the proposed Settlement Class and (ii) she and proposed Class Counsel have and will continue to prosecute the Action vigorously on behalf of the Settlement Class. *Hanlon*, 150 F.3d at 1020. Ultimately, the adequacy requirement revolves around whether Kulesa and her counsel have the requisite "zeal and competence" to protect the absent Settlement Class Members. *Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 577 (C.D. Cal. 2007) (quoting *Fendler v. Westgate-Cal. Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975)). Simply put, they do.

First, Kulesa has the same interests as the other Settlement Class Members— they each have an interest in having the monies they overpaid for the Software Products returned and in obtaining the prospective measures necessary to ensure that PCI does not utilize the same deceptive design and marketing practices in the future. (*See* Kulesa Decl. ¶ 4.) Kulesa has no interests antagonistic to the Settlement Class and therefore, she will fairly and adequately protect (and already has protected) Class Members' interests; her prosecution of this Action demonstrates as much. Indeed, throughout the course of the litigation Kulesa has been in regular communication with her counsel regarding her experiences with the Software Products and marketing materials in question, and her views of the claims asserted. (*Id.* ¶ 5.) She has also devoted a significant amount of time to reviewing and commenting upon numerous documents in this matter, including, the original class action complaint and each of the three amended complaints; several of her own declarations, including declarations in support of the instant motion and in opposition to Defendant's motion to dismiss the second amended complaint; and the Parties' proposed Stipulation of Class Action Settlement and the Addendum thereto. (*Id.* ¶¶ 6-7.) Given these efforts on behalf of the proposed Settlement Class, her willingness to devote still more time and energy to the litigation as needed, coupled with the relief obtained for the Class under the terms of the Settlement, there should

be no question that Plaintiff Kulesa is (and has been) more than an adequate class representative.

Similarly, proposed Class Counsel and the lawyers at Edelson LLC are well-respected members of the legal community who have extensive experience in class actions of similar size, scope, and complexity to the instant action. (Richman Decl. ¶ 15.) They have regularly engaged in major complex litigation involving consumer technology issues, have the resources necessary to conduct litigation of this nature, and have frequently been appointed lead class counsel by courts throughout the country. (*Id.*; *see also* Firm Resume of Edelson LLC, attached as Exhibit 4-A to the Richman Declaration.) To date, proposed Class Counsel have also diligently investigated, prosecuted, and dedicated substantial resources to the claims in this Action, and they will continue to do so throughout its pendency. (Richman Decl. ¶¶ 17-18.)  And with respect to specific experience handling class actions of this sort, Class Counsel have in the past and are currently prosecuting numerous class actions related to the alleged fraudulent design and marketing of software products similar to those at issue here. *See*, *e.g.*, *LaGarde*, No. 12-cv-00609-JSC; *Gross*, No. 12-cv-00154-CRB; *Parker v. iolo Techs., LLC*, No. 12-cv-00984 (C.D. Cal.); *Drymon*, No. 11 CH 16779; *Webb*, No. 11-cv-04141; *Ledet*, No. 11-cv-00294; *Rottner v. AVG Techs., CZ, s.r.o.*, No. 12-cv-10920 (D. Mass.); *Bilodeau v. McAfee, Inc., et al.*, No. 12-cv-4589-LHK (N.D. Cal.); *Hall v. Tuneup Corp.*, No. 1:13-cv-1804 (N.D. Ill.); *Heneghan, et al. v. SlimWare Utilities, Inc.*, No. 13-cv-4056 (N.D. Ill.); *Worley v. Avanquest N. Am., Inc.*, No. 12-cv-4391-WHO (N.D. Cal.).

As such, the final Rule 23(a) requirement is satisfied.

### E.   The Proposed Settlement Class Meets Rule 23(b)(3)'s Requirements.

In addition to meeting the prerequisites of Rule 23(a), the proposed Settlement Class must also satisfy the requirements of at least one of the three subsections of

Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). In this Action, Kulesa seeks certification under Rule 23(b)(3). To satisfy the Rule's certification requirements, she must establish that (i) questions of law and fact common to members of the Settlement Class predominate over questions affecting only individual Class Members, and (ii) the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2007). The proposed Settlement Class meets both of these requirements.

### 1. Common Questions of Law and Fact Predominate.

Rule 23(b)(3)'s predominance requirement focuses primarily on whether a defendant's liability is common enough to be resolved on a class basis, *Dukes*, 131 S. Ct. at 2551-57, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Although common issues must predominate, they need not be exclusive. *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, No. MDL 901, 1993 WL 144861, at *9 (C.D. Cal. Feb. 26, 1993). Instead, predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022.

In order to establish PCI's liability here, each Settlement Class Member will ultimately be required to show that PCI (i) intentionally designed the Software Products to exaggerate the existence and severity of errors and other problems on users' computers, and (ii) intentionally designed its promotional materials for the Software Products to misrepresent their true capabilities. Regardless of the answers to these questions, it's clear that the manner in which PCI marketed and charged Kulesa and the Settlement Class for the Software Products are virtually identical as

well. As such, their claims will necessarily be subject to common proofs, and the common issues raised by PCI's alleged deceptive practices predominate over any issues affecting only individual members of the Settlement Class, such as the amount of damages each Settlement Class Member is entitled to recover. *See*, *e.g.*, *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) (holding that "[in] this circuit…damage calculations alone cannot defeat certification").

### 2.   A Class Action is the Superior Method for Adjudicating this Controversy.

Further satisfying Rule 23(b)(3)'s requirements, this class action is superior to other available methods for the fair and efficient adjudication of the Settlement Class's claims. The purpose of the superiority requirement is judicial economy and assurance that a class action is the "most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010); *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996) (describing a class action as superior when it will reduce the costs inherent in litigation and "no realistic alternative exists" for the class members). As in this Action, when parties have already negotiated a compromise, courts need not focus on issues that could surface at trial, because a finally approved settlement would extinguish the need for one. *Amchem*, 521 U.S. at 620.

Here, if they were to pursue their claims against PCI individually, each Settlement Class Member would be required to provide nearly the same—if not identical—legal and factual arguments and evidence to prove their common claims. The result would be thousands of trials at enormous expense to the Class Members, PCI, and the courts. When compared to the relatively small amount of damages each Class Member seeks to recover (i.e., only a portion of the Software Products' typical $29 purchase price) and the costs of actually prosecuting those claims (e.g., hiring

the experts necessary to analyze the Software Products' functionality in light of PCI's promotional materials), makes clear that Class Members would have little incentive to pursue such claims. *See Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 562 (C.D. Cal. 2012) (holding that a class action is superior to maintaining individual claims for a small amount of damages).

Accordingly, this class action is the superior method for adjudicating the controversy between the Parties and Rule 23(b)(3)'s superiority requirement is satisfied as well.

### F.   Plaintiff's Counsel Should be Appointed Class Counsel.

Finally, in conjunction with certifying the proposed Class for settlement purposes, the Court is required to appoint class counsel. Fed. R. Civ. P. 23(g)(1)(A). In so doing, Rule 23 requires that the Court appoint counsel who will fairly and adequately represent the interests of the Settlement Class and to consider proposed Class Counsel's (i) work in identifying or investigating potential claims, (ii) their experience in handling class actions and the types of claims asserted in the Action, (iii) their knowledge of the applicable law, and (iv) the resources they have committed to representing the Class. Fed. R. Civ. P. 23(g)(1)(A).

As discussed in Section IV.D., *supra*, proposed Class Counsel not only have extensive experience litigating complex consumer-technology class actions generally, but also in the utility software industry in particular. (Richman Decl. ¶ 16.) Additionally, Class Counsel have devoted substantial time and other resources to the investigation and prosecution of Kulesa's and the Settlement Class's claims—having briefed several substantive motions (and participated in oral argument); served and reviewed PCI's responses to Kulesa's discovery requests and participated in other informal exchanges of information related to, *inter alia*, PCI's internal sales and marketing records; and, engaged in several months of arm's-length negotiations

and a formal mediation. (*Id.* ¶ 18.) Given the time they've devoted to the prosecution of this Action (and their experience more generally), proposed Class Counsel have gained a superior knowledge and understanding of both the factual and legal bases of the claims at issue here, and they are best suited to ensure that the Settlement Class receives the best relief possible under the circumstances. (*Id.*)

*       *       *

With the requirements of both Rules 23(a) and (b)(3) satisfied, Kulesa respectfully requests that the Court certify the proposed Settlement Class for settlement purposes and appoint her counsel to serve as Class Counsel.

## V. THE PROPOSED SETTLEMENT IS FUNDAMENTALLY FAIR, REASONABLE, AND ADEQUATE, AND THUS WARRANTS PRELIMINARY APPROVAL.

After determining that the Settlement Class is appropriate for certification, the Court should consider whether the Parties' proposed Settlement warrants preliminary approval. Approval of a class action settlement is a two-step process. Newberg on Class Actions § 11.25, at 38-39; *see also Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). First, a preliminary, pre-notification hearing is held to determine whether the proposed settlement is "within the range of possible approval." Newberg on Class Actions § 11.25, at 38-39. The preliminary approval hearing is not a fairness hearing, but rather, a hearing "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 525. If the Court finds the proposed settlement to be "within the range of possible approval," then it proceeds to the second step in the process— the final fairness hearing. *Id.*; Newberg on Class Actions § 11.25, at 38-39; *see also Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially*

1   fair, as the Court will make a final determination of its adequacy at the hearing on

2   Final Approval, after such time as any party has had a chance to object and/or opt

3   out.").

4        In assessing the fairness, adequacy, and reasonableness of a settlement, courts

5   in the Ninth Circuit consider the following non-exhaustive list of factors: "(1) the

6   strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration

7   of further litigation; (3) the risk of maintaining class action status throughout the

8   trial; (4) the amount offered in settlement; (5) the extent of discovery completed and

9   the stage of the proceedings; (6) the experience and views of counsel; (7) the

10   presence of a governmental participant; and (8) the reaction of the class members of

11   the proposed settlement." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d

12   935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. Gen. Elec.,* 361 F.3d 566,

13   575 (9th Cir. 2004)).[7] Where settlement is reached prior to class certification, courts

14   also ensure that no collusion has occurred between class counsel and a defendant.

15   *Martin v. Ameripride Serv., Inc.*, No. 08-cv-440-MMA (JMA), 2011 WL 2313604, at

16   *5 (S.D. Cal. June 9, 2011).

17        In addition to the above factors, strong judicial policy favors voluntary

18   settlement of complex class actions. *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101

19   (9th Cir. 2008) (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th

20

21       [7]    Preliminary approval requires courts to determine only whether a settlement is
within the range of possible approval. *See True v. Am. Honda Motor Co.*, 749 F.

22   Supp. 2d 1052, 1063 (C.D. Cal. 2010). Although the depth of analysis may differ at
the various stages of the approval process, the *Bluetooth* factors may be considered

23   at both the preliminary and final approval stages. *Compare Lo v. Oxnard European
Motors*, LLC, No. 11CV1009 JLS MDD, 2011 WL 6300050 (S.D. Cal. Dec. 15,

24   2011) (examining factors 1–6 in granting preliminary approval) *with Grannan v.
Alliant Law Grp.*, P.C., C10-02803 HRL, 2012 WL 216522 (N.D. Cal. Jan. 24,

25   2012) (examining all factors in order granting final approval). Typically, however,
the seventh and eighth factors—the presence of a governmental participant and the

26   reaction of the settlement class—simply cannot be addressed where, as here, notice
of the settlement has not yet been disseminated and the government and class

27   members have not yet had an opportunity to review the terms of the settlement and
comment upon them.

28

Cir. 1982)). As a result, while the Court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon*, 150 F.3d at 1027. In fact, when a settlement is negotiated at arm's length by experienced counsel, there is a presumption that it is fair and reasonable. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Ultimately, the Court's role is to ensure that the proposed settlement is fundamentally fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *In re Syncor*, 516 F.3d at 1100.

There should be no question that the Parties' proposed Settlement here falls well within the range of possible approval and when applied, the *Bluetooth* factors—each of which are taken in turn below—demonstrate the Settlement's fairness, adequacy, and reasonableness.

### A. The First and Second *Bluetooth* Factors: the Risks of Further Litigation Weighed Against the Relief Achieved Render Approval Appropriate.

In determining whether a settlement is fair, adequate, and reasonable, the first and second *Bluetooth* factors require courts to evaluate the strength of the plaintiff's case and range of possible recovery in light of the risks of continued litigation. *Shames v. Hertz Corp.*, No. 07-CV-2174-MMA WMC, 2012 WL 5392159, at *5 (S.D. Cal. Nov. 5, 2012); *see also In re Omnivision*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)). Under this analysis, the court balances "the vagaries of litigation and [] the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526; *see also Protective Comm. for Indep. Stockholders v. Anderson*, 390 U.S. 414, 424–25 (1968) ("Basic to [analyzing a proposed settlement] in every instance, of course, is the need to compare the terms of

the compromise with the likely rewards of litigation."). Determining the probability of success does not require a rigid formula or an ultimate conclusion on the merits. *Garner v. State Farm*, No. 08-cv-1365, 2010 WL 1687832, at *9 (N.D. Cal. April 22, 2010) (citing *Officers for Justice*, 688 F.2d at 625). Instead, "the Court's assessment of the likelihood of success is . . . an amalgam of delicate balancing, gross approximations and rough justice.'" *Id*. And, "the Court may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Id*. These factors weigh in favor of preliminary approval.

Although Plaintiff is confident in the strength of her claims, there remains a significant risk that continued litigation will diminish or eliminate recovery for herself and the Class. That is, on the one hand, Plaintiff's expert confirmed the strength of this case through the forensics testing described in § II.B. Notably, the expert found that both the free and full versions of the Software Products invariably (i) identify problems on a user's computer (even where none existed); (ii) artificially inflate the number of errors detected; (iii) mischaracterize innocuous files as errors; and (iv) report that the user's computer's "Performance" was low and that errors detected were "Critical," without performing any credible assessment of these issues. Kulesa's own experience with the Software Products—i.e., the fact that despite installing and running the Software on her computer, the machine continued to suffer from the various maladies that prompted her to purchase the Software in the first instance—bolsters those conclusions.

But, on the other hand, Defendant has raised numerous legal challenges to Plaintiff's claims throughout the course of the litigation, including, for example, that it has disclaimed any warranties with respect to the design and functionality of the Software and that Plaintiff and the Class are not entitled to injunctive relief because

they are not at-risk of any future harm. (Richman Decl. ¶ 22.) Recovery would also ultimately turn on the resolution of several complicated factual issues regarding the underlying source code, design and functionality of the Software Products—e.g., parsing from the code the metrics used by the Software to create its scan reports and the intentions of its developers in writing the code—all of which would be expensive and time consuming and require additional discovery, expert testing and analysis. (*Id.* ¶ 23.) And, even if Plaintiff was successful in overcoming those challenges, given the amount at stake and its reputational interests, Defendant was likely to appeal any decision on the merits, thereby delaying (and making uncertain) any recovery for the Class. (*Id.* ¶ 24.)

By contrast, the proposed Settlement offers real and immediate prospective, in-kind and monetary benefits. First, it requires Defendant to modify (and improve) the Software so that it will now give a more accurate assessment—in laymen's terms—of the actual statuses of users' computers, and provide additional documentation that explains the Software's functionality, how the Products diagnose particular issues on users' computers and the potential harm they pose to the machines. (Agreement § VI.A.)

The Settlement also provides substantial monetary relief to the Class Members. Indeed, all Class Members who submit valid Claim Forms will receive a one-time payment of $10, which as explained further in Section V.C below, represents a substantial recovery based on Plaintiff's theory that Class Members overpaid for the Software.[8] (*Id.* at VI.B.2.) Additionally, Defendant has agreed to

---

[8]   Because Plaintiff does not allege that the Software Products were without any value whatsoever, Class Counsel's analysis suggests that the deceptive design at issue in this case resulted in a proportional reduction in the value of the Software. (Richman Decl. ¶ 25.) As explained further below, Plaintiff's counsel is confident that this payment is more than adequate to compensate Class members for the alleged diminished value of the Software Products they purchased, especially when considered in conjunction with the significant in-kind relief and prospective measures provided under the Settlement. (*Id.*)

pay for the costs of notice and administration, attorneys' fees, and an incentive award to Plaintiff as Class Representative.

Finally, the Settlement provides each Class Member three months of free access to PCI's PC Antivirus Pro software, regardless of whether Class Members submit a Claim Form under the settlement. (*Id.* § VI.B.3.) Because this antivirus software retails for approximately $30 per six-month license, this component of the Settlement amounts to an additional $15 value to each Settlement Class Member.

The certainty of these benefits is without a doubt preferable to the risks of litigation. As described above, absent settlement, the expense, duration, and complexity of protracted litigation would be substantial and require further briefing on numerous substantive issues, further written discovery and depositions—including expert discovery related to the Software Products' underlying functionality—adversarial class certification, and trial. (Richman Decl. ¶ 27.) Likewise, in light of the complexity of the issues presented and the total amount in controversy, the defeated party would likely appeal, further delaying any recovery by the Settlement Class. (*Id.*)

Accordingly, it should be clear that the first and second *Bluetooth* factors weigh in favor of preliminary approval of the Settlement.

**B. The Third *Bluetooth* Factor: the Risks Involved in Maintaining Class Action Status Render Approval Appropriate.**

Next, the risk in maintaining this case as a class action through trial and any appeals also weighs in favor of granting preliminary approval to the Settlement. *See Officers for Justice*, 688 F.2d at 625. This factor does not require a plaintiff to have moved for class certification as long as pre-certification concerns outweigh the risks both parties face should a plaintiff succeed or fail in certifying the class. *See Gardner v. GC Servs., LP,* No. 10-CV-0997-IEG CAB, 2012 WL 1119534, at *4 (S.D. Cal.

Apr. 2, 2012) (recognizing the risk class certification poses for both parties and acknowledging the benefits of settlement).

Given the uniform nature of Defendants' alleged design and marketing practices, Plaintiff and Class Counsel are confident that class certification is appropriate in this case. For example, Defendant's uniform conduct toward the members of the Class raises several common (and predominant) issues of fact and law, including: (i) whether Defendant intentionally designed the Software to falsely report the existence of errors; (ii) whether the Software exaggerates the severity of errors detected on users' computers; (iii) whether Defendant intentionally designed the Software and its respective marketing materials to deceive consumers into purchasing the Products; (iv) whether Plaintiff and the Settlement Class overpaid for the Software Products; and (v) whether those common factual issues—if proven—support Defendant's liability. *See Dukes*, 131 S. Ct. at 2551, 2556 (explaining that commonality is found where the claims of all class members "depend upon a common contention," and "even a single common question will do").

Nevertheless, Class certification also presents a risky hurdle for all Parties and is by no means a foregone conclusion. Defendants are likely to argue that the Software had some degree of utility—which Plaintiff concedes—and raise potential individual issues that could make certification inappropriate—*e.g.*, variations in the conditions of users' computers and the potential effects of these variations on the Software's performance. For Plaintiff, failure to certify the Class means an immediate end to the Class's claims and a total lack of recovery for all Class Members. For Defendant, certification poses severe consequences for the remainder of litigation, increasing Defendant's potential liability.

Given the risks to all Parties relating to maintaining class certification through the end of the case, the Court should find that this factor also weighs in favor of approval.

### C.   The Fourth *Bluetooth* Factor: the Settlement Offers an Appropriate Amount of Relief.

Under the fourth *Bluetooth* factor, the Court evaluates the proposed relief as a "complete package." *Officers for Justice*, 688 F.2d at 628. In determining whether the settlement amount is reasonable, courts give deference "to the private consensual decision of the parties." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1027). The amount and nature of the relief offered in the Settlement is likewise fair and reasonable.

Kulesa's primary purposes in pursuing and resolving this case were (i) to ensure that Defendant did not continue to utilize its alleged deceptive design and promotional practices, and (ii) to obtain appropriate relief for each of the individuals and entities who overpaid for the Software Products. (*See* Kulesa Decl. ¶ 4.) Kulesa's first goal was unquestionably achieved: PCI has agreed to modify the Software Products to more accurately represent the overall health of users' computers and any errors or other problems affecting them, and to better describe the capabilities of the Products and the results produced through in-software disclosures and links to additional materials.

The Settlement also provides Class Members with immediate monetary compensation for the alleged diminished value of the Software Products they purchased. And, to be clear, Kulesa's theory of this case has always been that while any design flaws in the Software's ability to diagnose, report and repair various errors and problems on users' computers reduced its value, the Products didn't lack utility altogether. Indeed, given the nature of the claims in question, it's clear that even if Plaintiff and the Class were successful in obtaining a judgment against

Defendant, they would not obtain a complete refund of the monies they paid for the Software Products. Rather, the trier of fact would first have to determine the diminished value of the Software based upon the functions it does perform as compared to those functions Defendant advertised that it could perform, and then award the difference in that value.

In reaching the instant Settlement and the amount of the individual payments to Settlement Class Members, the Parties attempted to do just that—they considered that the Software Products are, for example, capable of scanning a computer's Windows Registry and identifying and removing empty registry keys. (*Id.* ¶ 26.) Notwithstanding any disagreement regarding the benefits of performing such Registry cleaning functions, there is no question that by (i) modifying and enhancing the Software's scan reports, and (ii) providing additional disclosures about the bases of the reports and the Software's overall functionality, consumers are now in a much better position to determine for themselves whether the Software is worth its purchase price. With that in mind, Plaintiff and proposed Class Counsel believe that a return of $10 for each Software purchase—which represents approximately a 30% return on the difference between the Software's alleged actual value and the $29 average purchase price—is more than adequate and reasonable to compensate Settlement Class Members for the lack of such features and disclosures (*id.* ¶ 27; *see also* Kulesa Decl. ¶ 10), and other courts throughout the country considering similar settlements have agreed. *See Drymon*, No. 11 CH 16779; *Webb*, No. 1:11-cv-04141; *Ledet*, No. 2:11-cv-294; *LaGarde*, No. 3:12-cv-00609; *Gross*, No. 3:12-cv-00154.

The appropriateness of the amount of monetary relief is even clearer when viewed in conjunction with the significant prospective and in-kind relief provided under the Settlement. With respect to the latter, PCI has agreed to provide three months of free access to its PC Antivirus Pro software to each Class Member

1   (regardless of whether they make a claim), which itself amounts to $15 in additional

2   value to each Settlement Class Members, and many orders of that more to the Class

3   as a whole.[9]

4   Accordingly, the amount offered to Class Members—as both prospective, in-

5   kind and monetary relief—is fair and reasonable.

6   **D.   The Fifth *Bluetooth* Factor: the Settlement is a Product of a Well-Developed Factual Record and Therefore, Warrants Approval.**

7

8   Preliminary approval of the Settlement should also be granted because it's

9   based upon a solid factual record developed through both formal and informal

10   _____

11   [9]   Related, but not expressly addressed by the *Bluetooth* factors, the amount of the proposed incentive award to Kulesa as Class Representative (i.e.,

12   $2,000) is appropriate as well. Incentive awards need not typically be addressed at the preliminary approval stage—and certainly not with any great depth of analysis—

13   but instead, are often left to be scrutinized at the final approval hearing and after class members have had a chance to comment in support of or against such an

14   award. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 855 (N.D. Cal. 2010). Scrutiny of incentive awards involves a factors-based test assessing a

15   plaintiff's involvement in the litigation. Courts consider "the risk to the class representative in commencing suit, both financial and otherwise…[,] the amount of

16   time and effort spent by the class representative…[, and] the duration of the litigation…." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal.

17   1995). Recently, the Ninth Circuit has also emphasized the need for district courts to carefully scrutinize incentive awards "so that they do not undermine the adequacy of

18   the class representatives." *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (denying incentive awards that were improperly conditioned on

19   class representatives' support of the settlement agreement). Where, as here, these factors are met, incentive awards of $5,000 (or less) remain "presumptively

20   reasonable." *Moore v. Verizon Commc'ns Inc.*, C 09-1823 SBA, 2013 WL 4610764, at *15 (N.D. Cal. Aug. 28, 2013).

21   In this case and as described above, Kulesa has been an active participant in the litigation, providing counsel with information about her own experience with the

22   Software Products, reviewing evidence and filings, reviewing and submitting supporting declarations, and the like. (Kulesa Decl. ¶¶ 5-9.) In light of her many

23   hours of work on behalf of the Settlement Class, her willingness to continue with those efforts as long as necessary to see this litigation through final disposition, and

24   the results achieved under the terms of the Settlement, there should be no question that an award of $2,000 for her efforts is fair and reasonable, and well below similar

25   awards in other consumer class actions in this Circuit. *See, e.g., Moore*, 2013 WL 4610764, at *15; *Barbosa v. Cargill Meat Solutions Corp.*, No. 1:11-CV-00275-

26   SKO, 2013 WL 3340939, at *23 (E.D. Cal. July 2, 2013); *Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575, at *11 (E.D. Cal.

27   Oct. 31, 2012); *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009).

28

discovery, and proposed Class Counsel's experience in parallel litigation. *See In re OmniVision*, 559 F. Supp. 2d at 1042 (citing *In re Mego*, 213 F. 3d at 459)). Even if that wasn't the case (it is), it is well settled that where parties "have sufficient information to make an informed decision about settlement, formal discovery is not a necessary ticket to the bargaining table." *Gardner*, 2012 WL 1119534, at *5 (quoting *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)) (internal quotations omitted). Ultimately, settling parties need only reach a point in the litigation where they understand the respective strengths and weaknesses of their positions. *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413-W-AJB, 2008 WL 5458986, at *8 (S.D. Cal. Dec. 10, 2008) (quoting *In re Warner Comm'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985)). A compromise based on such a thorough understanding of the legal and factual issues and a "genuine arms-length negotiation is presumed fair." *Nat'l Rural Telecomms.*, 221 F.R.D. at 528 (citations omitted).

Here, as the Court recognized at the August 29th hearing, the Settlement is indeed the result of fair negotiations conducted at arms' length. Despite their initial meetings, discussions, and exchanges of information, the Parties were unable to reach an early resolution of the Action, and instead, proceeded with the litigation. (Richman Decl. ¶¶ 3-6.) It was only after briefing on several substantive motions, oral argument, formal discovery, and additional discussions and exchanges of information that the Parties' believed resolution might be possible. (Richman Decl. ¶¶ 7-9.) Even still, it would take several months of telephone conversations, e-mail exchanges and eventually, a private mediation with John Bates of JAMS to reach agreement on the principal terms of the Settlement. (*Id*. ¶¶ 8-10.) Given that (and as described in *supra* Section II.C), it's clear that the Settlement and its terms were negotiated by experienced counsel who ensured they had ample information—including expert findings and Kulesa's pre-filing investigation—at their disposal

prior to their negotiations and mediation to evaluate the terms of any proposed settlement and to reach a fair and reasonable compromise. (*Id.* ¶ 21.) Throughout the litigation, the lines of communication have remained open, and the Parties have had ample opportunity to discuss and explore their views of the case. (*Id.* ¶ 8.) Now, a year and a half since Plaintiff filed her original complaint, a strong factual record has emerged, enabling the Parties to fairly negotiate the Settlement before the Court.

As such, the fifth *Bluetooth* factor weighs in favor of preliminary approval.

### E.   The Sixth *Bluetooth* Factor: the Experience and Views of Counsel Favor Preliminary Approval of the Settlement.

Finally, the sixth *Bluetooth* factor further supports the preliminary approval of the Settlement.[10] In this consideration, the Court may defer (at least in part) to counsel's view of the Settlement because it was reached by experienced counsel who readily support its approval. Indeed, "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 378; *see also OmniVision*, 559 F. Supp. 2d at 1043. "The recommendations of plaintiff's counsel should be given a presumption of reasonableness." *Id.* And, that presumption of fairness is strengthened when (as here) counsel have specific experience in the type of claims being litigated. *See Martin*, 2011 WL 2313604, at *7; *see also Nat'l Rural Telcomms.*, 221 F.R.D. at 528 ("noting that '[g]reat weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation").

First, Proposed Class Counsel here have significant experience litigating consumer class actions of similar size, scope, and complexity, and have been appointed class counsel in numerous other class actions by courts throughout the

---

[10]     As noted above, the seventh and eighth *Bluetooth* factors—the participation of government actors and the reaction of the settlement class—cannot be considered at this point because notice of the proposed Settlement has yet to be disseminated.

country. (*See* Edelson LLC Firm Resume, attached as Exhibit 4-A to the Richman Decl.) Even more relevant to this case, Proposed Class Counsel have experience prosecuting more than a dozen similar nationwide class actions related to claims against Defendants' industry competitors for their own alleged deceptive design and marketing of utility software products. (Richman Decl. ¶ 16.) With this specialized knowledge, Proposed Class Counsel have investigated and analyzed Plaintiff's and the Class's claims, Defendant's asserted and potential defenses, and the formal and informal discovery Defendant has produced, and with that information in hand, ultimately negotiated the Settlement now before the Court. Accordingly, the experience and views of counsel weigh in favor of preliminary approval.

For all of these reasons, Kulesa and proposed Class Counsel firmly believe that the prospective, monetary and in-kind relief obtained for the Settlement Class, as well as the manner in which it was attained, weighs heavily in favor of a finding that the Settlement is fair, reasonable and adequate, and within the range of approval. (Richman Decl. ¶ 30; Kulesa Decl. ¶ 10.) Accordingly, the Court can appropriately grant preliminary approval.

## VI. THE PROPOSED NOTICE PLAN SHOULD BE APPROVED.

Finally, Rule 23 requires that, if approved, notice of the proposed Settlement be disseminated to the Settlement Class. To satisfy the requirements of both Rule 23 and due process, Rule 23(c)(2)(B) provides that, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The substance of the notice must describe in plain language the nature of the Action, the definition of the certified Class, and the claims, defenses, and proposed relief at issue. *See* Fed. R. Civ. P. 23(c)(2)(B). The

notice must also explain that Class Members may enter an appearance through their own counsel if desired, may request to be excluded from the Class, and that a judgment shall have a binding effect on all Class Members. *Id*. The proposed notice plan here satisfies both Rule 23 and due process.

The Settlement provides for a three-part Notice Plan. First, the Settlement Administrator—Epic Systems—will send direct notice via e-mail to the last known e-mail address of each Settlement Class Member. Direct e-mail notice will be particularly effective in this case given that e-mail was the primary means by which Settlement Class Members communicated with PCI following their purchase of the Software Products and were required before Class Members could complete those purchases.[11] (Richman Decl. ¶ 28.) The notice is both neutral in tone and easy to understand, allowing Class Members to make informed decisions based on their rights under the settlement.

Secondly, in the event that an e-mail "bounces back" or is shown to be undeliverable for "soft-bounce back" reasons, the Settlement Administrator will resend the notice to account for issues that might render it temporarily undeliverable (e.g., server problems). (Agreement § VIII.A.) If a second attempt at e-mail notice proves unsuccessful, the Settlement Administrator will then perform a reverse lookup using that Class Member's name, e-mail address and zipcode (as provided by Defendant) to attempt to locate a valid mailing address for the Class Member. (*See* Ex. 2.) If a valid address is located, the Settlement Administrator will then send a hardcopy postcard notice via U.S. Mail to that address. (*Id.*)

Finally, the Settlement Administrator will launch and maintain a Settlement Website that allows for 24-hour access to relevant Court documents—including a

---

[11]    The Settlement Administrator will also use a multi-faceted approach to further ensure the deliverability of the e-mail notice. (*See generally*, Declaration of Mallory Sander, attached as Exhibit 6.) In other similar cases, those procedures resulted in tremendously successful deliverability rates of upwards of 90%.

copy of the Settlement Class Notice, a downloadable Claim Form, a downloadable Opt-Out Form, the Settlement Agreement, the Preliminary Approval Order entered by the Court (should one be entered), and the operative pleadings. The Settlement Website will also allow Class Members to submit Claim Forms and Requests to be Excluded from the Settlement online. (The proposed Notices, Claim Form and Opt-Out Form are attached to the Agreement and Addendum as Exhibits A, B, E, and F.) Back-stopping the Settlement Website will be a toll-free telephone line through which Class Members may contact the Settlement Administrator to obtain additional information about the Settlement and request a Claim Form and/or Opt-Out Form, as well as a mailing address through which Class Members will have the ability to contact the Administrator to make such requests. (Agreement §§ VII-VIII.)

Accordingly, the proposed Notice Plan satisfies both Rule 23 and due process, and it too should be approved by the Court.

## VII. CONCLUSION

For the foregoing reasons, Plaintiff Virginia Kulesa respectfully requests that the Court enter an Order (i) granting preliminary approval of the Parties' proposed class action Settlement, (ii) certifying the proposed Settlement Class for settlement purposes, (iii) approving the form and content of the notice to the members of the Settlement Class, (iv) appointing Kulesa as Class Representative, (v) appointing her counsel as Class Counsel, (vi) scheduling a Fairness Hearing, and (vii) providing such other and further relief as the Court deems reasonable and just.

Respectfully submitted,

**VIRGINIA KULESA**, individually and on behalf of all others similarly situated,

Dated: September 26, 2013          By: /s/ Benjamin H. Richman
                                                One of Plaintiff's Attorneys

JAY EDELSON (*Pro Hac Vice*)
jedelson@edelson.com
RAFEY S. BALABANIAN (*Pro Hac Vice*)
rbalabanian@edelson.com
BENJAMIN H. RICHMAN (*Pro Hac Vice*)
brichman@edelson.com
CHANDLER R. GIVENS (*Pro Hac Vice*)
cgivens@edelson.com
EDELSON LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone:  (312) 589-6370
Facsimile:  (312) 589-6378

SEAN P. REIS (SBN 184044)
sreis@edelson.com
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

    I, Benjamin H. Richman, an attorney, hereby certify that on September 26, 2013, I served the above and foregoing ***Plaintiff's Renewed Motion for and Memorandum in Support of Preliminary Approval of Class Action Settlement***, by causing a true and accurate copy of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this the 26th day of September 2013.

                            /s/ Benjamin H. Richman

# Exhibit 1

1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

VIRGINIA KULESA, individually and
on behalf of all others similarly situated,

11

Case No. 8:12-cv-00725-FMO-AN

12

*Plaintiff,*

**STIPULATION OF CLASS ACTION
SETTLEMENT**

13

*v.*

14

PC CLEANER, INC., a California
corporation,

Judge: Honorable Fernando M. Olguin
Action Filed: May 4, 2012

15
16

*Defendant.*

17
18
19
20
21
22
23
24
25
26
27
28

This Stipulation of Class Action Settlement (the "Agreement") is entered by and among Plaintiff Virginia Kulesa ("Kulesa" or "Plaintiff") for herself individually and on behalf of the Settlement Class, and Defendant PC Cleaner, Inc. ("PC Cleaner" or "Defendant") (Plaintiff and Defendant are collectively referred to herein as the "Parties").[1] This Agreement is intended by the Parties to fully, finally and forever resolve, discharge and settle the Settled Claims upon and subject to the terms and conditions hereof, and subject to the approval of the Court.

## I.   RECITALS

WHEREAS, on May 4, 2012, Plaintiff filed an action in the United States District Court for the Central District of California, captioned *Kulesa v. PC Cleaner, Inc.*, Case No. 8:12-cv-00725-FMO-AN (the "Action"), alleging claims for damages, injunctive, and declaratory relief against PC Cleaner arising out of the design, marketing, and sale of the Software Products;

WHEREAS, on August 17, 2012, Plaintiff filed a First Amended Complaint in the Action;

WHEREAS, on August 31, 2012, PC Cleaner moved to dismiss Plaintiff's First Amended Complaint;

WHEREAS, on October 12, 2012, the Court granted PC Cleaner's motion and dismissed Plaintiff's First Amended Complaint without prejudice and directed Plaintiff to file a further amended pleading;

WHEREAS, on November 13, 2012, Plaintiff filed a Second Amended Complaint in the Action;

WHEREAS, on November 30, 2012, PC Cleaner moved to dismiss Plaintiff's Second Amended Complaint;

WHEREAS, on January 7, 2013, the Court granted, in part, and denied, in

---

[1]   Except as otherwise specified, defined terms shall have the meanings set forth in Section II of this Agreement.

1  part, PC Cleaner's motion, without prejudice to Plaintiff's filing of a further
2  amended pleading;

3  WHEREAS, on January 18, 2013, Plaintiff filed a Third Amended Complaint
4  in the Action;

5  WHEREAS, on February 5, 2013, PC Cleaner filed an Answer to Plaintiff's
6  Third Amended Complaint;

7  WHEREAS, following the filing of Plaintiff's Third Amended Complaint,
8  Plaintiff served and PC Cleaner responded to written discovery requests;

9  WHEREAS, following the filing of Plaintiff's Third Amended Complaint, the
10 Parties also began discussing the potential resolution of this matter on a classwide
11 basis;

12 WHEREAS, through their discussions, the Parties made significant progress
13 toward a class action settlement in principle. Nevertheless, in order to reach
14 agreement on all outstanding principle terms of a settlement, the Parties determined
15 it was necessary to proceed with a private mediation, and did so before Mr. John B.
16 Bates, Jr. of JAMS on May 15, 2013 in Los Angeles, California. With the assistance
17 of Mr. Bates, the Parties were able to finalize the terms of a class action settlement
18 in principle that would resolve each of the claims against Defendant in the Action
19 related to the alleged fraudulent design and marketing of the Software Products;

20 WHEREAS, Plaintiff and Class Counsel have conducted a comprehensive
21 examination of the law and facts relating to the matters at issue in the Action
22 regarding Plaintiff's claims and Defendant's potential defenses, including through
23 independent investigation, formal and informal discovery, and exchanges of
24 information throughout the pendency of the Action;

25 WHEREAS, the Parties engaged in extensive arms-length settlement
26 negotiations, which included a formal mediation session as well as the exchange of
27 information through discovery;

28

WHEREAS, based on an analysis of the facts and the law applicable to Plaintiff's claims in the Action, and taking into account the burdens and expense of such litigation, including the risks and uncertainties associated with protracted trials and appeals, as well as the fair, cost-effective and assured method of resolving the claims of the Settlement Class, Plaintiff and Class Counsel have concluded that this Settlement provides substantial benefits to the Settlement Class and the public as a whole, and is fair, reasonable, adequate, and in the best interest of Plaintiff and the Settlement Class;

WHEREAS, Defendant does not admit any liability or wrongdoing, but has similarly concluded that this Agreement is desirable in order to avoid the time, risk and expense of defending protracted litigation, and to resolve finally and completely the pending and potential claims of Plaintiff and the Settlement Class; and

WHEREAS, the Parties agree that all Persons shall have an individual right to exclude themselves from the Settlement Class, such that participation in the Settlement Benefits provided by this Agreement shall be voluntary;

NOW, THEREFORE, the Parties stipulate and agree that any and all Released Claims against PC Cleaner, Inc., shall be finally settled and resolved on the terms and conditions set forth in this Agreement, subject to Court approval, as a fair, reasonable and adequate settlement.

## II.    DEFINITIONS

As used herein, in addition to any definitions set forth elsewhere in this Agreement, the following terms shall have the meanings set forth below:

"*Action*" means the case captioned *Kulesa v. PC Cleaner, Inc.*, Case No. 8:12-cv-00725-FMO-AN (C.D. Cal.), and any amendments thereto.

"*Agreement*" means this Stipulation of Class Action Settlement (including all exhibits hereto).

"*Approved Claim*" means a Claim Form submitted by a Settlement Class Member that (a) is timely and submitted in accordance with the directions on the Claim Form and the terms of this Agreement, (b) is physically signed or

electronically verified by the Settlement Class Member, and (c) satisfies the conditions of eligibility for a Settlement Payment as set forth in Section VI.C.1.

"***Claimant***" means a Settlement Class Member that submits a Claim Form for a Settlement Benefit.

"***Claim Form***" means the form attached hereto as Exhibit B, as approved by the Court. The Claim Form must be completed, and physically signed or verified electronically, by Settlement Class Members who wish to file a claim for a Settlement Benefit, and shall be available for download from the Settlement Website in electronic format and from the Settlement Administrator in hardcopy form. The Claim Form will require the Settlement Class Member to provide the following information: (a) full name, current address, telephone number (optional), and e-mail address, (b) an affirmation that he or she purchased one or more of the Software Products, and (c) a statement that he or she has not received a refund of all monies paid for the Software Product(s). The Claim Form will not require notarization, but will require that the information supplied be true and correct.

"***Claims Deadline***" means the date by which all Claim Forms must be received to be considered timely and shall be set as the date ninety (90) days after the Settlement Class Notice is first disseminated to the Settlement Class. The Claims Deadline shall be clearly set forth in the notice to be provided to the Settlement Class, the Claim Form, the Court's order granting Preliminary Approval, and the Judgment.

"***Claims Period***" means the period of time during which Settlement Class Members may submit Claim Forms to receive Settlement Payments and shall commence on the date that the Settlement Class Notice is first disseminated to the Settlement Class and shall end on the date ninety (90) days thereafter.

"***Class Counsel***" means attorneys Jay Edelson, Benjamin H. Richman and Chandler R. Givens of Edelson LLC.

"***Class Representative***" means the named Plaintiff in this Action, Virginia Kulesa.

"***Court***" means the United States District Court for the Central District of California.

"***Defendant's Counsel***" means Hunter R. Eley and William H. Edmonson of Doll Amir and Eley LLP.

"***Effective Date***" means one business day following the later of: (a) the date upon which the time expires for filing or noticing any appeal of the Judgment; (b) if there is an appeal or appeals, other than an appeal or appeals solely with respect to attorneys' fees and reimbursement of expenses, the date of completion, in a manner that finally affirms and leaves in place the Judgment without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (c) the date of final dismissal of any appeal or the final dismissal of any proceeding on certiorari with respect to the Judgment.

"*Fairness Hearing*" means the hearing before the Court where the Parties will request the Judgment be entered by the Court finally approving the settlement as fair, reasonable and adequate, and approving the Fee Award and the incentive award to the Class Representative.

"*Fee Award*" means the amount of attorneys' fees and reimbursement of costs awarded by the Court to Class Counsel through a Final Judgment Order in the form attached as Exhibit D to this Agreement.

"*Judgment*" means the Order of Final Judgment, in the form attached as Exhibit D to this Agreement, to be entered by the Court finally approving this Agreement, without material modifications that are unacceptable to the Parties.

"*Nationwide*" means the fifty (50) states, the District of Columbia, and the territories of the United States of America.

"*Notice Date*" means the date upon which Settlement Class Notice is first disseminated to the Settlement Class.

"*Notice Expenses*" means all reasonable costs and expenses expended in the execution of the Notice Plan, including (a) all reasonable costs and expenses incurred in connection with preparing, printing, mailing, disseminating, posting, promoting, emailing, hosting on the Internet and publishing the Settlement Class Notice, identifying members of the Settlement Class and informing them of the proposed settlement, and (b) any other reasonable and necessary notice and notice-related expenses.

"*Notice of Intention to Appear and Object*" is the written communication that may be filed with the Court by a Settlement Class Member in order to object to the approval of this Agreement. A copy of such Notice of Intention to Appear and Object must be signed by the Settlement Class Member and also be sent to the Settlement Administrator, Class Counsel and Defendant's Counsel at the time of filing.

"*Notice Plan*" means the plan described in Section VIII of this Agreement for disseminating notice to the Settlement Class Members of the terms of this Agreement and the Fairness Hearing.

"*Opt-Out Period*" means the period for a Settlement Class Member to file a Request for Exclusion, which shall expire sixty (60) days following the date that the Settlement Class Notice is first disseminated to the Settlement Class, subject to Court approval. The deadline for filing a Request for Exclusion will be clearly set forth in the Settlement Class Notice.

"*Parties*" means, collectively, Plaintiff Virginia Kulesa and Defendant PC Cleaner, Inc.

"*PC Cleaner*" or "*PCI*" means Defendant PC Cleaner, Inc., a California corporation.

"*Person*" means any individual, corporation, trust, partnership, limited liability company or other legal entity and their respective predecessors, successors or assigns. The definition of "Person" is not intended to include any governmental

agencies or governmental actors, including, without limitation, any state Attorney General office.

"***Preliminary Approval***" means the Court's Order Preliminarily Approving Class Action Settlement, in the form attached as Exhibit C to this Agreement, to be entered by the Court without material modifications that are unacceptable to the Parties.

"***Released Claims***" means any and all claims or causes of action of every kind and description (including any causes of action in law, claims in equity, complaints, suits or petitions) and any allegations of wrongdoing (including any assertions of liability, debts, legal duties, torts, unfair or deceptive practices, statutory violations, contracts, agreements, obligations, promises, promissory estoppel, detrimental reliance, or unjust enrichment) and any demands for legal, equitable or administrative relief (including any claims for injunction, rescission, reformation, restitution, disgorgement, constructive trust, compensatory damages, consequential damages, penalties, exemplary damages, punitive damages, attorneys' fees, costs, interest, or expenses) that the Releasing Parties had or have (including assigned claims and "Unknown Claims" as defined below) that have been or could have been asserted in the Action or in any other action or proceeding before any court, arbitrator(s), tribunal or administrative body (including any state, local or federal regulatory body), in any jurisdiction worldwide, regardless of whether the claims or causes of action are based on federal, state, or local law, statute, ordinance, regulation, contract, common law, or any other source, and regardless of whether they are known or unknown, foreseen or unforeseen, suspected or unsuspected, or fixed or contingent, arising out of, or related or connected in any way with the Released Conduct.

"***Released Conduct***" means any and all direct or indirect acts, omissions, representations, conduct, legal duties, unjust enrichment, trade practices, or obligations that arise out of, or are related or connected in any way with one or more of the following: (a) the design, use, functionality, operation, and/or performance of the Software Products, (b) the marketing and advertising of the Software Products as it relates to the design, use, functionality, operation and/or performance of the Software Products, and (c) warranties, representations, or omissions relating to the design, use, functionality, operation and/or performance of the Software Products. Nothing herein is intended to release any claims any governmental agency or governmental actor has against Defendant (if any).

"***Released Party***" means PC Cleaner, Inc., its respective predecessors, successors, assigns, parents, subsidiaries, divisions, departments, and any and all of its past, present, and future officers, directors, employees, stockholders, partners, servants, successors, attorneys, representatives, insurers, subrogees and assigns of any of the foregoing.

"***Releasing Parties***" means Plaintiff, any Person in the Settlement Class, any Person claiming or receiving a Settlement Benefit, and each of their respective spouses, children, heirs, associates, co-owners, attorneys, agents, administrators, executors, devisees, predecessors, successors, assignees, representatives of any kind, shareholders, partners, directors, employees, or affiliates.

"***Request for Exclusion***" is the written communication by or on behalf of a member of the Settlement Class in which he, she, or it requests to be excluded from the Settlement Class.

"*Settlement Administration Expenses*" means Notice Expenses (defined above) and all other expenses incurred by the Settlement Administrator in handling the administration of the settlement and performing the services it is obligated to perform under this Agreement related to administration of the settlement, which may include the processing of Claim Forms submitted by Settlement Class Members pursuant to this Agreement.

"*Settlement Administrator*" means, subject to approval of the Court, Epiq Systems, which will oversee the Notice Plan and the processing and payment of Settlement Class Members' Claim Forms as set forth in this Agreement.

"*Settlement Benefit*" means the benefit a Settlement Class Member may receive pursuant to this Agreement.

"*Settlement Payment*" means the payment to be made on Approved Claims as described in Section VI.C of this Agreement, consisting of one payment of $10 to each Claimant.

"*Settlement Class*" means all individuals and entities residing in the United States and its territories that, on or before the date on which the Court enters an order preliminarily approving the settlement, purchased any and all versions of the following software: PC Cleaner Pro 2011, PC Cleaner Pro 2012 and PC Cleaner Pro 2013. Excluded from the Settlement Class are the following: (a) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current and former employees, officers, and directors, (b) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (c) Persons who execute and file a timely Request for Exclusion, (d) Persons whose claims in this matter have been finally adjudicated on the merits or otherwise released, and (e) the legal representatives, successors, or assigns of any such excluded Person.

"*Settlement Class Member*" or "*Class Member*" means a Person who falls within the definition of the Settlement Class as set forth in this Agreement and who has not submitted a valid Request for Exclusion.

"*Settlement Class Notice*" means the form of Court-approved notice of this Agreement that is disseminated to the Settlement Class. The Parties have proposed that the Court approve notice in the form attached to this Agreement as Exhibit A.

"*Settlement Website*" means the website to be created, launched, and maintained by the Settlement Administrator, and which allows for the electronic submission of claims, and provides access to relevant case documents including the Settlement Class Notice, information about the submission of Claim Forms and other relevant documents, including downloadable Claim Forms.

"*Software Products*" means any and all versions of PC Cleaner Pro 2011, PC Cleaner Pro 2012, and PC Cleaner Pro 2013.

"*Unknown Claims*" shall have the meaning set forth in Section V.B. of this Agreement.

### III. FOR SETTLEMENT PURPOSES ONLY

This Agreement, whether or not consummated, and any actions or proceedings taken pursuant to this Agreement, are for settlement purposes only and Defendant specifically denies any and all wrongdoing. The existence of, terms in, and any action taken under or in connection with this Agreement will not constitute, be construed as, or be admissible in evidence as, any admission by Defendant of (a) the validity of any claim, defense or fact asserted in the Action or any other pending or future action, or (b) any wrongdoing, fault, violation of law, or liability of any kind on the part of the Parties.

### IV. REQUIRED EVENTS AND COOPERATION BY THE PARTIES

**A. Preliminary and Final Approval.** Promptly after execution of this Agreement, Class Counsel shall submit this Agreement to the Court and shall move the Court to enter a Preliminary Approval Order, which shall include, among other provisions, a request that the Court:

2. Appoint Plaintiff Virginia Kulesa as representative of the Settlement Class;

3. Appoint Class Counsel to represent the Settlement Class;

4. Certify the Settlement Class under Fed. R. Civ. P. 23 for settlement purposes only and without prejudice to Defendant's right to contest class certification if this Agreement is not approved;

5. Preliminarily approve this Agreement for purposes of disseminating notice to the Settlement Class;

6. Approve the form and contents of the Settlement Class Notice and the method of its dissemination to the Settlement Class; and

7. Schedule a Fairness Hearing to review comments and/or objections regarding this Agreement, to consider its fairness, reasonableness and adequacy, and the application for an award of attorneys' fees and

reimbursement of expenses and to consider whether the Court shall issue a Judgment approving this Agreement, granting Class Counsel's application for the Fee Award and an incentive award to the Class Representative, and dismissing the Action with prejudice.

A copy of the form of the proposed Preliminary Approval Order agreed to by the Parties is attached hereto as Exhibit C.

**B**.    **Cooperation.** The Parties shall, in good faith, cooperate, assist and undertake all reasonable actions and steps in order to accomplish these required events on the schedule set by the Court, subject to the terms of this Agreement.

**C.    Certification of the Settlement Class.** For purposes of this settlement only, Plaintiff and the Defendant stipulate to the certification of the Settlement Class, which is contingent upon the Court's final approval of this settlement and the occurrence of the Effective Date. Should the settlement not receive final approval from the Court or the Effective Date not occur, the certification of the Settlement Class shall be void and this Agreement will not constitute, be construed as, or be admissible in evidence as, an admission or be used for any purpose whatsoever in this Action or any other pending or future action.

**V.    RELEASES**

**A.    The Release.** Upon the entry of the Judgment, and in consideration of the Settlement Benefits described herein, each Settlement Class Member shall be deemed to have released, acquitted and forever discharged the Released Party from any and all "Released Claims."

**B.    Unknown Claims.** The Release includes the release of Unknown Claims. "Unknown Claims" means claims that could have been raised in this litigation and that Plaintiff, any member of the Settlement Class or any Releasing Party, do not know or suspect to exist, which, if known by him, her or it, might affect his, her or its agreement to release any Released Party or the Released

Conduct or might affect his, her or its decision to agree, object or not to object to the settlement. Upon the Effective Date, Plaintiff, any member of the Settlement Class, and any Releasing Party shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HER OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Upon the Effective Date, each of the Releasing Parties shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state, the District of Columbia or territory of the United States, by federal law, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to Section 1542 of the California Civil Code. Plaintiff, the Settlement Class, and the Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Release, but that it is their intention to finally and forever settle and release the Released Claims, notwithstanding any Unknown Claims they may have, as that term is defined in this Paragraph.

**C.    Exclusive Remedy.** This Agreement shall be the sole and exclusive remedy of Settlement Class Members against any Released Party relating to any and all Released Claims and/or Released Conduct. No Released Party shall be subject to liability or expense of any kind to any Settlement Class Member who has not timely filed a valid Request for Exclusion with respect to any Released Claim. Upon the entry of the Judgment, each and every Settlement Class Member shall be permanently barred and enjoined from initiating, asserting and/or prosecuting any

Released Claim(s) against any Released Party in any court, arbitration, tribunal, forum or proceeding.

      **D.     Jurisdiction of the Court.** The Parties agree that the Court shall retain exclusive and continuing jurisdiction over the Action, the Parties, Settlement Class Members, and the Settlement Administrator in order to interpret and enforce the terms, conditions, and obligations under this Agreement.

## VI.   SETTLEMENT BENEFITS

      **A.     Improvements to the Software Products.** As soon as practicable, but no later than ninety (90) days after the Effective Date, and to the extent it has not done so already, Defendant shall modify the current versions of the Software Products to:

           1.     Eliminate usage of the term "Damage Level" when referring to the harm posed by items detected during and as a result of the software's diagnostics scans;

           2.     Include accurate in-software "hoverbox" (i.e., a dialog box displayed when the user rolls over an icon with their mouse) descriptions proximate to the software's graphical representations about the "Scan items" categories and the overall Performance and Security gauge. These "hoverboxes" shall describe the path to in-software links that direct the user to documentation contained on PC Cleaner's website that explains the Software Products' concern levels for the types of items detected through the software's scans.

      **B.     Settlement Payments.** In addition to Settlement Administration Expenses, Notice Expenses, the Fee Award, and the incentive award to the Class Representative described in Section XI.A of this Agreement (the "Incentive Award"), Defendant shall be obligated pursuant to this Agreement to make Settlement Payments to the Settlement Class Members. Defendant represents that it has the financial ability to make the payments required under the terms of this

Agreement and will make all such payments as they come due.

1.  *Settlement Payment Eligibility.* To be eligible for a Settlement Payment under the Agreement, a Settlement Class Member must affirm in the Claim Form: (a) that he, she or it purchased one or more of the Software Products, and (b) that he, she or it did not previously receive a full refund of all monies paid for the Software Product(s). Settlement Class Members who have received a full refund of the monies paid for a Software Product shall not be entitled to receive a Settlement Payment for such Software Product.

2.  *Individual Settlement Payments to Class Members.*  Each Settlement Class Member who physically signs or verifies electronically, and timely submits a Claim Form, in the form attached hereto as Exhibit B, providing all of the information requested in the Claim Form, and who is determined by the Settlement Administrator to be eligible for payment under the criteria set forth above in Section VI.C.1, shall be entitled to one payment of ten dollars ($10.00) to be paid by Defendant. Defendant shall make all Settlement Payments through the Settlement Administrator.

3.  *In-Kind Benefit.* For each Person who is identified to be a Member of the Settlement Class, and who does not timely submit a Request for Exclusion, PC Cleaner agrees to provide a free license to use its PC Antivirus Pro 2013 software product (or other software product of a similar value and utility) for three months, regardless of whether the Settlement Class Member submits a claim. An activation code for the free software will be sent to each Settlement Class Member in the Settlement Class Notice e-mail described in Section VIII of this Agreement.

If, within ninety (90) days after the Effective Date, less than twelve thousand (12,000) Settlement Class Members (the "Minimum Activation Amount") have redeemed their free access to the software, PC Cleaner shall transmit an e-mail to all

non-redeeming Settlement Class Members reminding them of their eligibility to access the free software. If one hundred twenty (120) days after the transmission of the reminder e-mail the Minimum Activation Amount has still not been reached, the difference between the number of months of access actually activated and the months of free access represented by the Minimum Activation Amount shall be evenly distributed amongst all Settlement Class Members that have redeemed their free access to the software. A determination as to whether the Minimum Activation Amount has been reached shall not delay the entry of Judgment as otherwise contemplated by this Agreement.

## VII.   CLAIMS PROCESS & SETTLEMENT ADMINISTRATION

### A.   Submission of Claims.

1.   *Submission of Electronic and Hard Copy Claims*. Settlement Class Members may submit electronically verified Claim Forms to the Settlement Administrator through the Settlement Website, or may download Claim Forms to be filled out, signed, and submitted physically by mail to the Settlement Administrator. Claim Forms must be submitted electronically or postmarked during the Claims Period and on or before the Claims Deadline. The Settlement Administrator may reject any Claim Forms that are incomplete, inaccurate, or untimely.

2.   *Requests for Claim Forms*. Any Settlement Class Member unable or unwilling to complete an online Claim Form or download a Claim Form from the Settlement Website may call a toll free number to be established by the Settlement Administrator, or write to the Settlement Administrator, to request a hardcopy Claim Form. In order to be sent a hardcopy Claim Form, the Settlement Class Member must provide his, her or its name and mailing address.

### B.   Settlement Administrator's Duties.

1.   *Cost Effective Claims Processing*. The Settlement Administrator shall, under the supervision of the Court, administer the relief provided by this

Agreement by processing Claim Forms in a rational, responsive, cost effective and timely manner.

2.     *Dissemination of Notices.* The Settlement Administrator shall disseminate the Settlement Class Notice as provided in Section VIII *infra*.

3.     *Maintenance of Records.* The Settlement Administrator shall maintain reasonably detailed records of its activities under this Agreement. The Settlement Administrator shall maintain all such records as required by applicable law in accordance with its business practices and such records will be made available to Class Counsel and Defendant's Counsel upon request. The Settlement Administrator shall also provide reports and other information to the Court as the Court may require. Upon request, the Settlement Administrator shall provide Class Counsel and Defendant's Counsel with information concerning notice, administration and implementation of the settlement. Should the Court request, the Parties in conjunction with the Settlement Administrator, shall submit a timely report to the Court summarizing the work performed by the Settlement Administrator, including a report of all amounts paid to Settlement Class Members on account of Approved Claims. Without limiting the foregoing, the Settlement Administrator shall:

(a)     Receive Requests for Exclusion from Class Members to exclude themselves from the settlement and provide to Class Counsel and Defendant's Counsel a copy thereof within five (5) days following the deadline for submission of such forms and requests. If the Settlement Administrator receives any Requests for Exclusion or other requests from Settlement Class Members after the deadline for the submission of Requests for Exclusion, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and Defendant's Counsel.

(b)     Provide weekly or other periodic reports to Class Counsel

and Defendant's Counsel upon request that include, without limitation, reports regarding the number of Claim Forms received, the number of valid Claim Forms received, and the categorization and description of Claim Forms rejected by the Settlement Administrator.

(c)     Make available for inspection by Class Counsel and Defendant's Counsel the Claim Forms and any supporting documentation received by the Settlement Administrator at any time upon reasonable notice.

(d)     Cooperate with any audit by Class Counsel or Defendant's Counsel, who shall have the right but not the obligation to review, audit, and evaluate all claims for accuracy, veracity, completeness and compliance with the terms and conditions of this Agreement.

4.     *Creation of Settlement Website*. The Settlement Administrator shall create the Settlement Website. The Settlement Website shall contain claims information and relevant documents, including but not limited to a copy of the Settlement Class Notice, the Claim Form, this Agreement, the Preliminary Approval Order entered by the Court, and the operative complaint in the Action. The Settlement Website shall also include a toll free telephone number and mailing address through which Settlement Class Members may contact the Settlement Administrator directly.

5.     *Review of Claim Forms*. The Settlement Administrator shall reject a Claim Form where it is unsigned or incomplete, or there is evidence of abuse or fraud. The Settlement Administrator shall employ reasonable means to prevent fraud and to verify that Claim Forms have not been submitted by Persons other than potential Settlement Class Members. Defendant's Counsel and Class Counsel shall have the right to challenge the acceptance or rejection of a Claim Form submitted by a Settlement Class Member and such challenges shall be timely decided by the Settlement Administrator, if not resolved by agreement of the Parties.

1       6. *Requests for Additional Information*. In the exercise of its duties

2    outlined in this Agreement, the Settlement Administrator shall have the right to

3    reasonably request additional information from the Parties or any Settlement Class

4    Member.

5       7. *Timing of Settlement Payments*. The Settlement Administrator

6    shall make all Settlement Payments by check and mail them to Settlement Class

7    Members within thirty (30) days after the Effective Date.

8      **C.** **Payment of Settlement Administration Expenses.** All reasonable

9    Settlement Administration Expenses shall be paid for by Defendant.

10   **VIII. SETTLEMENT CLASS NOTICE**

11     **A.** **Direct Notice.** Within seven (7) days after Preliminary Approval of this

12   Agreement, including the form and content of the Settlement Class Notice,

13   Defendant shall provide the Settlement Administrator with a list containing the last

14   known e-mail addresses in its possession for the potential members of the Settlement

15   Class. Within twenty-one (21) days after receipt of the e-mail list from Defendant,

16   the Settlement Administrator shall disseminate notice of the settlement to the

17   potential members of the Settlement Class via e-mail. The Settlement Class Notice

18   shall be substantially in the form attached as Exhibit A and include an electronic link

19   to the Settlement Website (as identified below). For e-mails that result in a "soft

20   bounce-back" or are otherwise undeliverable, the Settlement Administrator shall re-

21   send the notice e-mail.

22     **B.** **Settlement Website.** Within twenty-one (21) days after Preliminary

23   Approval of this Agreement, including the form and content of the Settlement Class

24   Notice, the Settlement Administrator shall cause the Settlement Website to be

25   launched on the Internet in accordance with Section VII.B.4 of this Agreement.

26     **C.** **Contents of the Settlement Class Notice.** The Settlement Class Notice

27   shall, *inter alia*, (a) specify the deadline for Settlement Class Members to opt-out of,

28

1  object to, or otherwise comment upon the settlement by day, month, and year, and

2  state that any objection to this Agreement, and any papers submitted in support of

3  said objection, will only be considered by the Court at the Fairness Hearing if, on or

4  before the deadline to opt-out of, object to, or otherwise comment upon the

5  settlement, the Person making the objection files a Notice of Intention to Appear and

6  Object and copies of such papers he, she or it proposes to submit for consideration at

7  the Fairness Hearing with the Clerk of the Court and delivers copies of the same by

8  mail, hand, or overnight delivery service to both Class Counsel and Defendant's

9  Counsel; (b) instructions on how to submit a Claim Form; (c) the deadline for

10 Settlement Class Members to submit Claim Forms; and (d) the date, time and

11 location of the Fairness Hearing. A copy of the proposed Settlement Class Notice is

12 attached as Exhibit A hereto.

13 **IX.   OPT-OUT AND OBJECTIONS**

14      **A.      Right to Exclusion.** Any Settlement Class Member may submit a

15 Request for Exclusion from the settlement at any time during the Opt-Out Period,

16 which shall expire sixty (60) days following the date that the Settlement Class

17 Notice is first disseminated to the potential members of the Settlement Class. To be

18 valid, any Request for Exclusion must be in writing; identify the case name *Kulesa*

19 *v. PC Cleaner, Inc.*, No. 8:12-cv-00725-FMO-AN; state the name, address and

20 telephone number of the member(s) of the Settlement Class seeking exclusion;

21 identify the email address the Settlement Class Member believes was used to

22 purchase, register or activate the Software Products purchased by the Settlement

23 Class Member; be physically signed by the Person(s) seeking exclusion; and must be

24 postmarked or received by the Settlement Administrator on or before the end of the

25 Opt-Out Period. Each Request for Exclusion must also contain a statement to the

26 effect that "I/We hereby request to be excluded from the proposed Settlement Class

27 in *Kulesa v. PC Cleaner, Inc.*" Any Person who elects to opt out of the Settlement

28

1    Class shall not (a) be bound by any orders or Judgment entered in this Action, (b) be

2    entitled to relief under this Agreement, (c) gain any rights by virtue of this

3    Agreement, or (d) be entitled to object to any aspect of this Agreement. No Person

4    may opt out of the Settlement Class through "mass" or "class" opt-outs.

5            **B.      Right to Comment or Object.** Any Settlement Class Member may

6    comment in support of or in opposition to the settlement and may do so in writing, in

7    person, or through counsel, at his or her own expense, at the Fairness Hearing.

8    Except as the Court may order otherwise, no Settlement Class Member objecting to

9    the settlement shall be heard and no papers, briefs, pleadings, or other documents

10   submitted by any such Settlement Class Member shall be received and considered by

11   the Court unless such Settlement Class Member shall both file with the Court and

12   mail to Class Counsel and Defendant's Counsel a written objection with the caption

13   *Kulesa v. PC Cleaner, Inc.*, No. 8:12-cv-00725-FMO-AN, that includes: (a) the

14   Settlement Class Member's full name and current address, (b) the email address the

15   Settlement Class Member believes was used to purchase, register or activate the

16   Software Products purchased by the Settlement Class Member, (c) a signed

17   declaration that he or she believes himself, herself or itself to be a member of the

18   Settlement Class, (d) the specific grounds for the objection, (e) all documents or

19   writings that the Settlement Class Member desires the Court to consider, and (f) a

20   notice of intention to appear (if any). All written objections must be filed and

21   postmarked no later than sixty (60) days following the date that the Settlement Class

22   Notice is first disseminated to the Settlement Class. Any Settlement Class Member

23   who fails to object in the manner prescribed herein shall be deemed to have waived

24   his, her or its objections and forever be barred from making any such objections in

25   the Action or in any other action or proceeding. While the statement described in

26   subsection (b) above is prima facie evidence that the objector is a member of the

27   Settlement Class, Plaintiff and/or Defendant may take discovery regarding the

28

matter, subject to Court approval.

## X.    TERMINATION OF AGREEMENT

The Class Representative in this Action (on behalf of the Settlement Class Members) and Defendant shall have the right to terminate this Agreement by providing written notice of her or its election to do so ("Termination Notice") to the other Party within forty-five (45) days of: (a) the Court's refusal to grant Preliminary Approval of the Agreement in any material respect, (b) the Court's refusal to enter the Judgment in any material respect, and (c) the date upon which the Judgment is modified or reversed in any material respect by any appellate or other court.

## XI.    PLAINTIFF'S INCENTIVE AWARD, THE FEE AWARD AND COSTS

**A.    Incentive Award.** Defendant agrees to pay the Class Representative, in addition to any Settlement Payment under the Agreement and in recognition of her efforts on behalf of the Settlement Class, subject to Court approval, the Incentive Award in the amount of two thousand dollars ($2,000.00). Defendant shall not object to or otherwise challenge, directly or indirectly, Class Counsel's application for the Incentive Award to the Class Representative if limited to this amount. Class Counsel has, in turn, agreed to seek no more than this amount from the Court as the Inventive Award for the Class Representative. Defendant shall pay (by wire) to Class Counsel the Incentive Award approved by the Court by the earlier of (a) the date fourteen (14) days after the entry of the Judgment if no objections to the settlement have been filed or any objections that have been filed have otherwise been withdrawn prior to the entry of the Judgment, or (b) the date fourteen (14) days after the Effective Date. The Court's Order approving the payment of an incentive award to Plaintiff as Class Representative shall be substantially in the form attached as Exhibit D to this Agreement.

**B.    The Fee Award.** Defendant will not object to or otherwise challenge, directly or indirectly, a Fee Award to Class Counsel, subject to Court approval, of up

to Three Hundred and Eighteen Thousand Dollars ($318,000.00), which shall include all attorneys' fees and reimbursement of expenses associated with the Action. Class Counsel has, in turn, agreed to seek no more than this amount from the Court as attorneys' fees and reimbursement of expenses. Defendant shall pay (by wire) to Class Counsel the Fee Award approved by the Court by the earlier of (a) the date fourteen (14) days after the entry of the Judgment if no objections to the settlement have been filed or any objections that have been filed have otherwise been withdrawn prior to the entry of the Judgment, or (b) the date fourteen (14) days after the Effective Date. Notwithstanding anything herein, the Parties agree that the Court's failure to approve, in whole or in part, the Fee Award to Class Counsel shall not prevent the Agreement from becoming effective, nor shall it be grounds for termination. The Court's Order approving the payment of a Fee Award to Class Counsel shall be substantially in the form attached as Exhibit D to this Agreement.

## XII.  **JUDGMENT**

This Agreement is subject to and conditioned upon the issuance by the Court of the Judgment, which will grant final approval of this Agreement and among other things shall:

1.      Dismiss the Action with prejudice and without costs, except as contemplated by this Agreement;

2.      Decree that neither the Judgment nor this Agreement constitutes an admission by Defendant of any liability or wrongdoing whatsoever;

3.      Bar and enjoin all Settlement Class Members from asserting against any Released Party any and all Released Claims that the Settlement Class Member had, has, or may have in the future;

4.      Release each Released Party from any Released Claims that are based upon or related to, directly or indirectly, in whole or in part (a) the allegations, facts, subjects, or issues set forth or raised in the Action, or (b) the

Released Conduct;

5. Determine that this Agreement is entered into in good faith and represents a fair, reasonable and adequate settlement that is in the best interests of the Settlement Class; and

6. Preserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including Defendant and all Settlement Class Members, to administer, supervise, construe and enforce this Agreement in accordance with its terms for the mutual benefit of the Parties, but without affecting the finality of the Judgment.

A copy of the form of the proposed Order of Final Judgment agreed to by the Parties is attached hereto as Exhibit D.

## XIII. **REPRESENTATIONS AND WARRANTIES**

Each signatory to this Agreement represents and warrants (a) that he, she, or it has all requisite power and authority to execute, deliver and perform this Agreement and to consummate the transactions contemplated herein, (b) that the execution, delivery and performance of this Agreement and the consummation by it of the actions contemplated herein have been duly authorized by all necessary corporate action on the part of each signatory, and (c) that this Agreement has been duly and validly executed and delivered by each signatory and constitutes its legal, valid and binding obligation.

## XIV. **NO ADMISSION OF WRONGDOING**

This Agreement, whether or not consummated, and any negotiations, proceedings or agreements relating to this Agreement, and any matters arising in connection with settlement negotiations, proceedings, or agreements:

1. Shall not be admissible in any action or proceeding for any reason, other than an action to enforce the terms hereof;

2. Shall not be described as, construed as, offered or received against

any Released Party as evidence of and/or deemed to be evidence of any presumption, concession, or admission by any Released Party of the truth of any fact alleged by Plaintiff; the validity of any claim that has been or could have been asserted in the Action or in any litigation; the deficiency of any defense that has been or could have been asserted in the Action or in any litigation; or any liability, negligence, fault, or wrongdoing of any Released Party; and

   3.    Shall not be described as or construed against any Released Party, Plaintiff, or any Settlement Class Members as an admission or concession that the consideration to be given hereunder represents the amount which could be or would have been awarded to said Plaintiff or the members of the Settlement Class after trial.

## XV.   MISCELLANEOUS PROVISIONS

   **A.    Entire Agreement.** This Agreement, including all exhibits hereto, shall constitute the entire Agreement among the Parties with regard to the subject matter hereof and shall supersede any previous agreements, representations, communications and understandings among the Parties. This Agreement may not be changed, modified, or amended except in writing signed by all Parties, subject to Court approval. The Parties contemplate that, subject to Court approval or without such approval where legally permissible, the exhibits to this Agreement may be modified by subsequent Agreement of Class Counsel and Defendant's Counsel prior to dissemination of the Settlement Class Notice to the Settlement Class.

   **B.    Governing Law.** This Agreement shall be construed under and governed by the laws of the State of California, applied without regard to laws applicable to choice of law.

   **C.    Execution by Counterparts.** This Agreement may be executed by the Parties in one or more counterparts, each of which shall be deemed an original but

all of which together shall constitute one and the same instrument. Facsimile signatures or signatures sent via e-mail shall be treated as original signatures and shall be binding.

    **D.    Notices.** Any notice, instruction, application for Court approval or application for Court orders sought in connection with this Agreement or other document to be given by any Party to any other Party shall be in writing and delivered personally or sent by registered or certified mail, postage prepaid, if to Defendant to the attention of Defendant's Counsel of record, or if to Plaintiff or the Settlement Class to Class Counsel, or to other recipients as the Court may specify.

    All notices to the Parties or counsel required by this Agreement, except Requests for Exclusion and objections, shall be made in writing and communicated by mail and e-mail to the following addresses:

    If to Plaintiff, the Settlement Class or Class Counsel:

        Jay Edelson
        Benjamin H. Richman
        Chandler R. Givens
        Edelson LLC
        350 North LaSalle Street, Suite 1300
        Chicago, Illinois 60654
        Telephone: (312) 589-6370
        Facsimile: (312) 589-6378
        brichman@edelson.com

    If to Defendant or Defendant's Counsel:

        Hunter R. Eley
        William H. Edmonson
        Doll Amir and Eley LLP
        1888 Century Park East, Suite 1850
        Los Angeles, California 90067
        heley@dolamir.com
        wedmonson@dollamir.com

    **E.    Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the heirs, successors, assigns, executors and legal representatives of each of the Parties hereto.

**F.     Construction.** For the purpose of construing or interpreting this Agreement, the Parties agree that this Agreement is to be deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any Party.

**G.     Severability.** The waiver or breach by one Party of any provision of this Agreement shall not be deemed a waiver or breach of any other provision of this Agreement.

**H.     Integration of Exhibits.** The exhibits to this Agreement are an integral and material part of the settlement and are hereby incorporated and made a part of the Agreement.

**I.     Recitals.** The recitals contained in Section I of this Agreement are incorporated into this Agreement and are made a part hereof.

**J.     Headings.** The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

**K.     Enforcement of the Agreement.** In the event of a breach of provisions VI.A, VI.B, VI.C.2, VI.C.3 or XI of the Agreement, any non-breaching Party shall be entitled to bring an action seeking to enforce those provisions in the United States District Court for the Northern District of California. The prevailing Party in any such action to enforce these provisions of the Agreement shall be entitled to recover their reasonable attorneys' fees and expenses incurred in connection with remedying the breach.

IN WITNESS WHEREOF, each of the Parties hereto has caused this Agreement to be executed on its behalf by its duly authorized counsel of record, all as of the day set forth below.

[SIGNATURES APPEAR ON FOLLOWING PAGE]

**VIRGINIA KULESA**, individually and on behalf of all others similarly situated,

Dated: _July 16, 2013_

By (signature): _Benjamin H. Richman_

Name (printed): _Benjamin H. Richman_

Her (title): _Attorney_

**PC CLEANER, INC.,**

Dated: _____

By (signature): _____

Name (printed): _____

Its (title): _____

1

**VIRGINIA KULESA**, individually and on behalf of all others similarly situated,

2

3   Dated: _____   By (signature): _____

4   Name (printed): _____

5   Her (title): _____

6

7   **PC CLEANER, INC.,**

8   Dated: 7/16/13   By (signature): Casey

9   Name (printed): Cashier Myrick

10   Its (title): CEO

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT**
*Kulesa v. PC Cleaner, Inc.*
**Case No. 8:12-cv-00725-FMO-AN**
**(U.S. District Court for the Central District of California)**

## If you purchased certain Software Products described below
## on or before [date of preliminary approval],
## you may be part of a class action settlement.

IMPORTANT
PLEASE READ THIS NOTICE CAREFULLY
THIS NOTICE RELATES TO THE PENDENCY OF A CLASS ACTION LAWSUIT
AND IF YOU ARE A SETTLEMENT CLASS MEMBER, CONTAINS
IMPORTANT INFORMATION ABOUT YOUR RIGHTS TO MAKE A CLAIM UNDER THE
SETTLEMENT, COMMENT ON THE SETTLEMENT, OR
TO OBJECT TO THE SETTLEMENT

*(A federal court authorized this notice. It is <u>not</u> a solicitation from a lawyer.)*

Your legal rights are affected whether or not you act. Please read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM POSTMARKED OR COMPLETED ONLINE BY [DATE]** | The only way to receive a cash Settlement Benefit. |
| **EXCLUDE YOURSELF FROM THE CLASS BY [DATE]** | Receive no Settlement Benefit. This is the only option that allows you to pursue claims alleged in the Action against the Defendant by filing your own lawsuit at your own expense. |
| **COMMENT BY [DATE]** | Write to the Court about why you do, or do not, like the Settlement. You must remain in the Settlement Class to comment in support of or in opposition to the Settlement. |
| **ATTEND A HEARING ON [DATE]** | Ask to speak to the Court about the fairness of the Settlement. *(The date and time of the final Fairness Hearing is subject to change by Court Order. See Section 10 below.)* |
| **DO NOTHING** | Receive only non-cash Settlement Benefits (free software and prospective relief) and give up your right to sue. |

- These rights and options, and the deadlines to exercise them, are explained in this notice.
- The Court overseeing this case still has to decide whether to approve the settlement. Payments and other Settlement Benefits will be provided if the Court approves the

settlement and after any appeals are resolved.

| **1.   What is this notice and why should I read it?** |
|---|

This notice is to inform you of the settlement of a class action lawsuit in the case captioned *Kulesa v. PC Cleaner, Inc.*, Case No. 8:12-cv-00725-FMO-AN (the "Action"), brought on behalf of the Settlement Class, and pending in the United States District Court for the Central District of California. You need not live in California to get a benefit under the settlement, but you must live in the United States and its territories. The Court has granted preliminary approval of the settlement and has set a final hearing to take place on [date] at [time] at the United States Courthouse, located at 312 North Spring Street, Los Angeles, California 90012, Courtroom 22, 5th Floor, to determine if the settlement is fair, reasonable and adequate, and to consider the request by Class Counsel for attorneys' fees, expenses, and an incentive award for the Class Representative. This notice describes the settlement. Please read this notice carefully to determine whether you wish to participate in the settlement. Your rights and options—**and the deadlines to exercise them**—are explained in this notice. Your legal rights are affected regardless of whether you act.

| **2.   What is a class action lawsuit and what is this lawsuit about?** |
|---|

A class action is a lawsuit in which one or more plaintiffs—in this case, Plaintiff Virginia Kulesa ("Plaintiff")—sue on behalf of themselves and other people who allegedly have similar claims. Here, Plaintiff filed a class action complaint against Defendant PC Cleaner, Inc. ("PC Cleaner" or "PCI") in the Central District of California on behalf of people who purchased certain of Defendant's Software Products—PC Cleaner Pro 2011, PC Cleaner Pro 2012, and PC Cleaner Pro 2013—alleging that the Software Products did not perform certain functions as advertised. A more complete description of the allegations is set forth in the Third Amended Complaint, which is available on the Settlement Website at [URL].

Although PCI denies Plaintiff's claims of wrongdoing, the Parties have agreed to settle all claims against PCI by entering into a written settlement agreement entitled "Stipulation of Class Action Settlement" (the "Agreement"). The individuals on whose behalf the settlement has been made are called "Settlement Class Members." The individuals who make up the Settlement Class (i.e., the Settlement Class Members) are described in Section 4 below.

The Agreement has already been preliminarily approved by the Court. Nevertheless, because the settlement of a class action determines the rights of all members of the proposed class, the Court has ordered this notice to be disseminated to the Settlement Class and is required to hold a Fairness Hearing to determine whether final approval may be granted to the settlement, before it can take effect.

The Court has conditionally certified the Settlement Class for settlement purposes, so that Settlement Class Members can be given this notice and the opportunity to exclude themselves from the Settlement Class, voice their support or opposition to the Settlement, and explain how

those who do not exclude themselves from the Settlement Class may submit a Claim Form to get the monetary benefit offered by the settlement. If the settlement is not granted final approval by the Court, or the Parties terminate it, the settlement will be void, and the lawsuit will continue as if there had been no settlement and no certification of the Settlement Class.

## 3.   Why is there a settlement?

The Court has not decided in favor of either side in the case. PCI denies all allegations of wrongdoing or liability against it and asserts that its conduct was lawful. PCI is settling to avoid the expense, inconvenience, and inherent risk and disruption of litigation. Plaintiff and her attorneys believe that the settlement is in the best interests of the Settlement Class because it provides an appropriate recovery for Settlement Class Members now while avoiding the risk, expense, and delay of pursuing the case through trial and any appeals.

## 4.   Who is included in the Settlement?

The Settlement Class includes all individuals and entities residing in the United States and its territories that, on or before [date of preliminarily approval], purchased any and all versions of the following software: PC Cleaner Pro 2011, PC Cleaner Pro 2012 and PC Cleaner Pro 2013.

## 5.   What does the Settlement provide?

    **A.**    **Monetary Relief and Free Software.**

        **i.**    **Payments.**  PCI has agreed to make a one-time payment of ten dollars ($10.00) to each Settlement Class Member who submits a valid Claim Form in accordance with the procedure below if they have bought Software Product(s) and have not already received a full refund for them. In addition, Defendant has agreed to pay Class Counsel's attorneys' fees and costs not to exceed $318,000.00, an incentive award to the Class Representative totaling $2,000.00, and the full administrative costs of the settlement.

If you are a member of the Settlement Class (defined in Section No. 4 above), and you choose to stay in the Settlement Class, you can submit a Claim Form to receive a check payment.

        **ii.**    **Antivirus Software.**  Each Settlement Class Member shall also receive three (3) months of free access to PCI's proprietary antivirus software known as PC Antivirus Pro 2013, regardless of whether they submit a Claim Form or have already received a full refund of the money paid to purchase a Software Product. Separate instructions regarding how to access the free software are included in the notice e-mail sent to Settlement Class Members.

    **iii.**    **Process.**  To be eligible for a payment under the settlement, a Settlement Class Member must affirm in the Claim Form: (a) that he, she or it purchased one or more of the Software Products, and (b) that he, she or it did not previously receive a full refund of all monies paid for the Software Product(s).

You can download a Claim Form from the Settlement Website by going to [URL] and following the instructions provided there. You can also obtain a Claim Form by writing to the Settlement Administrator at [address] or calling toll-free [phone number]. Your Claim Form must be postmarked or electronically submitted by [date].

    **B.**    **Prospective Relief.**  As part of the Settlement, PCI has agreed that, as soon as practicable, but no later than ninety (90) days from the Effective Date of the Agreement, it will modify the current versions of the respective Software Products to: (a) Eliminate usage of the term "Damage Level" when referring to the harm posed by items detected during and as a result of the software's diagnostics scan, and (b) include accurate in-software "hoverbox" (i.e., a dialog box displayed when the user rolls over an icon with their mouse) descriptions proximate to the software's graphical representations about the "Scan Items" categories and the overall Performance and Security gauge. These "hoverboxes" shall describe the path to in-software links that direct the user to documentation contained on PC Cleaner's website that explains the Software Products' concern levels for the types of items detected through the software's scans.

## 6. Who represents the Settlement Class?

    **A.**    **Class Representative.**  For purposes of the settlement, the Court has appointed Plaintiff Virginia Kulesa to serve as the Class Representative.

    **B.**    **Settlement Class Counsel.**  The Court has approved the appointment of Jay Edelson, Benjamin H. Richman and Chandler R. Givens of Edelson LLC as Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

From the beginning of the case in May 2012 to the present, Class Counsel have not received any payment for their services in prosecuting the case or obtaining the settlement, nor have they been reimbursed for any out-of-pocket expenses they have incurred. Class Counsel will apply to the Court for an award of attorneys' fees and actual expenses (including their court costs) in a total amount not to exceed $318,000.00. The Defendant has agreed not to oppose Class Counsel's application for an award of attorneys' fees and reimbursable expenses up to that amount. If the Court approves the attorneys' fee application, the award will be paid by PCI. The Settlement Class Members will not have to pay anything toward the fees or expenses of Class Counsel. Class Counsel will seek final approval of the settlement on behalf of all Settlement Class Members. You may hire your own lawyer to represent you in this case if you wish, but it will be at your own expense.

| **7.   How can I exclude myself from the Settlement Class?** |
| --- |

You can get out of the Settlement Class by "excluding" yourself. If you exclude yourself, you won't be able to submit a Claim Form, and you won't be allowed to claim any of the relief offered by the settlement. If you exclude yourself from the Settlement Class, you can pursue whatever legal rights you may have in any separate proceeding if you choose to do so, but you will have to do so at your own expense.

To exclude yourself from the Settlement Class, you must send a letter saying that you want to be excluded from the Settlement Class in *Kulesa v. PC Cleaner, Inc.* Your Request for Exclusion must include your name, address and telephone number, identify the email address you believe was used to purchase, register or activate the Software Products you purchased, and be physically signed with a statement to the effect that: "I/We hereby request to be excluded from the proposed Settlement Class in *Kulesa v. PC Cleaner, Inc.*" **Your Request for Exclusion must be postmarked no later than [date], and sent to the Settlement Administrator at the following address: [insert address].**

A Request for Exclusion that does not include all of the above information, that is sent to an address other than the one listed above, or that is not received on time, will not be valid and the person(s) asking to be excluded will be considered a member of the Settlement Class, and will be bound as a Settlement Class Member.

**If you elect to exclude yourself, you will (a) not have any rights as a member of the Settlement Class pursuant to the Agreement, (b) not be able to receive any Settlement Benefit as provided in the Agreement, (c) not be bound by any further orders or judgments in this case, and (d) not be entitled to object to any aspect of the Agreement. If you proceed on an individual basis, you might receive more, or less, of a benefit than you would otherwise receive under the Agreement, or no benefit at all.**

| **8.   How can I tell the Court what I think about the settlement?** |
| --- |

**If you do not exclude yourself from the Settlement Class, you or your attorney can comment in support of or in opposition to the settlement and have the right to appear before the Court to do so**. Your objection to or comment upon the settlement must be submitted in writing by [date] and **must be sent to the Court and the attorneys for the Parties at the addresses below:**

| Clerk of the Court | Settlement Class Counsel | Defendant's Counsel |
|---|---|---|
| Clerk of the Court | Jay Edelson | Hunter R. Eley |
| U.S. Dist. Ct.. C.D. Cal. | Benjamin H. Richman | William H. Edmonson |
| 312 North Spring Street | Chandler R. Givens | Doll Amir and Eley LLP |
| Los Angeles, CA 90012 | Edelson LLC | 1888 Century Park East, Suite 1850 |
| | 350 N. LaSalle, Suite 1300 | Los Angeles, California 90067 |
| | Chicago, Illinois 60654 | |

The objection or comment must be in writing and include the case name *Kulesa v. PC Cleaner, Inc.*, Case No. 8:12-cv-00725-FMO-AN, and: (a) the Settlement Class Member's full name and current address; (b) the email address the Settlement Class Member believes was used to purchase, register or activate the Software Product(s) purchased by the Settlement Class Member; (c) a signed declaration that he or she believes himself or herself to be a member of the Settlement Class; (d) the specific grounds for the objection; (e) all documents or writings that the Settlement Class Member desires the Court to consider; and (f) a notice of intention to appear at the Fairness Hearing (if any). The Court will consider all properly filed comments from Settlement Class Members.

If you do not submit a written comment on the settlement or the application of Class Counsel for an incentive award and attorneys' fees and expenses in accordance with the deadline and procedure set forth above, and you are not granted relief by the Court, you will waive your right to be heard at the Fairness Hearing.

If you do not object as described in this notice, and you do not exclude yourself from the Settlement Class, you will be deemed to have consented to the Court's certification of, and jurisdiction over, the Settlement Class, and, if the settlement is granted final approval, to have released the Released Claims (defined in the Agreement, available at [URL]).

## 9. What is the effect of final approval of the settlement?

If the Court grants final approval to the settlement, the Court will enter a final order and judgment and dismiss the case as to PCI. Claim Forms and payments under the settlement will then be processed, claims payments will be distributed, and access to the free antivirus software will be distributed. The release by Settlement Class Members will also take effect. All members of the Settlement Class will release, acquit and forever discharge PCI and each Released Party from any and all Released Claims (as defined in the Agreement). Please refer to Section V of the Agreement for a full description of the claims and persons that will be released upon final approval of the settlement.

Whether you consider the settlement favorable or unfavorable, any and all members of the Settlement Class who do not exclude themselves from the Settlement Class will not be permitted to continue to assert Released Claims in any other litigation against PCI or any persons or entities covered by the Release. You can obtain a copy of the Agreement from the Clerk of the Court, online at [Settlement Website URL], or by writing to the Settlement Administrator at

[address]. If you do not wish to be a Settlement Class Member, you must exclude yourself from the Settlement Class (see No. 7, above).

If the settlement is not approved, the case will proceed as if no settlement had been attempted or reached. There can be no assurance that if the settlement is not approved and the case resumes, the Settlement Class will recover more than is provided for under the Agreement, or will recover anything at all.

| 10. When and where will the Court hold a hearing on the fairness of the settlement? |
|---|

A Fairness Hearing has been set for [date] at [time], before The Honorable Fernando M. Olguin at the United States Courthouse for the Central District of California, located at 312 North Spring Street Los Angeles, California 90012, in Courtroom 22, 5th Floor. At the Fairness Hearing, the Court will hear any comments, objections, and arguments concerning the fairness of the proposed settlement, including the amount requested by Class Counsel for attorneys' fees and expenses, and an incentive award to the Class Representative. You do not need to attend this hearing. You also do not need to attend to have a comment or objection considered by the Court.

**Note**:  The date and time of the Fairness Hearing are subject to change by Court Order.

| 11. Do I have to come to the Fairness Hearing? May I speak at the hearing? |
|---|

You do not need to attend the Fairness Hearing to remain a Settlement Class Member or submit a Claim Form. You or your own lawyer may attend the hearing if you wish, at your own expense.

If you do not exclude yourself from the Settlement Class, you may ask the Court for permission to speak at the hearing concerning the proposed settlement or the application of Class Counsel for attorneys' fees and expenses, or an incentive award to Plaintiff as Class Representative, by following the instructions in No. 8 above.

| 12. How do I receive the Settlement Benefits? |
|---|

If you do not exclude yourself from the Settlement Class, and would like to receive the monetary benefit provided by the settlement, you must submit a timely and valid Claim Form as set forth in No. 5 above. **Claim Forms must be submitted online or by mail postmarked by [date].** You can submit an electronic Claim Form online at [URL], or obtain a copy of the Claim Form by downloading it from [URL], by writing to the Settlement Administrator at [address], or calling toll-free [phone number].

| 13. What happens if I do nothing at all? |
|---|

If you do nothing, you will receive no payment under the settlement, but you will receive three

(3) months of free access to PC Antivirus Pro 2013, and potentially benefit from the prospective relief secured under the Settlement. You will also still be part of the Settlement Class and subject to the Release described in Section V of the Agreement. This means you will not be permitted to continue to assert Released Claims in any other case against PCI or other persons and entities covered by the Release. Please refer to Section V of the Agreement for a full description of the claims and persons who will be released upon final approval of the settlement.

## 14. Where can I get additional information?

This notice provides only a summary of the matters relating to the settlement. For more detailed information, you may wish to review the Agreement. You can view the Agreement and get more information at [URL]. You can also get more information by writing to the Settlement Administrator at [address] or calling toll-free [number]. The Agreement and all other pleadings and papers filed in the case are also available for inspection and copying during regular business hours at the office of the Clerk of the United States District Court for the Central District of California, at the United States Courthouse, 312 North Spring Street Los Angeles, California 90012.

If you would like additional information, you can also write to Class Counsel at the address listed in No. 8 above.

PLEASE DO NOT CONTACT THE COURT, THE JUDGE, OR THE DEFENDANT WITH QUESTIONS ABOUT THE SETTLEMENT.

# Exhibit B

*Kulesa v. PC Cleaner, Inc.,* **Case No. 8:12-cv-00725-FMO-AN (C.D. Cal.)**
**CLAIM FORM**

**NOTE:  If you are a Settlement Class Member and believe you are entitled to receive a cash payment for the Software Product(s) you purchased from PC Cleaner, Inc., you must complete this Claim Form pursuant to the terms of the Settlement Agreement. For your claim to be considered valid, you must provide the information requested below, including your signature (or electronic verification). Your claim form <u>must be postmarked or completed online on or before</u> [date].**

**Instructions for completing this form are found below**. Please fill out the information below completely. If the information you provide is insufficient to determine whether you are a Settlement Class Member, your claim may be rejected.

Name: _____

Address: _____

Email Address (to which the Settlement Class Notice was sent): _____

Phone Number (Optional. The Settlement Administrator may call you for additional information to process your claim, if necessary): _____

Please note that the term "Software Products" refers to PC Cleaner Pro 2011, PC Cleaner Pro 2012, and PC Cleaner Pro 2013.

These products and services are described in more detail on the Settlement Website at [URL].

**PRODUCT PURCHASE INFORMATION:**

    1.    I, _____ (your name), submit this declaration.

    2.    I paid for the following Software Products (name of Software Products): _____
_____
_____

    3.    Have you received a full refund of the money you paid for the Software Product(s) listed in No. 2 above? (Yes <u>or</u> No): _____
_____

***If you have already received a full refund of the money you paid for the Software Product(s) listed above, you are not entitled to any additional payment under this Settlement.***

The Parties have the right to audit all claims for accuracy, veracity and compliance with the terms and conditions of the Settlement Agreement.

I declare under penalty of perjury under the laws of the United States that all of the foregoing information I have provided is true and correct.

Dated: _____, 20____.        _____

**INSTRUCTIONS FOR COMPLETION OF THIS CLAIM FORM:**

1.      Please print or type all information legibly and carefully. If and when the settlement receives final approval from the Court and any appeals of such determination have been resolved in favor of approval of the settlement, a check will be sent to all Settlement Class Members whose names appear on a valid Claim Form. Depending upon response from the Settlement Class, a reminder e-mail with instructions about how to obtain three (3) months of free access to PCI's PC Antivirus Pro 2013 software may also be sent to all non-responding Settlement Class Members—an activation code with instructions about how to access the free software was included in the Notice e-mail already sent to Settlement Class Members.

2.      You may submit a claim only if you paid for one or more of the Software Products listed above.

3.      If your claim is valid and timely, and you have not already received a full refund of the money you paid for the Software Product(s) purchased, you may recover a one-time payment of $10.00.

# Exhibit C

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VIRGINIA KULESA, individually and on behalf of all others similarly situated,<br><br>     *Plaintiff,*<br><br>*v.*<br><br>PC CLEANER, INC., a California corporation,<br><br>     *Defendant.* | Case No. 8:12-cv-00725-FMO-AN<br><br>**[PROPOSED] PRELIMINARY APPROVAL ORDER**<br><br>Judge: Honorable Fernando M. Olguin<br>Action Filed: May 4, 2012 |

1        This matter having come before the Court on Plaintiff's motion for

2 preliminary approval (the "Motion for Preliminary Approval") of a proposed class

3 action settlement of the above-captioned action (the "Action") between Plaintiff

4 Virginia Kulesa and Defendant PC Cleaner, Inc. ("Defendant"), pursuant to the

5 Parties' Stipulation of Class Action Settlement (the "Agreement"), and having duly

6 considered the papers and arguments of counsel, the Court hereby finds and orders

7 as follows:

8        1.     Unless defined herein, all defined terms in this Order shall have the

9 respective meanings set forth in the Agreement.

10        2.     The Court has conducted a preliminary evaluation of the settlement set

11 forth in the Agreement for fairness, adequacy, and reasonableness. Based on this

12 preliminary evaluation, the Court finds that (a) there is cause to believe that the

13 settlement is fair, reasonable, and adequate, and within the range of possible

14 approval, (b) the settlement has been negotiated in good faith at arms-length

15 between experienced attorneys familiar with the legal and factual issues of this case,

16 and (c) the notice of the material terms of the settlement to Settlement Class

17 Members for their consideration and reaction is warranted. Therefore, the Court

18 grants preliminary approval of the settlement.

19        3.     Pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), and for

20 settlement purposes only, the Court conditionally certifies the proposed Settlement

21 Class, consisting of:

22           All individuals and entities residing in the United States and its

23           territories that, on or before the date of this Order, purchased any and
          all versions of the following software: PC Cleaner Pro 2011, PC

24           Cleaner Pro 2012 and PC Cleaner Pro 2013.

25        4.     For settlement purposes only, the Court hereby preliminarily approves

26 the appointment of Jay Edelson, Benjamin H. Richman, and Chandler R. Givens of

27 Edelson LLC, as Class Counsel.

28

5.     On [date] at [time] or at such other date and time later set by Court Order, this Court will hold a Fairness Hearing on the fairness, adequacy, and reasonableness of the settlement and to determine whether (a) final approval of the settlement should be granted, and (b) Class Counsel's application for attorneys' fees and expenses, and an incentive award to Plaintiff, should be granted, and in what amounts. No later than the date fourteen (14) days prior to the date for Settlement Class Members to comment in support of or in opposition to the settlement (as set forth below), Plaintiff shall file her papers in support of Class Counsel's application for attorneys' fees and expenses, and an incentive award to her as Class Representative. No later than the date twenty-eight (28) days prior to the Fairness Hearing, Plaintiff must file her papers in support of final approval of the settlement and in response to any objections. Defendant may (but is not required to) file papers in support of final approval of the settlement, so long as it does so no later than the date twenty-eight (28) days prior to the Fairness Hearing.

6.     Pursuant to the Agreement, Epiq Systems is hereby appointed as Settlement Administrator and shall be required to perform all the duties of the Settlement Administrator as set forth in the Agreement and this Order. To aid in the efficient submission of Claim Forms, the Agreement provides for Settlement Class Members to submit Claim Forms online without the need for a manual signature. However, by submitting an online Claim Form, such Settlement Class Members shall be bound to the same extent as if they had used a handwritten signature.

7.     The Court approves the proposed Notice Plan for giving direct notice to the Settlement Class by e-mail and establishing a Settlement Website, as more fully described in the Agreement. The Notice Plan, in form, method, and content, complies with the requirements of Rule 23 and due process, and constitutes the best notice practicable under the circumstances. The Court hereby directs the Parties and

the Settlement Administrator to complete all aspects of the Notice Plan no later than twenty-eight (28) days following the entry of this Preliminary Approval Order and in accordance with the terms of the Agreement.

8.      All persons who meet the definition of the Settlement Class and who wish to exclude themselves from the Settlement Class must submit their Request for Exclusion in writing, identifying the case name *Kulesa v. PC Cleaner, Inc.*, and state the name, address and telephone number of the Settlement Class Member(s) seeking exclusion as well as the email address the Settlement Class Member(s) believes was used to purchase, register or activate the Software Product(s) purchased. Each Request for Exclusion must also be physically signed with a statement to the effect that: "I/We hereby request to be excluded from the proposed Settlement Class in *Kulesa v. PC Cleaner, Inc.*" The Request for Exclusion must be mailed to the Settlement Administrator at the address provided in the notice and postmarked no later than sixty (60) days following the date that the Settlement Class Notice is first disseminated to the Settlement Class. A Request for Exclusion that does not include all of the foregoing information, that is sent to an address other than the one designated in the notice, or that is not postmarked within the time specified, shall be invalid and any person(s) serving such a request shall be deemed a member of the Settlement Class, and shall be bound as a Settlement Class Member by the settlement. The Settlement Administrator shall promptly forward copies of all Requests for Exclusion to Class Counsel and Defendant's Counsel.

9.      Any member of the Settlement Class may comment in support of or in opposition to the settlement; *provided, however*, that all comments and objections must be filed with the Court and received by Class Counsel and Defendant's Counsel prior to the Fairness Hearing. A Settlement Class Member who objects to the settlement need not appear at the Fairness Hearing for his, her or its comment to

be considered by the Court; however, all papers, briefs, pleadings, or other documents that any objector would like the Court to consider ("Objections") must be filed with the Court, with a copy postmarked to Class Counsel and Defendant's Counsel no later than sixty (60) days following the date that the Settlement Class Notice is first disseminated to the Settlement Class. All Objections shall include the caption *Kulesa v. PC Cleaner, Inc.*, No. 8:12-cv-00725-FMO-AN, and provide: (a) the Settlement Class Member's full name and current address; (b) the email address the Settlement Class Member believes was used to purchase, register or activate the Software Product(s) purchased, (c) a signed declaration that he, she or it believes himself, herself or itself to be a member of the Settlement Class; (d) the specific grounds for the objection; (e) all documents or writings that such Settlement Class Member desires the Court to consider; and (f) a notice of intention to appear at the Fairness Hearing (if any).

10.     Any Settlement Class Member who fails to object in the manner prescribed herein shall be deemed to have waived his, her or its objections and forever be barred from making any such objections in this Action or in any other action or proceeding. While the declaration described in subparagraph 9(c) is *prima facie* evidence that the objector is a member of the Settlement Class, Plaintiff or Defendant or both may take discovery regarding the matter, subject to Court approval. If a Settlement Class Member does not submit a written comment on the proposed settlement or the application of Class Counsel for an incentive award and attorneys' fees and expenses in accordance with the deadline and procedure set forth in the notice, and the Settlement Class Member is not granted relief by the Court, the Settlement Class Member will be deemed to have waived his, her or its right to be heard at the Fairness Hearing.

11.     The Agreement and the proceedings and statements made pursuant to

the Agreement or papers filed relating to the approval of the Agreement, and this Order, are not and shall not in any event be construed as, offered in evidence as, received in evidence as, and/or deemed to be evidence of a presumption, concession, or an admission of any kind by any of the Parties of (a) the truth of any fact alleged or the validity of any claim or defense that has been, could have been, or in the future might be asserted in the Action, any other litigation, court of law or equity, proceeding, arbitration, tribunal, investigation, government action, administrative proceeding, or other forum, or (b) any liability, responsibility, fault, wrongdoing, or otherwise of the Parties. Defendant has denied and continues to deny the claims asserted by Plaintiff. Nothing contained herein shall be construed to prevent the Parties from offering the Agreement into evidence for the purposes of enforcement of the Agreement.

12. The certification of the Settlement Class shall be binding only with respect to the settlement of the Action. In the event that the Agreement is terminated pursuant to its terms or is not approved in all material respects by this Court, or such approval is reversed, vacated, or modified in any material respect by this or any other court, the certification of the Settlement Class shall be deemed vacated, the Action shall proceed as if the Settlement Class had never been certified (including Defendant's right to oppose any subsequent motion for class certification), and no reference to the Settlement Class, the Agreement, or any documents, communications, or negotiations related in any way thereto shall be made for any purpose.

**IT IS SO ORDERED** this _____ day of _____, 2013.

_____
HONORABLE FERNANDO M. OLGUIN
UNITED STATES DISTRICT JUDGE

# Exhibit D

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRGINIA KULESA, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>PC CLEANER, INC., a California corporation,<br><br>*Defendant*. | Case No. 8:12-cv-00725-FMO-AN<br><br>**[PROPOSED] FINAL JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE**<br><br>Judge: Honorable Fernando M. Olguin<br>Action Filed: May 4, 2012 |

The Court, having considered Plaintiff's Motion for Final Approval (the "Motion for Final Approval") of a proposed class action settlement of the above-captioned action (the "Action") between Plaintiff Virginia Kulesa and Defendant PC Cleaner, Inc. ("Defendant"), pursuant to the Parties' Stipulation of Class Action Settlement (the "Agreement"), and having duly considered the papers and arguments of counsel, Plaintiff's Motion is hereby GRANTED and it is hereby ORDERED, ADJUDGED, and DECREED THAT:

1.     Unless defined herein, all capitalized terms in this Order shall have the respective meanings ascribed to them in the Agreement.

2.     This Court has jurisdiction over the subject matter of the Action and over all Parties to the Action, including all Settlement Class Members.

3.     On [date], this Court preliminarily approved the Settlement and certified, for settlement purposes, the Settlement Class consisting of:

> All individuals and entities residing in the United States and its territories that, on or before [date of preliminary approval], purchased any and all versions of the following software: PC Cleaner Pro 2011, PC Cleaner Pro 2012 and PC Cleaner Pro 2013.

4.     The persons listed on Addendum A hereto are found to have validly excluded themselves from the Settlement Class in accordance with the provisions of the Preliminary Approval Order.

5.     Notice to the Settlement Class has been provided in accordance with the Court's Preliminary Approval Order, and the substance of and dissemination program for the notice, which included direct e-mail notice and the creation of a Settlement Website, fully complied with the requirements of Federal Rule of Civil Procedure 23 and due process, and constituted the best notice practicable under the circumstances.

6.     The Court finds that Defendant properly and timely notified the appropriate state and federal officials of the Agreement, pursuant to the Class Action

1    Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715.

2        7.    The Court now affirms certification of the Settlement Class and gives

3    final approval to the settlement and finds that the Settlement Agreement is fair,

4    reasonable, adequate, and in the best interests of the Settlement Class. The complex

5    legal and factual posture of this case, and the fact that the Settlement Agreement is

6    the result of arms' length negotiations presided over by a neutral mediator support

7    this finding. The Settlement consideration provided under the Agreement constitutes

8    fair value given in exchange for the release of the Released Claims against the

9    Released Parties. The Court finds that the consideration to be paid to members of the

10   Settlement Class is reasonable, considering the facts and circumstances of the claims

11   and defenses asserted in the Action, and the potential risks and likelihood of success

12   of alternatively pursuing trial on the merits.

13       8.    The Class Representative and Class Counsel adequately represented the

14   Settlement Class for purposes of entering into and implementing the Settlement

15   Agreement. The preliminary appointment of Jay Edelson, Benjamin H. Richman and

16   Chandler R. Givens as Class Counsel is hereby confirmed.

17       9.    Accordingly, the Settlement Agreement is hereby finally approved in

18   all respects, and the Parties are hereby directed to perform its terms. Defendant is

19   hereby ordered to implement and comply with the settlement Agreement regarding

20   the prospective relief made available to the Settlement Class Members.

21       10.   Additionally, Rule 23 of the Federal Rules of Civil Procedure provides

22   that, "[i]n a certified class action, the court may award reasonable attorney's fees and

23   nontaxable costs that are authorized by law or by the parties' agreement." Fed. R.

24   Civ. P. 23(h).

25       11.   In awarding attorneys' fees and costs under Rule 23(h), the Court may

26   hold a hearing and must make findings of fact and state its legal conclusions. *See*

27

28

Fed. R. Civ. P. 23(h)(3).

12.     The Court may apply the lodestar method to determine a reasonable attorneys' fee award by multiplying the number of hours reasonably expended by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The fee amount calculated under the lodestar method is presumptively reasonable. *Id*. Counsel's total lodestar amount may include work performed by litigation support staff as well. *See Mogck v. Unum Life Ins. Co. of Am.*, 289 F. Supp. 2d 1181, 1190-91, 1194 (S.D. Cal. 2003) (granting attorneys' fees under lodestar/multiplier approach for attorney, paralegal and secretarial staff hours) (citing *D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1387 (9th Cir. 1990)).

13.     In deciding an appropriate attorneys' fee award under the lodestar method, courts should consider a number of factors, including *inter alia*, the time and labor required of counsel, the novelty and complexity of the litigation, the skill and experience of counsel, the contingent nature of the case, and the results obtained. *See Blum v. Stenson*, 465 U.S. 866, 898-900 (1984); *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

14.     Here, Class Counsel has expended substantial time, effort and resources in their prosecution of the claims at issue in this Action on behalf of Plaintiff and the Settlement Class, including more than [xx] hours in reported attorney and staff time. As such, Plaintiff is entitled to reasonable attorneys' fees in the requested amount of $318,000.00, which amount includes Plaintiff's reasonable expenses incurred by Class Counsel in the Action. Plaintiff's request for a Fee Award is reasonable under the lodestar method, given that: (a) the number of hours that Class Counsel devoted to the Action is reasonable; (b) Class Counsel's hourly rates are reasonable and have previously been approved by other courts throughout the country; and (c) Plaintiff's request for a Fee Award is reasonable considering the time and labor required of

1   Class Counsel, the risks that they would recover nothing, the novelty and complexity

2   of the claims at issue, Class Counsel's skill and experience, and the results obtained

3   through the settlement.

4          15.     Accordingly, the Court awards to Class Counsel $318,000.00, which

5   shall include all attorneys' fees and reimbursement of expenses associated with the

6   Action (the "Fee Award").

7          16.     Further, incentive awards are also typical in class action cases.

8   *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). Although the

9   amounts of incentive awards granted by courts vary, it is not uncommon for a court

10  to award a class representative several thousand dollars. *See, e.g., In re Mego Fin.*

11  *Corp. Sec. Litig.*, 213 F.3d 454, 457, 463 (9th Cir. 2000) (approving incentive award

12  of $5,000); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 253 (D.N.J. 2009)

13  (approving incentive award of $10,000).

14         17.     Here, Plaintiff initiated the Action, acted to protect the interests of the

15  Settlement Class, and assisted Class Counsel, which efforts have resulted in an

16  Agreement entered into in good faith that provides a fair, reasonable, adequate and

17  certain result for the Settlement Class.

18         18.     Accordingly, the Court awards to Plaintiff $2,000.00, as an incentive

19  award for her time and effort serving as the Class Representative in the Action (the

20  "Incentive Award").

21         19.     Defendant shall pay the Fee Award and Incentive Award pursuant to

22  and in the manner provided by the terms of the settlement Agreement.

23         20.     Other than as set forth in this Order, the Parties shall bear their own

24  costs and attorneys' fees.

25         21.     Subject to the terms and conditions of the Settlement Agreement, the

26  Court hereby dismisses the action on the merits and with prejudice.

27

28

22.     The Parties and Settlement Class Members are bound by the terms and conditions of the Agreement. Upon the Effective Date of this settlement, Plaintiff and each and every Settlement Class Member shall be deemed to have released, acquitted and forever discharged Defendant and each of the Released Parties from any and all Released Claims.

23.     Upon the Effective Date, the above release of claims and the Settlement Agreement will be binding on, and have res judicata and preclusive effect in all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiff and all other Settlement Class Members, Releasing Parties, and their heirs, executors, and administrators, successors, and assigns. All Settlement Class Members who have not been properly excluded from the Settlement Class shall be permanently barred and enjoined from initiating, asserting and/or prosecuting any Released Claim(s) against the Released Parties in any court, arbitration, tribunal, forum or proceeding.

24.     Without affecting the finality of this judgment, the Court retains exclusive jurisdiction of the settlement, including without limitation, issues concerning its administration and consummation. The Court also retains exclusive jurisdiction over the Parties to this Agreement, including Defendant and all Settlement Class Members regarding the Agreement and this Final Judgment Order. Defendant, Plaintiff, and Settlement Class Members are hereby deemed to have submitted irrevocably to the exclusive jurisdiction of this Court for any suit, action, proceeding, or dispute arising out of or relating to the Released Claims, this Order, and the Agreement, including, but not limited to, the applicability of the Released Claims, the Agreement, or this Order. Without limiting the generality of the foregoing, any dispute concerning the Agreement, including, but not limited to, any suit, action, arbitration, or other proceeding by a Settlement Class Member in which

the provisions of the Agreement are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, shall constitute a suit, action, or proceeding arising out of or relating to this Order. Solely for purposes of such suit, action, or proceeding, to the fullest extent possible under applicable law, the Parties hereto and all Settlement Class Members are hereby deemed to have irrevocably waived and agreed not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of this Court, or that this Court is, in any way, an improper venue or an inconvenient forum.

25.    The Agreement and the proceedings and statements made pursuant to the Agreement or papers filed relating to the Agreement, and this Order, are not and shall not in any event be construed as, offered in evidence as, received in evidence as, and/or deemed to be evidence of a presumption, concession, or an admission of any kind by any of the Parties of (i) the truth of any fact alleged or the validity of any claim or defense that has been, could have been, or in the future might be asserted in the Action, any other litigation, court of law or equity, proceeding, arbitration, tribunal, investigation, government action, administrative proceeding, or other forum, or (ii) any liability, responsibility, fault, wrongdoing, or otherwise of the Parties. Nothing contained herein shall be construed to prevent a Party from offering the Agreement into evidence for the purposes of enforcement of the Agreement.

26.    The certification of the Settlement Class shall be binding only with respect to the settlement of the Action. In the event that the Agreement is terminated pursuant to its terms or the Court's approval of the settlement is reversed, vacated, or modified in any material respect by this or any other court, the certification of the Settlement Class shall be deemed vacated, the Action shall proceed as if the Settlement Class had never been certified (including Defendant's right to oppose any

subsequent motion for class certification), and no reference to the Settlement Class, the Agreement, or any documents, communications, or negotiations related in any way thereto shall be made for any purpose.

27.   Based upon the Court's finding that there is no just reason for delay of enforcement or appeal of this Order notwithstanding the Court's retention of jurisdiction to oversee implementation and enforcement of the Agreement, the Court directs the Clerk to enter final judgment.


**IT IS SO ORDERED** this _____ day of _____, 2013.


_____
HONORABLE FERNANDO M. OLGUIN
UNITED STATES DISTRICT JUDGE

# Exhibit 2

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRGINIA KULESA, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>PC CLEANER, INC., a California corporation,<br><br>*Defendant*. | Case No. 8:12-cv-00725-FMO-AN<br><br>**ADDENDUM TO STIPULATION OF CLASS ACTION SETTLEMENT**<br><br>Judge: Honorable Fernando M. Olguin |

This Addendum to Stipulation of Class Action Settlement (the "Addendum") is entered into by and among Plaintiff Virginia Kulesa ("Kulesa" or "Plaintiff") for herself individually and on behalf of the Settlement Class and Defendant PC Cleaner, Inc. ("PC Cleaner" or "Defendant') (collectively, the "Parties"). [1] The provisions of this Addendum shall be deemed a part of and shall supersede any conflicting or inconsistent provisions contained in the Agreement. Except as expressly modified by this Addendum, all provisions of the Agreement shall remain unmodified and in full force and effect.

## I. AMENDMENT TO SECTION II OF THE SETTLEMENT AGREEMENT.

The following definitions shall be inserted into Section II of the Agreement (and, if applicable, in place of their original counterparts):

"***Opt-Out Form***" means the form attached hereto as Exhibit E, as approved by the Court. The Opt-Out Form must be completed, and physically signed or verified electronically, by Settlement Class Members who wish to exclude themselves from the Settlement, and shall be available for download from the Settlement Website in electronic format and from the Settlement Administrator in hardcopy form. The Opt-Out Form will require the Settlement Class Member to provide the following information: (a) full name, current address, and telephone number of the member(s) of the Settlement Class seeking exclusion, (b) the email address the Settlement Class Member believes was used to purchase, register or activate the Software Products, (c) an affirmation that the Settlement Class Member wishes to be excluded from the Settlement Class, and (d) a physical or electronic signature. The Opt-Out Form will not require notarization, but will require that the information supplied be true and correct.

"***Released Claims***" means any and all claims or causes of action of every kind and description (including any causes of action in law, claims in equity, complaints, suits or petitions) and any allegations of wrongdoing (including any assertions of liability, debts, legal duties, torts, unfair or deceptive practices, statutory violations, contracts, agreements, obligations, promises, promissory estoppel, detrimental reliance, or unjust enrichment) and any demands for legal, equitable or administrative relief (including any claims for injunction, rescission, reformation, restitution, disgorgement, constructive trust, compensatory damages, consequential damages, penalties, exemplary damages, punitive damages, attorneys' fees, costs, interest, or

---

[1] Except as otherwise specified, defined terms shall have the meanings set forth in the Agreement.

expenses) that the Releasing Parties had or have (including assigned claims and "Unknown Claims" as defined below) that have been or could have been asserted in the Action or in any other action or proceeding before any court, arbitrator(s), tribunal or administrative body (including any state, local or federal regulatory body), in any jurisdiction in the United States, regardless of whether the claims or causes of action are based on federal, state, or local law, statute, ordinance, regulation, contract, common law, or any other source, and regardless of whether they are known or unknown, foreseen or unforeseen, suspected or unsuspected, or fixed or contingent, arising out of, or related or connected in any way with the Released Conduct.

"*Released Conduct*" means any and all direct or indirect acts, omissions, representations, conduct, legal duties, unjust enrichment, trade practices, or obligations that arise out of, or are related or connected in any way with one or more of the following:

(a) the design, use, functionality, operation, and/or performance of any and all versions of PC Cleaner Pro 2011, PC Cleaner Pro 2012, and PC Cleaner Pro 2013;

(b) the marketing and advertising of any and all versions of PC Cleaner Pro 2011, PC Cleaner Pro 2012, and PC Cleaner Pro 2013 as it relates to the design, use, functionality, operation and/or performance of any and all versions of PC Cleaner Pro 2011, PC Cleaner Pro 2012, and PC Cleaner Pro 2013; and

(c) warranties, representations, or omissions relating to the design, use, functionality, operation and/or performance of any and all versions of PC Cleaner Pro 2011, PC Cleaner Pro 2012, and PC Cleaner Pro 2013.

Nothing herein is intended to release any claims any governmental agency or governmental actor has against Defendant (if any).

"*Request for Exclusion*" is the Opt-Out Form submitted by or on behalf of a member of the Settlement Class in which he, she, or it requests to be excluded from the Settlement Class.

## II.  AMENDMENT TO SECTION VIII OF THE SETTLEMENT AGREEMENT.

Section VIII(A) should be stricken and replaced with the following:

**A.    Direct Notice.** Within seven (7) days after Preliminary Approval of this Agreement, including the form and content of the Settlement Class Notice, Defendant shall provide the Settlement Administrator with a list containing the names, last known e-mail addresses, and zip codes in its possession for the potential members of the Settlement Class.  Within twenty-one (21) days after receipt of the Settlement

Class member list from Defendant, the Settlement Administrator shall disseminate notice of the Settlement to the potential members of the Settlement Class via e-mail. The Settlement Class Notice shall be substantially in the form attached as Exhibit A and include an electronic link to the Settlement Website (as identified below). For e-mails that result in a "soft bounce-back" or are otherwise undeliverable, the Settlement Administrator shall re-send the notice e-mail.

As the software at issue was sold and delivered electronically, Defendant ordinarily did not gather address information from purchasers other than zip codes (which were used to verify credit card payments). Accordingly, if any notice e-mails remain undeliverable after a second attempt at electronic transmission, the Settlement Administrator shall attempt to obtain the mailing addresses of the Settlement Class members via reverse lookup (using the purchaser's name, e-mail address, and/or zip code) and, if successful, will disseminate direct Postcard Notice via United States Mail to those Settlement Class members to whom e-mail notice was undeliverable. The Postcard Notice shall be substantially in the form attached as Exhibit F and shall include a hardcopy Claim Form.

## III.  AMENDMENT TO SECTION IX OF THE SETTLEMENT AGREEMENT.

Section IX(A) should be stricken and replaced with the following:

**A.  Right to Exclusion.** Any Settlement Class Member may submit an Opt-Out Form to request exclusion from the Settlement Class at any time during the Opt-Out Period, which shall expire sixty (60) days following the date that the Settlement Class Notice is first disseminated to the potential members of the Settlement Class. Settlement Class Members may submit electronically verified Opt-Out Forms to the Settlement Administrator through the Settlement Website, or may download Opt-Out Forms to be filled out, signed and submitted physically by mail to the Settlement Administrator. To be valid, any Opt-Out Form must be fully and accurately

completed and submitted electronically or postmarked on or before the end of the Opt-Out Period. Any Person who elects to opt out of the Settlement Class shall not (a) be bound by any orders or Judgment entered in this Action, (b) be entitled to relief under this Agreement, (c) gain any rights by virtue of this Agreement, or (d) be entitled to object to any aspect of this Agreement. No Person may opt out of the Settlement Class through "mass" or "class" opt-outs.

## IV.   ADDITION TO THE EXHIBITS OF THE SETTLEMENT AGREEMENT.

The proposed Opt-Out Form attached to this Addendum shall be added to the Settlement Agreement as Exhibit E.

The proposed Postcard Notice attached to this Addendum shall be added to the Settlement Agreement as Exhibit F.

\*                  \*                  \*

IN WITNESS WHEREOF, each of the Parties hereto has caused this Addendum to be executed on its behalf by its duly authorized counsel of record, all as of the day(s) set forth below.

**VIRGINIA KULESA**, individually and on behalf of all others similarly situated,

Dated: 9-26-13

By (signature): _Bonj H. Tal_

Name (printed): _Benjamin H. Richman_

Her (title): _Attorney_

**PC CLEANER, INC.,**

Dated: _____

By (signature): _____

Name (printed): _____

Its (title): _____

1   completed and submitted electronically or postmarked on or before the end of the

2   Opt-Out Period. Any Person who elects to opt out of the Settlement Class shall not (a)

3   be bound by any orders or Judgment entered in this Action, (b) be entitled to relief

4   under this Agreement, (c) gain any rights by virtue of this Agreement, or (d) be

5   entitled to object to any aspect of this Agreement. No Person may opt out of the

6   Settlement Class through "mass" or "class" opt-outs.

7   **IV.   ADDITION TO THE EXHIBITS OF THE SETTLEMENT
         AGREEMENT.**

8
         The proposed Opt-Out Form attached to this Addendum shall be added to the
9
    Settlement Agreement as Exhibit E.
10
         The proposed Postcard Notice attached to this Addendum shall be added to the
11
    Settlement Agreement as Exhibit F.
12
                          *                    *                    *
13
         IN WITNESS WHEREOF, each of the Parties hereto has caused this
14
    Addendum to be executed on its behalf by its duly authorized counsel of record, all as
15
    of the day(s) set forth below.
16

17                                     **VIRGINIA KULESA,** individually and on
                                       behalf of all others similarly situated,

18  Dated: _____           By (signature): _____

19                                     Name (printed): _____

20                                     Her (title): _____

21

22                                     **PC CLEANER, INC.,**

23  Dated: __9/25/13____              By (signature): __Cashs____

24                                     Name (printed): _Cashier My cicks_

25                                     Its (title): __CEO____

26

27

28                                                              C ~

ADDENDUM TO STIPULATION OF            4        CASE NO. 8:12-CV-00725-FMO-AN
CLASS ACTION SETTLEMENT

# Exhibit E

*Kulesa v. PC Cleaner, Inc.*, **Case No. 8:12-cv-00725-FMO-AN (C.D. Cal.)**
**OPT-OUT FORM**

| |
|---|
| **This is NOT a Claim Form. It excludes you from this Class Action Settlement. If you complete this Form, you will not be entitled to the Settlement Benefits.** |

Name: _____

Address: _____

Telephone Number (The Settlement Administrator may call you for additional information to process your opt-out, if necessary): _____

Email Address (to which the Settlement Class Notice was sent): _____

Please note that the term "Software Products" refers to PC Cleaner Pro 2011, PC Cleaner Pro 2012 and PC Cleaner Pro 2013. These products and services are described in more detail on the Settlement Website at [URL].

If you wish to opt out of this class action, please check the box below:

☐ By checking this box, I affirm that I wish to be excluded from the Settlement Class in *Kulesa v. PC Cleaner, Inc.*, Case No. 8:12-cv-00725-FMO-AN (C.D. Cal.).

***By completing and submitting this form, you hereby recognize that you understand that by opting out, you will not be eligible to receive any money that may result from the class action Settlement in this case.***

The consequences of completing and submitting this Form are explained in the Notice available at [URL].

I declare under penalty of perjury under the laws of the United States that all of the foregoing information I have provided is true and correct.

Dated: _____, 20___        _____
                                         Signature

To be valid, you must complete this Form and submit via mail or electronically at [URL] by [date]. If you choose to download and mail this Opt-Out Form, you must send it to the Settlement Administrator in an envelope postmarked **no later than [date]** to the address provided below:

| |
|---|
| *Kulesa Settlement Administrator* **[Street Address] [City, State ZIP]** |

# Exhibit F

**If You Purchased Certain Software Products Described Below on or Before [==date of preliminary approval==], You May Be Part of a Class Action Settlement.**

This is a notice about a proposed class action settlement involving several Software Products known as PC Cleaner Pro 2011, PC Cleaner Pro 2012, and PC Cleaner Pro 2013. The Plaintiff in this case alleges that the Software Products did not perform certain functions as advertised. The Defendant in this case is PC Cleaner, Inc., which denies any wrongdoing.

**Am I included in the Settlement?** You may be included in the Settlement if you purchased any version of PC Cleaner Pro 2011, PC Cleaner Pro 2012, and/or PC Cleaner Pro 2013. More information about the Software Products is available at [==URL==].

**What do I get?** Defendant has agreed to make a one-time payment of $10 to each Settlement Class Member who submits a valid claim. Defendant has also agreed to make certain changes to the Software Products and to provide each Settlement Class Member 3 months of free access to its PC Antivirus Pro software (regardless of whether they submit a claim under the Settlement).

**How do I get a payment?** In order to receive a payment under the Settlement, you must submit a valid Claim Form. You may submit a Claim Form by mail or online at [==URL==]. The deadline to submit a Claim Form is [==date==]. For information about how to obtain a Claim Form, see the section of this notice titled "For more information," below.

**Your other rights.** If you do not want to be legally bound by the Settlement, you must submit an Opt-Out Form by mail or online at [==URL==] by [==date==]. If you stay in the Settlement, you will not be able to sue Defendant for any claim released as part of the Settlement. If you disagree with any part of the Settlement and do not exclude yourself, you may object to the Settlement by [==date==]. The Court will hold a hearing on [==date==] to consider whether to approve the Settlement, approve a request for attorneys' fees and expenses of up to $318,000, and approve a class representative award of $2,000, and to consider a number of other important legal issues that will affect the rights of the members of the Settlement Class. The Court has appointed attorneys to represent the Settlement Class. However, you may hire your own attorney at your own expense.

**For more information**, including a more detailed notice, a Claim Form, an Opt-Out Form, a copy of the Settlement Agreement, and other court documents, please visit the Settlement Website at [==URL==], call [==number==], or write to the Settlement Administrator at [==address==].

# Exhibit 3

1  JAY EDELSON (Admitted *Pro Hac Vice*)
   jedelson@edelson.com
2  RAFEY S. BALABANIAN (Admitted *Pro Hac Vice*)
   rbalabanian@edelson.com
3  BENJAMIN H. RICHMAN (Admitted *Pro Hac Vice*)
   brichman@edelson.com
4  CHANDLER R. GIVENS (Admitted *Pro Hac Vice*)
   cgivens@edelson.com
5  EDELSON LLC
   350 North LaSalle Street, Suite 1300
6  Chicago, Illinois 60654
   Telephone: (312) 589-6370
7  Facsimile: (312) 589-6378

8  SEAN P. REIS (SBN 184044)
   sreis@edelson.com
9  30021 Tomas Street, Suite 300
   Rancho Santa Margarita, California 92688
10 Telephone: (949) 459-2124
   Facsimile: (949) 459-2123
11
   *Attorneys for Plaintiff* VIRGINIA KULESA
12

13              **UNITED STATES DISTRICT COURT**

14          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

15

16 | VIRGINIA KULESA, individually and | Case No. 8:12-cv-00725-FMO-AN |
   | on behalf of all others similarly situated, | |

17 |                     *Plaintiff*, | **DECLARATION OF VIRGINIA KULESA IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

18 |              *v.* | |

19 | PC CLEANER, INC., a California | Judge: Honorable Fernando M. Olguin |
   | corporation, | Action Filed: May 4, 2012 |

20

21 |                     *Defendant*. |

22

23

24

25

26

27

28

---

Pursuant to 28 U.S.C §1746, I hereby declare and state as follows:

1.     I am over the age of eighteen and am fully competent to make this declaration. This declaration is based upon my personal knowledge unless otherwise indicated. I make this declaration in support of Plaintiff's Renewed Motion for Preliminary Approval of Class Action Settlement. If called upon to testify to the matters stated herein, I could and would do so competently.

2.     I am the named plaintiff in the above-captioned matter.

3.     I have been actively involved in this matter throughout its pre-filing investigation and pendency, and have at all times been willing to devote the time and other resources necessary to appropriately represent both myself and the proposed class members in this case.

4.     My purpose for filing and litigating this case, and now in proceeding with the proposed Settlement, is and always has been ensuring that I, along with the other members of the proposed Settlement Class, have the monies we overpaid for the Software Products at issue returned to us and that Defendant does not continue to utilize the same design and marketing practices at issue here in the future.

5.     Prior to filing and throughout the course of this litigation, I have been in regular communication with my counsel—both telephonically and via e-mail—regarding the case generally, my experiences with the Software Products and marketing materials in question specifically, and my views of the claims at issue.

6.     I have also provided my counsel various documents and other information related to the claims at issue here, including, for example, correspondence between myself and Defendant regarding the Software I purchased, and online postings I made regarding my experiences with the Software.

7.     Likewise, I have reviewed and provided comments on numerous other documents in this matter, including, but not limited to, the original class action

complaint and each of the three amended complaints; several of my own declarations, including the instant declaration and my declaration in opposition to Defendant's motion to dismiss the second amended complaint; and, the proposed Stipulation of Class Action Settlement and the Addendum thereto.

8.      At all times, I understood that there was a risk that despite the time and other resources I, along with my counsel, devoted to the litigation, I may ultimately recover nothing for myself or the proposed Class. Nevertheless, I have been ready and willing (and remain so to this day) to dedicate the time and resources necessary to see this case through motion practice, discovery, trial and any appeals.

9.      Indeed, I have on several occasions taken time away from my personal and work commitments to confer with my counsel and review and comment upon various case documents and related matters (as described above) and remain willing to devote still more time as necessary to see the proposed Settlement through preliminary and final approval (or, of course, to proceed with the litigation through judgment and any appeals).

10.     With respect to the terms of the proposed Settlement in this matter, I believe, based upon my own review of the Stipulation of Class Action Settlement and the Addendum thereto, as well as discussions with my counsel, that the monetary payments, changes to the Software Products, and distribution of free antivirus software to the members of the Settlement Class are more than fair, reasonable and adequate to resolve the claims against Defendant in this case. That's especially true when compared to the additional time, other resources, and risks that I understand may be associated with proceeding with the litigation through class certification, trial and any appeals.

DECLARATION OF VIRGINA KULESA       3       CASE NO. 8:12-CV-00725-FMO-AN

1   I declare under penalty of perjury that the foregoing is true and correct.

2   Executed this 26th day of September, 2013 at New York, New York.

3

4   /s/ Virginia Kulesa
    Virginia Kulesa

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 4

1  JAY EDELSON (Admitted *Pro Hac Vice*)
   jedelson@edelson.com
2  RAFEY S. BALABANIAN (Admitted *Pro Hac Vice*)
   rbalabanian@edelson.com
3  BENJAMIN H. RICHMAN (Admitted *Pro Hac Vice*)
   brichman@edelson.com
4  CHANDLER R. GIVENS (Admitted *Pro Hac Vice*)
   cgivens@edelson.com
5  EDELSON LLC
   350 North LaSalle Street, Suite 1300
6  Chicago, Illinois 60654
   Telephone: (312) 589-6370
7  Facsimile: (312) 589-6378

8  SEAN P. REIS (SBN 184044)
   sreis@edelson.com
9  30021 Tomas Street, Suite 300
   Rancho Santa Margarita, California 92688
10 Telephone: (949) 459-2124
   Facsimile: (949) 459-2123

11
   *Attorneys for Plaintiff* VIRGINIA KULESA *and the putative class*
12

13            **IN THE UNITED STATES DISTRICT COURT**

14         **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

15 | VIRGINIA KULESA, individually and | Case No. 8:12-cv-00725-FMO-AN
16 | on behalf of all others similarly situated, |
   |                                | **DECLARATION OF**
17 |            *Plaintiff*,        | **BENJAMIN H. RICHMAN IN**
   |                                | **SUPPORT OF PRELIMINARY**
   |       *v.*                     | **APPROVAL OF CLASS ACTION**
18 |                                | **SETTLEMENT**
19 | PC CLEANER, INC., a California |
   | Corporation,                   | Date: November 7, 2013
20 |                                | Time: 10:00 a.m.
   |            *Defendant*.        | Location: Courtroom 22, 5th Floor
21 |                                | Judge: Honorable Fernando M. Olguin

22

23

24

25

26

27

28

Pursuant to 28 U.S.C. § 1746, I hereby declare and state as follows:

1.      I am over the age of eighteen and am fully competent to make this declaration. I make this declaration based upon personal knowledge unless otherwise indicated. If called upon to testify to the matters stated herein, I could and would do so competently.

2.      I am an attorney at the law firm of Edelson LLC, which has been retained to represent the named Plaintiff in this matter, Virginia Kulesa.

### The Litigation, Negotiations and Settlement.

3.      Just after Plaintiff filed the instant lawsuit, on June 7, 2012, the Parties held an initial meeting (through counsel and via WebEx and teleconference) during which my firm presented our expert's conclusions about the Software Products at issue and their underlying methodologies, and the Parties otherwise discussed their respective views of the case.

4.      During that meeting, PCI's then counsel, who later withdrew from the representation, contended that the Court lacked CAFA jurisdiction due to the purportedly low number of sales of the Software at issue and insisted that the case be dismissed. Although my colleagues and I doubted those assertions, we nevertheless agreed to seriously consider and weigh any competent proof that PCI was willing to provide.

5.      While counsel for the Parties engaged in a series of communications and PCI offered some information regarding its sales, my firm was ultimately unconvinced that the case needed to be dismissed for lack of subject matter jurisdiction. Before any additional discussions could be had, however, PCI's then counsel withdrew from their representation of the company.

6.      Following that, my firm gave the same WebEx presentation to PCI's current counsel, and the Parties began what would be nearly nine months of discussions regarding the potential resolution of this matter.

---

7.      Following briefing on PCI's several motions to dismiss Plaintiff's amended pleadings, Plaintiff served and PCI responded to written discovery requests—including interrogatories and requests for the production of documents and electronic information.

8.      Throughout the litigation and since their initial discussions and Plaintiff's presentations, the Parties kept the lines of communication open and had additional exchanges of information and conversations aimed at exploring their respective views of the case and potential resolution.

9.      Ultimately, in the early part of 2013, the Parties believed they had obtained sufficient information that indicated a resolution may be possible and thus, began more fulsome discussions regarding how a classwide settlement of the Action could be structured. Although the Parties made substantial progress toward a proposed resolution through negotiations between counsel, in the end, they would require a private mediation session before third-party neutral John Bates of JAMS to reach agreement.

10.     The Parties proceeded with a private mediation session before Mr. Bates on May 15th in Los Angeles, California. With his assistance, the Parties reached an agreement in principle as to the primary terms of a classwide settlement that would resolve each of the claims against PCI in the Action related to the alleged fraudulent design and marketing of the Software Products. Notwithstanding, it would take several more months of discussions to finalize all of the ancillary terms and reduce the agreement to writing in the form of their Stipulation of Class Action Settlement (the "Agreement") now before the Court.

11.     Only after the Parties agreed upon the Settlement Benefits to the Class did they negotiate and reach agreement on the amount of proposed Class Counsel's Fee Award and an incentive award to Kulesa as Class Representative, both of which are subject to Court approval.

***Certification of the Settlement Class is Appropriate.***

12.     According to Defendant's own records, tens of thousands of individuals and entities have purchased the Software Products at issue and thus fall into the definition of the Settlement Class.

13.     Plaintiff has the same interests as the other Settlement Class Members—they each have an interest in having the monies they paid for the Software Products that they allege lack the advertised functionality returned and in obtaining the prospective measures necessary to ensure that Defendant's alleged misconduct does not continue into the future.

14.     Simply put, Plaintiff has no interests antagonistic to those of the proposed Settlement Class. As such, Plaintiff has and will continue to fairly and adequately protect the interests of the Class and her pursuit of this action demonstrates as much.

15.     Likewise, proposed Class Counsel and the lawyers at Edelson LLC are well-respected members of the legal community who have extensive experience in class actions of similar size, scope, and complexity to the instant action. We have regularly engaged in major complex litigation involving consumer technology issues in general (and in the utility software industry in particular), have the resources necessary to conduct litigation of this nature, and have frequently been appointed lead class counsel by courts throughout the country.

16.     Particularly relevant here, proposed Class Counsel has in the past and is currently prosecuting numerous class actions related to the alleged fraudulent design and marketing of so-called utility software. *See, e.g., LaGarde, et al. v. Support.com, Inc., et al.*, No. 12-cv-00609-JSC (N.D. Cal.); *Gross v. Symantec Corp., et al.*, No. 12-cv-00154-CRB (N.D. Cal.); *Parker v. iolo Techs., LLC*, No. 12-cv-00984 (C.D. Cal.); *Drymon, et al. v. Cyberdefender Corp.*, No. 11 CH 16779 (Cir. Ct. Cook County, Ill.); *Webb, et al. v. Cleverbridge, Inc., et al.*, No. 11-cv-04141 (N.D. Ill.); *Ledet v. Ascentive, LLC*, No. 11-cv-00294 (E.D. Pa.); *Rottner v. AVG Techs., CZ, s.r.o.*, No. 12-cv-10920 (D. Mass.); *Bilodeau v. McAfee, Inc., et al.*, No. 12-cv-4589-LHK (N.D. Cal.); *Hall v. Tuneup Corp.*,

No. 1:13-cv-1804 (N.D. Ill.); *Heneghan, et al. v. SlimWare Utilities, Inc.*, No. 13-cv-4056 (N.D. Ill.); *Worley v. Avanquest N. Am., Inc.*, No. 12-cv-4391-WHO (N.D. Cal.).

17.     Moreover, to date, proposed Class Counsel have diligently investigated, prosecuted, and dedicated substantial resources to the claims in this Action, and we will continue to do so throughout its pendency.

18.     In particular, proposed Class Counsel has engaged in both formal and informal discovery, briefing on several substantive motions, and several months of arm's-length negotiations, as well as a private mediation. As a result, we have gained a superior understanding of both the factual and legal bases of the claims at issue in this case, and are best equipped to ensure that the Settlement Class receives the best relief possible under the circumstances.

### The Proposed Settlement is Well Within the Range of Possible Approval.

19.     It is proposed Class Counsel's opinion that the process used to reach the proposed settlement was fair and reasonable. That is, despite their initial meetings, discussions, and exchanges of information, the Parties were initially unable to reach a resolution of this matter.

20.     Thus, they proceeded with the litigation and only later determined that resolution was a possibility after briefing on several substantive motions, formal discovery, and additional discussions. Even then, it took a private mediation with Mr. Bates of JAMS to reach agreement on the principal terms of the settlement.

21.     As a result, it is proposed Class Counsel's belief that the agreement and its terms were negotiated by experienced counsel who ensured they had ample information—including Plaintiff's expert's own findings and pre-filing investigation—at their disposal prior to their negotiations and mediation to evaluate the terms of any proposed agreement and to reach a fair and reasonable compromise.

22.     The fairness, adequacy and reasonableness of the Settlement is also supported by the fact that Plaintiff and the Class faced a risk that if they proceeded with the litigation, they may ultimately recover less or nothing at all. Indeed,

Defendant raised numerous legal challenges to Plaintiff's claims throughout the course of the litigation, including, for example, that it has disclaimed any warranties with respect to the design and functionality of the Software and that Plaintiff and the Class are not entitled to injunctive relief because they are not at-risk of any future harm.

23.     Recovery would also ultimately turn on the resolution of several complicated factual issues regarding the underlying source code, design and functionality of the Software Products—e.g., parsing from the code the metrics used by the Software to create its scan reports and the intentions of its developers in writing the code—all of which would be expensive and time consuming and require additional discovery, expert testing and analysis.

24.     And, even if Plaintiff was successful in overcoming those challenges, given the amount at stake and its reputational interests, Defendant was likely to appeal any decision on the merits, thereby delaying (and making uncertain) any recovery for the Class.

25.     By contrast, based upon proposed Class Counsel's own investigation and the information obtained from PCI, we are confident that the monetary component of the Settlement represents close to a full recovery for the Settlement Class. Likewise, PCI's agreement to provide three months of free access to its PC Antivirus Pro software to each Class Member (regardless of whether they make a claim) provides almost $15 in additional value to each Settlement Class Member.

26.     In reaching that determination and the Settlement more generally, the Parties attempted to determine the diminished value of the Software based upon the functions it does perform as compared to those functions Defendant advertised that it could perform and considered that the Software Products are, for example, capable of scanning a computer's Windows Registry and identifying and removing empty registry keys.

27.     With that in mind, Plaintiff and proposed Class Counsel believe that a return of $10 for each Software purchase—which represents approximately a 30%

1   return on the difference between the Software's alleged actual value and the $29

2   average purchase price—is more than adequate and reasonable to compensate

3   Settlement Class Members for the lack of features and disclosures alleged.

4          28.    Separately, Plaintiff and proposed Class Counsel are also confident that

5   the Parties' agreed-upon direct e-mail notice will be particularly effective in this

6   Action given that e-mail was the primary means by which Settlement Class Members

7   communicated with Defendant following their purchase of the Software Products and

8   indeed, e-mail addresses were required before Class Members could complete those

9   purchases. The Settlement Administrator will also use a multi-faceted approach to

10  further ensure the deliverability of the e-mail notice, which procedures have resulted

11  in tremendously successful deliverability rates of upwards of 90% in other similar

12  cases.

13         29.    Ultimately, absent the settlement, the expense, duration, and complexity of

14  protracted litigation would be substantial and require further briefing on numerous

15  substantive issues, further written discovery and depositions—including expert

16  discovery related to the Software Products' underlying functionality—adversarial class

17  certification, and trial preparations. Likewise, in light of the complexity of the issues

18  presented here and the total amount in controversy, the defeated party would likely

19  appeal, further delaying any recovery by the Settlement Class.

20         30.    For all these reasons, Plaintiff and proposed Class Counsel firmly believe

21  that both the prospective and monetary relief obtained for the Settlement Class

22  through the settlement, as well as the manner in which it was attained, weighs heavily

23  in favor of a finding that the settlement is fair, reasonable and adequate, and well

24  within the range of approval.

25         31.    Attached hereto as Exhibit 4-A is a true and accurate copy of the Firm

26  Resume of Edelson LLC.

27              *                    *                    *

28

DECLARATION OF BENJAMIN H. RICHMAN   6        CASE NO. 8:12-CV-00725-FMO-AN

I declare under penalty of perjury that the foregoing is true and correct. Executed this 26th of September 2013 at Chicago, Illinois.

/s/ Benjamin H. Richman
Benjamin H. Richman

# Exhibit 4-A

### EDELSON LLC FIRM RESUME

EDELSON LLC is a plaintiff's class action and commercial litigation firm with attorneys in Illinois, Colorado and California.

Our attorneys have been recognized as leaders in these fields by state and federal legislatures, national and international media groups, the courts, and our peers.  Our reputation for leadership in class action litigation has led state and federal courts to appoint us lead counsel in many high-profile class action suits, including privacy class actions involving comScore, Netflix, Time, Microsoft, and Facebook, numerous Telephone Consumer Protection Act ("TCPA") against companies such as Google, Twentieth Century Fox, and Simon & Schuester, class actions against Citibank, Wells Fargo, and JP Morgan Chase related to reductions in home equity lines of credit, fraudulent marketing cases against software companies such as Symantec, mobile content class actions against all major cellular telephone carriers, the Thomas the Tank Engine lead paint class actions, and the tainted pet food litigation. We have testified before the United States Senate on class action issues and have repeatedly been asked to work on federal and state legislation involving cellular telephony, privacy and other issues. Our attorneys have appeared on dozens of national and international television and radio programs to discuss our cases and class action and consumer protection issues more generally.  Our attorneys speak regularly at seminars on consumer protection and class action issues, lecture on class actions at law schools and are asked to serve as testifying experts in cases involving class action and consumer issues.

### PLAINTIFFS' CLASS AND MASS ACTION PRACTICE GROUP

EDELSON LLC is a leader in plaintiffs' class and mass action litigation, with a particular emphasis on consumer technology class actions, and has been called a "class action 'super firm'".  (Decalogue Society of Lawyers, Spring 2010.)  As recognized by federal courts nationwide, our firm has an "extensive histor[y] of experience in complex class action litigation, and [is a] well-respected law firm[] in the plaintiffs' class action bar."  *In re Pet Food Prod. Liab. Litig.*, MDL Dkt. No. 1850, No. 07-2867 (NLH) (D.N.J. Nov. 18, 2008). A leading arbitrator concurred:   "The proof of [the firm's] experience, reputation, and abilities is extraordinary. . . .  Each [of their cases] elaborates on the experience and unique success [they] have had in achieving leading roles in the area of 'technology consumer protection class actions.'"  (Arbitration award in mobile content class action settlement, August 6, 2009)

In appointing our firm interim co-lead in one of the most high profile cases in the country, a federal court pointed to our ability to be "vigorous advocates, constructive problem-solvers, and civil with their adversaries."  - *In Re JPMorgan Chase Home Equity Line of Credit Litig.*, No. 10 C 3647 (N.D. Ill, July 16, 2010).   After hard fought litigation, that case settled, resulting in the reinstatement of between $3.2 billion and $4.7 billion in home credit lines.

We have been specifically recognized as "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue." *In re Facebook Privacy Litig.*, No. C 10-02389 (N.D. Cal) (order appointing the firm interim co-lead of privacy class action); see also In re Netflix Privacy Litigation, 5:11-cv-00379 (N.D. Cal. Aug. 12, 2011) (appointing the sole lead counsel due, in part, to its "significant and particularly

specialized expertise in electronic privacy litigation and class actions[.]")

Similarly, as recognized by a recent federal court, our firm has "pioneered the application of the TCPA to text-messaging technology, litigating some of the largest consumer class actions in the country on this issue." *Ellison v Steve Madden, Ltd.,* cv 11-5935 PSG (C.D. Cal. May 7, 2013).

We have several sub-specialties within our plaintiffs' class action practice:

***Privacy/Data Loss***

### Data Loss/Unauthorized Disclosure of Data

We have litigated numerous class actions involving issues of first impression against Facebook, Apple, Netflix, Sony, Red Box, Pandora, Sears, Storm 8, Google, T-Mobile, Microsoft and others involving the failure to protect customers' private information, security breaches, and unauthorized sharing of personal information with third parties. Representative settlements and ongoing cases include:

- *Dunston v. comScore, Inc.*, No. 11-cv-5807: Lead counsel in certified class action accusing internet analytics company of improper data collection practices.

- *Resnick v Avmed*, No. 10-cv-24513 (S.D.Fl.): Lead counsel in data breach case filed against health insurance company. Obtained landmark appellate decision endorsing common law unjust enrichment theory, irrespective of whether identity theft occurred.

- *In re Netflix Privacy Litigation*, No. 5:11-cv-00379 (N.D. Cal.): Sole lead counsel in suit alleging that defendant violated the Video Privacy Protection Act by illegally retaining customer viewing information. Case resulted in a $9 million dollar cy pres settlement that has been finally approved (pending appeal).

- *Halaburda v. Bauer Publishing Co.* 12-CV-12831 (E.D. Mich.), *Grenke v. Hearst Communications, Inc.,* 12-CV-14221 (E.D. Mich.), *Fox v. Time, Inc.,* 12-CV-14390 (E.D. Mich.) Consolidated actions brought under Michigan's Video Rental Privacy Act, alleging unlawful disclosure of subscribers' personal information. In a ground-breaking decision, the court denied three motions to dismiss finding that the magazine publishers were covered by the act and that the illegal sale of personal information triggers an automatic $5,000 award to each aggrieved consumer.

- *Standiford v. Palm*, No. 5:09-cv-05719-LHK (N.D. Cal.): Sole lead counsel in data loss class action, resulting in $640,000 settlement.

- *In re Zynga Privacy Litigation,* 10-cv-04680 (N.D. Cal.): Appointed co-lead counsel in suit against gaming application designer for the alleged unlawful disclosure of its users' personally identifiable information to

advertisers and other third parties.

- *In re Facebook Privacy Litigation,* 10-cv-02389 (N.D. Cal.): Appointed co-lead counsel in suit alleging that Facebook unlawfully shared its users' sensitive personally identifiable information with Facebook's advertising partners.

- *In re Sidekick Litig.,* No. C 09-04854-JW (N.D. Cal.): Co-lead counsel in cloud computing data loss case against T-Mobile and Microsoft. Settlement provided the class with potential settlement benefits valued at over $12 million.

- *Desantis v. Sears*, 08 CH 00448 (Cook County, IL): Lead counsel in injunctive settlement alleging national retailer allowed purchase information to be publicly available through the internet.

### Telephone Consumer Protection Act

Edelson has been at the forefront to TCPA litigation for over six years, having secured the groundbreaking *Satterfield* ruling in the Ninth Circuit applying the TCPA to text messages. In addition to numerous settlements totaling over $100 million in relief to consumers, we have over two dozen putative TCPA class actions pending against companies including Santander Consumer USA, Inc., Walgreen Co., Path, Inc., Nuance Communications, Inc., Stonebridge Life Insurance, Inc., UnitedHealth Group, Inc., GEICO, DirectBuy, Inc., and RCI, Inc.. Representative settlements and ongoing cases include:

- *Rojas v CEC*, No. 1:10-cv-05260 (N.D. Ill): Lead counsel in text spam class action that settled for $19,999,400.

- *In re Jiffy Lube Int'l Text Spam Litig*, No. 11-md-2261, 2012 WL 762888 (S.D. Cal. March 9, 2012): Co-lead counsel in $35 million text spam settlement.

- *Ellison v Steve Madden, Ltd.,* cv 11-5935 PSG (C.D.Cal.): Lead counsel in $10 million text spam settlement.

- *Kramer v. B2Mobile, et al,* No. 0-cv-02722-CW (N.D. Cal.): Lead counsel in $12.2 million text spam settlement.

- *Pimental v. Google, Inc*., No. 11-cv-02585 (N.D.Cal.): Lead counsel in class action alleging that defendant co-opted group text messaging lists to send unsolicited text messages. $6 million settlement provides class members with an unprecedented $500 recovery.

- *Robles v. Lucky Brand Dungarees, Inc.*, No. 10-cv-04846 (N.D.Cal.). Lead counsel in $10 million text spam settlement.

- *Miller v. Red Bull*, No. 12-CV-04961 (N.D. Ill.) Lead counsel in preliminary approved $6 million settlement.

- *Woodman et al v. ADP Dealer Services, et al,* 2013 CH 10169 (Cook Cnty Ill.) Lead counsel in $7.5 million text spam settlement.

- *Lozano v. 20th Century Fox,* No. 09-cv-05344 (N.D. Ill):  Lead counsel in class action alleging that defendants violated federal law by sending unsolicited text messages to cellular telephones of consumers.   Case settled for $16 million.

- *Satterfield v. Simon & Schuster*, No. C 06 2893 CW (N.D. Cal.).  Co-lead counsel in in $10 million text spam settlement.

- *Weinstein, et al. v. Airit2me, Inc*., Case No. 06 C 0484 (N.D. Ill):  Co-lead counsel in $7 million text spam settlement.

### *Consumer Technology*

#### **Fraudulent Software**

In addition to the settlements listed below, Edelson LLC has consumer fraud cases pending in courts nationwide against companies such as McAfee, Inc., Avanquest North America Inc., PC Cleaner, AVG, iolo Technologies, LLC, among others. Representative settlements include:

- *Drymon v. Cyberdefender*, No. 11 CH 16779 (Cook County, IL):  Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software.  Case settled for $9.75 million.

- *Gross v. Symantec Corp., et al.*, No. 3:12-cv-00154-CRB (N.D. Cal.) Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software.  Case settled for $11 million.

- *LaGarde, et al. v. Support.com, Inc., et al.* (N.D. Cal.) Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software.  Case settled for $8.59 million.

- *Ledet v. Ascentive LLC* (E.D. Pa.) Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software.  Case settled for $9.6 million.

- *Webb, et al. v. Cleverbridge, Inc.,* et al. (N.D. Ill.) Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software.  Case settled for $5.5 million.

#### **Video Games**

Edelson LLC has litigated cases video game related cases against Activision Blizzard Inc., Electronic Arts, Inc., Google, and Zenimax Media, Inc., and has active litigation pending, including:

- *Locke v. Sega of America*, 13-cv-01962-MEJ (N.D. Cal.)  Pending putative class action alleging that Sega of America and Gearbox Software released video game trailer that falsely represented the actual content of the game.

### Mortgage & Banking

EDELSON LLC has been at the forefront of class action litigation arising in the aftermath of the federal bailouts of the banks.  Our suits include claims that the certain banks unlawfully suspended home credit lines based on pre-textual reasons, and that certain banks have failed to honor loan modification programs.  We achieved the first federal appellate decision in the country recognizing the right of borrowers to enforce HAMP trial plans under state law.  The court noted that "Prompt resolution of this matter is necessary not only for the good of the litigants but for the good of the Country." *Wigod v. Wells Fargo Bank,* N.A., 673 F.3d 547, 586 (7th Cir. 2012) (Ripple, J., concurring).  Our settlements have restored billions of dollars in home credit lines to people throughout the country. Representative cases and settlements include:

- *In re JP Morgan Chase Bank Home Equity Line of Credit Litig.*, 10-cv-3647 (N.D. Ill.):  Court appointed interim co-lead counsel in nationwide putative class action alleging illegal suspensions of home credit lines. Settlement restored between $3.2 billion and $4.7 billion in credit to the class.

- *Hamilton v. Wells Fargo Bank*, *N.A.*, 4:09-cv-04152-CW (N.D. Cal.). Lead counsel in class actions challenging Wells Fargo's suspensions of home equity lines of credit. Nationwide settlement restores access to over $1 billion in credit and provides industry leading service enhancements and injunctive relief.

- *In re Citibank HELOC Reduction Litigation*, 09-CV-0350-MMC. Lead counsel in class actions challenging Citibanks's suspensions of home equity lines of credit. The settlement restored up to $653,920,000 worth of credit to affected borrowers.

- *Wigod v. Wells Fargo*, No. 10-cv-2348 (N.D. Ill.):  In ongoing putative class action, obtained first appellate decision in the country recognizing the right of private litigants to sue to enforce HAMP trial plans.

### General Consumer Protection Class Actions

We have successfully prosecuted countless class action suits against computer software companies, technology companies, health clubs, dating agencies, phone companies, debt collectors, and other businesses on behalf of consumers. In addition to the settlements listed below, Edelson LLC has consumer fraud cases pending in courts nationwide against companies such as Motorola Mobility, Stonebridge Benefit Services, J.C. Penney,

Sempris LLC, and Plimus, LLC. Representative settlements include:

### **Mobile Content**

We have prosecuted over 100 cases involving mobile content, settling numerous nationwide class actions, including against industry leader AT&T Mobility, collectively worth over a hundred million dollars.

- *McFerren v. AT&T Mobility, LLC*, No. 08-CV-151322 (Fulton County Sup. Ct., GA):  Lead counsel class action settlement involving 16 related cases against largest wireless service provider in the nation.  "No cap" settlement provided virtually full refunds to a nationwide class of consumers who alleged that unauthorized charges for mobile content were placed on their cell phone bills.

- *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cook County, Illinois): Lead counsel in class action settlement involving 27 related cases alleging unauthorized mobile content charges.  Case settled for $36 million.

- *Gray v. Mobile Messenger Americas, Inc.*, No. 08-CV-61089 (S.D. Fla.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills.  Case settled for $12 million.

- *Parone v. m-Qube, Inc.* No. 08  CH 15834 (Cook County, Illinois):  Lead counsel in class action settlement involving over 2 dozen cases alleging the imposition of unauthorized mobile content charges.  Case settled for $12.254 million.

- *Williams, et al. v. Motricity*, *Inc. et al.*, Case No. 09 CH 19089 (Cook County, Illinois):  Lead counsel in class action settlement involving 24 cases alleging the imposition of unauthorized mobile content charges. Case settled for $9 million.

- *VanDyke v. Media Breakaway, LLC*, No. 08 CV 22131 (S.D. Fla.):  Lead counsel in class action settlement alleging unauthorized mobile content charges.  Case settled for $7.6 million.

- *Gresham v. Cellco Partnership*, No. BC 387729 (Los Angeles Sup. Ct.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills.  Settlement provided class members with full refunds.

- *Abrams v. Facebook, Inc.,* No. 07-05378 (N.D. Cal.):  Lead counsel in injunctive settlement concerning the transmission of allegedly unauthorized mobile content.

### Deceptive Marketing

- *Van Tassell v. UMG*, No. 1:10-cv-2675 (N.D. Ill):  Lead counsel in negative option marketing class action.  Case settled for $2.85 million.

- *McK Sales Inc. v. Discover Bank*, No. 1:10-cv-02964 (N.D. Ill):  Lead counsel in class action alleging deceptive marketing aimed at small businesses.  Case settled for $6 million.

- *Farrell v. OpenTable*, No 3:11-cv-01785-si (N.D. Cal.):  Lead counsel in gift certificate expiration case.  Settlement netted class over $3 million in benefits.

- *Ducharme v. Lexington Law*, No. 10-cv-2763-crb (N.D. Cal):  Lead counsel in CROA class action.  Settlement resulted in over $6 million of benefits to the class.

- *Pulcini v. Bally Total Fitness Corp.*, No. 05 CH 10649 (Cook County, IL):  Co-lead counsel in four class action lawsuits brought against two health clubs and three debt collection companies.  A global settlement provided the class with over $40 million in benefits, including cash payments, debt relief, and free health club services.

- *Kozubik v. Capital Fitness, Inc.*, 04 CH 627 (Cook County, IL):  Co-lead counsel in state-wide suit against a leading health club chain, which settled in 2004, providing the over 150,000 class members with between $11 million and $14 million in benefits, consisting of cash refunds, full debt relief, and months of free health club membership.

- *Kim v. Riscuity*, No. 06 C 01585 (N.D. Ill):  Co-lead counsel in suit against a debt collection company accused of attempting to collect on illegal contracts.  The case settled in 2007, providing the class with full debt relief and return of all money collected.

- *Jones v. TrueLogic Financial Corp.*, No. 05 C 5937 (N.D. Ill):  Co-lead counsel in suit against two debt collectors accused of attempting to collect on illegal contracts.  The case settled in 2007, providing the class with approximately $2 million in debt relief.

- *Fertelmeyster v. Match.com*, No. 02 CH 11534 (Cook County, IL):  Co-lead counsel in a state-wide class action suit brought under Illinois consumer protection statutes.  The settlement provided the class with a collective award with a face value in excess of $3 million.

- *Cioe v. Yahoo!, Inc.*, No. 02 CH 21458 (Cook County, IL):  Co-lead counsel in a state-wide class action suit brought under state consumer protection statutes.  The settlement provided the class with a collective award with a face value between $1.6 million and $4.8 million.

- *Zurakov v. Register.com,* No. 01-600703 (New York County, NY):  Co-lead counsel in a class action brought on behalf of an international class of over one million members against Register.com for its allegedly deceptive practices in advertising on "coming soon" pages of newly registered Internet domain names.  Settlement required Register.com to fully disclose its practices and provided the class with relief valued in excess of $17 million.

### *Products Liability Class Actions*

We have been appointed lead counsel in state and federal products liability class settlements, including a $30, million settlement resolving the "Thomas the Tank Engine" lead paint recall cases and a $32 million settlement involving the largest pet food recall in the history of the United States and Canada. Representative settlements include:

- *Barrett v. RC2 Corp.*, No. 07 CH 20924 (Cook County, IL):  Co-lead counsel in lead paint recall case involving Thomas the Tank toy trains.  Settlement is valued at over $30 million and provided class with full cash refunds and reimbursement of certain costs related to blood testing.

- *In re Pet Food Products Liability Litig*., No. 07-2867 (D. N.J.):  Part of mediation team in class action involving largest pet food recall in United States history.  Settlement provided $24 million common fund and $8 million in charge backs.

### *Insurance Class Actions*

We have prosecuted and settled multi-million dollar suits against J.C. Penney Life Insurance for allegedly illegally denying life insurance benefits under an unenforceable policy exclusion and against a Wisconsin insurance company for terminating the health insurance policies of groups of self-insureds. Representative settlements include:

- *Holloway v. J.C. Penney*, No. 97 C 4555, (N.D. Ill.):  One of the primary attorneys in a multi-state class action suit alleging that the defendant illegally denied life insurance benefits to the class.  The case settled in or around December of 2000, resulting in a multi-million dollar cash award to the class.

- *Ramlow v. Family Health Plan* (Wisc. Cir. Ct., WI):  Co-lead counsel in a class action suit challenging defendant's termination of health insurance to

groups of self-insureds.  The plaintiff won a temporary injunction, which was sustained on appeal, prohibiting such termination and eventually settled the case ensuring that each class member would remain insured.

### Mass/Class Tort Cases

Our attorneys were part of a team of lawyers representing a group of public housing residents in a suit based upon contamination related injuries, a group of employees exposed to second hand smoke on a riverboat casino, and a class of individuals suing a hospital and national association of blood banks for failure to warn of risks related to blood transfusions. Representative settlements include:

- *Aaron v. Chicago Housing Authority,* 99 L 11738, (Cook County, IL): Part of team representing a group of public housing residents bringing suit over contamination-related injuries.  Case settled on a mass basis for over $10 million.

- *Januszewski v. Horseshoe Hammond*, No. 2:00CV352JM (N.D. Ind.): Part of team of attorneys in mass suit alleging that defendant riverboat casino caused injuries to its employees arising from exposure to second-hand smoke.

The firm's cases regularly receive attention from local, national, and international media. Our cases and attorneys have been reported in the Chicago Tribune, USA Today, the Wall Street Journal, the New York Times, the LA Times, by the Reuters and UPI news services, and BBC International.  Our attorneys have appeared on numerous national television and radio programs, including ABC World News, CNN, Fox News, NPR, and CBS Radio, as well as television and radio programs outside of the United States.   We have also been called upon to give congressional testimony and other assistance in hearings involving our cases.

## GENERAL COMMERCIAL LITIGATION

Our attorneys have handled a wide range of general commercial litigation matters, from partnership and business-to-business disputes, to litigation involving corporate takeovers.  We have handled cases involving tens of thousands of dollars to "bet the company" cases involving up to hundreds of millions of dollars.  Our attorneys have collectively tried hundreds of cases, as well as scores of arbitrations and mediations.

## OUR ATTORNEYS

**JAY EDELSON** is the founder and Managing Partner of EDELSON LLC. He has been recognized as a leader in class actions, technology law, corporate compliance issues and consumer advocacy by his peers, the media, state and federal legislators, academia and courts throughout the country.

Jay has been appointed lead counsel in numerous state, federal, and international class actions, resulting in hundreds of millions of dollars for his clients. He is regularly asked to weigh in on

federal and state legislation involving his cases. He testified to the U.S. Senate about the largest pet food recall in the country's history and is advising state and federal politicians on consumer issues relating to the recent federal bailouts, as well as technology issues, such as those involving mobile marketing. Jay also counsels companies on legal compliance and legislative issues in addition to handling all types of complex commercial litigation.

Jay has litigated class actions that have established precedent concerning the ownership rights of domain name registrants, the applicability of consumer protection statutes to Internet businesses, and the interpretation of numerous other state and federal statutes including the Telephone Consumer Protection Act and the Video Privacy Protection Act. As lead counsel, he has also secured settlement in cases of first impression involving Facebook, Microsoft, AT&T and countless others, collectively worth hundreds of millions of dollars.

In addition to technology based litigation, Jay has been involved in a number of high-profile "mass tort" class actions and product recall cases, including cases against Menu Foods for selling contaminated pet food, a $30 million class action settlement involving the Thomas the Tank toy train recall, and suits involving damages arising from second-hand smoke.

In 2009, Jay was named one of the top 40 Illinois attorneys under 40 by the Chicago Daily Law Bulletin. In giving Jay that award, he was heralded for his history of bringing and winning landmark cases and for his "reputation for integrity" in the "rough and tumble class action arena." In the same award, he was called "one of the best in the country" when it "comes to legal strategy and execution." Also in 2009, Jay was included in the American Bar Association's "24 hours of Legal Rebels" program, where he was dubbed one of "the most creative minds in the legal profession" for his views of associate training and firm management.  In 2010, he was presented with the Annual Humanitarian Award in recognition of his "personal integrity, professional achievements, and charitable contributions" by the Hope Presbyterian Church. Starting in 2011, he has been selected as an Illinois Super Lawyer and, separately, as a top Illinois class action lawyer by Benchmark Plaintiff.

Jay is frequently asked to participate in legal seminars and discussions regarding the cases he is prosecuting, including serving as panelist on national symposium on tort reform and, separately, serving as a panelist on litigating high-profile cases. He has also appeared on dozens of television and radio programs to discuss his cases. He has taught classes on class action law at Northwestern Law School and The John Marshall Law School, and has co-chaired a 2-day national symposium on class action issues.  He has been an adjunct professor, teaching a seminar on class action litigation at Chicago-Kent College of Law since 2010.

Jay is a graduate of Brandeis University and the University of Michigan Law School.

**RYAN D. ANDREWS** is a Partner at EDELSON LLC, and the Chair of the Telecommunications Practice Group. Mr. Andrews has been appointed class counsel in numerous state and federal class actions nationwide that have resulted in nearly $100 million dollars in refunds to consumers, including *Satterfield v. Simon & Schuster, Inc*., No. C 06 2893 CW (N.D. Cal.), *Gray v. Mobile Messenger Americas, Inc*., No. 08-CV-61089 (S.D. Fla.), *Lofton v. Bank of America Corp*., No. 07-5892 (N.D. Cal.), *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cook County, Ill.), *Parone v. m-Qube, Inc*. No. 08 CH 15834 (Cook County, Ill.), and *Kramer v. Autobytel*,

Inc., No. 10-cv-2722 (N.D. Cal. 2010).

In addition, Mr. Andrews has achieved groundbreaking court decisions protecting consumers through the application of the Telephone Consumer Protection Act to emerging text-messaging technology. Representative reported decisions include: Lozano v. Twentieth Century Fox, 702 F. Supp. 2d 999 (N.D. Ill. 2010), *Satterfield v. Simon & Schuster, Inc*. 569 F.3d 946 (9th Cir. 2009), and *Kramer v. Autobytel, Inc*., 759 F. Supp. 2d 1165 (N.D. Cal. 2010), *In re Jiffy Lube Int'l Text Spam Litig*, --- F. Supp. 2d ---, No. 11-md-2261, 2012 WL 762888 (S.D. Cal. March 9, 2012).

Mr. Andrews received his J.D. with High Honors from the Chicago-Kent College of Law and was named Order of the Coif. Recently, Mr. Andrews has returned to Chicago-Kent as an Adjunct Professor of Law, teaching a third-year seminar on Class Actions.  While in law school, Mr. Andrews was a Notes & Comments Editor for The Chicago-Kent Law Review, as well as a teaching assistant for both Property Law and Legal Writing courses. Mr. Andrews externed for the Honorable Joan B. Gottschall in the United State District Court for the Northern District of Illinois.

A native of the Detroit area, Mr. Andrews graduated from the University of Michigan, earning his B.A., with distinction, in Political Science and Communications.

Mr. Andrews is licensed to practice in Illinois state courts, the United States District Court for the Northern District of Illinois, the U.S. Court of Appeals for the Seventh Circuit, and the U.S. Court of Appeals for the Ninth Circuit.

**RAFEY S. BALABANIAN**  is a Partner and the Chair of the Corporate Governance and Business Litigation Practice Group. Rafey's practice focuses upon a wide range of complex consumer class action litigation, as well as general business litigation.

On the plaintiff's side, Rafey has been appointed lead counsel in numerous class actions, including landmark settlements involving the telecom industry worth hundreds of millions of dollars. Rafey has been appointed Class Counsel in nationwide class action settlements against the major wireless carriers, aggregators, and providers of "mobile content," including *Van Dyke v. Media Breakaway, LLC*, No. 08-cv-22131 (S.D. Fla.); *Parone v. m-Qube, Inc*., 08 CH 15834 (Cir. Ct. Cook County, Ill.); *Williams v. Motricity, Inc*., et al., No. 09 CH 19089 (Cir. Ct. Cook County, Ill.); and *Walker v. OpenMarket, Inc., et al*., No. 08 CH 40592 (Cir. Ct. Cook County, Ill.).

On the business side, Rafey has counseled clients ranging from "emerging technology" companies, real estate developers, hotels, insurance companies, lenders, shareholders and attorneys. He has successful litigated numerous multi-million dollar cases, including several "bet the company" cases.

Rafey has first chaired jury and bench trials, mediations, and national and international arbitrations.

Rafey received his J.D. from the DePaul University College of Law in 2005. While in law school, he received a certificate in international and comparative law. Rafey received his B.A. in History, with distinction, from the University of Colorado – Boulder in 2002.

**STEVEN LEZELL WOODROW**  is a Partner and Chair of the firm's Banking and Financial Services Practice Group. Mr. Woodrow focuses his practice on complex national class actions against some of the Country's largest financial institutions. Representative matters include cases against national banks and mortgage servicers for improper loan modification practices, unlawful home equity line of credit ("HELOC") account suspensions and reductions, and claims regarding the misapplication of payments.

Mr. Woodrow delivered the winning oral argument in *Wigod v. Wells Fargo Bank, N.A.* (7th Cir. 2012), the first federal appellate court decision to allow borrowers to challenge bank failures to follow the federal Home Affordable Modification Program ("HAMP") under state law.

Courts have also appointed Mr. Woodrow as class counsel in nationwide class action settlements against cellphone companies, aggregators, and mobile content providers related to unauthorized charges for ringtones and other mobile content, including *Paluzzi v. Cellco Partnership*, *Williams et. al. v. Motricity, Inc.*, and *Walker et. al. v. OpenMarket Inc.*

Mr. Woodrow has also served as an Adjunct Professor of Law at Chicago-Kent College of Law where he co-taught a seminar on class actions. Prior to joining the firm, he worked as a litigator at a Chicago boutique where he tried and arbitrated a range of consumer protection and real estate matters.

Mr. Woodrow received his J.D. High Honors, Order of the Coif, from Chicago-Kent College of Law in 2005. During law school, Mr. Woodrow served as a Notes and Comments Editor for The Chicago-Kent Law Review, competed on Moot Court, and served as President of the Student Bar Association. He additionally spent a semester as a judicial extern for the Honorable Ann C. Williams on the United States Court of Appeals for the Seventh Circuit. Steven received the ALI-ABA Scholarship and Leadership Award for best representing the combination of leadership and scholarship in his graduating class as well as the Lowell H. Jacobson Memorial Scholarship, which is awarded competitively each year to a student from one of the law schools in the Seventh Circuit to recognize personal commitment and achievement.

Mr. Woodrow is admitted to practice in Colorado (2011) and Illinois (2005).

Mr. Woodrow received his B.A. in Political Science with Distinction from the University of Michigan—Ann Arbor in 2002.

**SEAN P. REIS** is Of Counsel to EDELSON LLC.  Sean is an experience trial attorney and business litigator.  Sean has experience in a wide-range of litigation matters, including those involving trade secrets, real estate fraud, employment, and consumer issues.  Sean has tried sixteen cases, including several multi-week jury trials.

Prior to joining EDELSON LLC, Sean was trained at an international law firm and later founded his own practice.  In 1993, Sean graduated from University of California at San Diego with a degree in quantative economics.  Following that Sean graduated from Rutgers University School of Law, Newark, where he was the business editor of the Rutgers Law Review and where he received the graduation for appellate advocacy.

**DAVID DALE** is an Associate at EDELSON LLC, where he focuses on plaintiff's privacy class actions and litigation.

David received his J.D., magna cum laude, from the John Marshall School of Law, where he was a member of the Law Review, Trial Advocacy Council, and a Teaching Assistant for Prof. Rogelio Lasso in several torts courses. While in law school, David served as a judicial extern to the Honorable James F. Holderman, Chief Judge of the United States District Court for the Northern District of Illinois.

David attended the University of Missouri, where he graduated with a B.J. in Journalism in 2004. Prior to choosing law school, David worked in the fields of marketing, advertising and public relations for the University of Missouri.

**CHRISTOPHER L. DORE** is an associate at Edelson and a member of the Technology and Fraudulent Marketing Group. Chris focuses his practice on emerging consumer technology issues, with his cases relating to online fraud, deceptive marketing, consumer privacy, negative option membership enrollment, and unsolicited text messaging. Chris is also a member of the firm's Incubation and Startup Development Group wherein he consults with emergent businesses.

Chris has been appointed class counsel in multiple class actions, including one of the largest text-spam settlements under the Telephone Consumer Protection Act, ground breaking issues in the mobile phone industry and fraudulent marketing, as well as consumer privacy. (*Pimental v. Google, Inc.*, No. 11-cv-02585 (N.D.Cal.); *Kramer v. Autobytel, Inc*. (10-cv-02722-CW); *Turner v. Storm8, LLC*, (09-cv-05234) (N.D. Cal.); Standiford v Palm, Inc. (09-cv-05719-LHK) (N.D. Cal.); and *Espinal v Burger King Corporation*, (09-20982) (S.D. Fla.)). In addition, Chris has achieved groundbreaking court decisions protecting consumer rights. Representative reported decisions include: *Claridge v. RockYou, Inc*. 785 F.Supp.2d 855 (N.D. Cal.), *Kramer v. Autobytel, Inc*., 759 F.Supp.2d 1165 (N.D. Cal.), and *Van Tassell v. United Marketing Group, LLC*, 795 F.Supp.2d 770 (N.D.Ill.). In total, his suits have resulted in hundreds of millions of dollars to consumers.

Prior to joining Edelson, Chris worked for two large defense firms in the areas of employment and products liability. Chris graduated magna cum laude from The John Marshall Law School, where he served as the Executive Lead Articles for the Law Review, as well as a team member for the D.M. Harish International Moot Court Competition in Mumbai, India. Chris has since returned to his alma mater to lecture on current issues in class action litigation and negations.

Before entering law school, Chris received his Masters degree in Legal Sociology, graduating magna cum laude from the International Institute for the Sociology of Law, located in Onati, Spain. Chris received his B.A. in Legal Sociology from the University of California, Santa Barbara.

**CHANDLER GIVENS** is an Associate at EDELSON LLC, where his practice focuses on technology and privacy class actions. His lawsuits have centered on fraudulent software development, unlawful tracking of consumers through mobile devices and computers, illegal

data retention, and data breach litigation.

Chandler leads a group of researchers in investigating complex technological fraud and privacy related violations. His team's research has lead to cases that have helped cause significant reforms to the utility software industry and resulted in tens of millions of dollars to U.S. consumers. On the privacy litigation front, Chandler plays an instrumental role in applying new technologies to federal and state statutes. His briefing of these issues has helped produce seminal rulings under statutes like the Stored Communications Act and establish data breach jurisprudence favorable to consumers.

A frequent speaker on emerging law and technology issues, Chandler has presented to legal panels and state bar associations on topics ranging from data privacy and security to complex litigation and social media. He has been featured on syndicated radio, quoted in major publications such as Reuters and PCWorld, and been an invited Cyberlaw guest lecturer at his alma mater.

Chandler graduated from the University of Pittsburgh School of Law where he was a research assistant for Cyberlaw Professor Dr. Kevin Ashley, and a judicial extern for the Honorable David S. Cercone of the United States District Court for the Western District of Pennsylvania. He graduated cum laude from Virginia Tech, with a B.S. in business information technology, with a focus on computer-based decision support systems. Chandler sits on the ABA committees for Information Security and e-Discovery.

Before joining the legal profession, Chandler worked as a systems analyst. He has also interned at the Virginia Attorney General's Office as well as the U.S. Department of Justice in Washington D.C.

**ALICIA HWANG** is an Associate at EDELSON LLC. Alicia practices in the area of consumer class action and general litigation.

Alicia received her J.D. from the Northwestern University School of Law in May 2012, where she was an articles editor for the Journal of Law and Social Policy. During law school, Alicia was a legal intern for the Chinese American Service League, served as president of the Asian Pacific American Law Student Association and the Student Animal Legal Defense Fund, and was Chair of the Student Services Committee. She also worked as a student in the Northwestern Entrepreneurship Law Clinic and Complex Civil Litigation and Investor Protection Clinic.

Prior to joining EDELSON LLC, Alicia worked as an Executive Team Leader for the Target Corporation, as well as a public relations intern for a tourism-marketing agency in London.

Alicia graduated magna cum laude from the University of Southern California, earning her B.A. in Communication in 2007. She is a member of the Phi Beta Kappa honor society.

**NICK LARRY** is an Associate at EDELSON LLC. Nick practices in the area of consumer class action and general litigation.

Nick received his J.D., cum laude, from Northwestern University School of Law, where he was a senior editor of the Northwestern University Journal of International Law and Business.

Nick attended Michigan State University, where he graduated with a B.A. in General Business Administration/Pre-law in 2008 and played on the school's rugby team.

**MEGAN LINDSEY** is an Associate at EDELSON LLC. Megan practices in the area of consumer class action, focusing on complex class actions in the banking industry.

Prior to joining EDELSON LLC, Megan worked for several years as a commercial loan underwriter and portfolio officer at Merrill Lynch, Pierce, Fenner & Smith. Megan also worked as an analyst in the troubled asset group at Bank of America, helping to monitor and restructure high-risk loans.

Megan received her J.D. from Chicago-Kent College of Law in May 2011. During law school Megan externed for the Honorable Judge Bauer in the Seventh Circuit Court of Appeals and served as Vice President-Evening Division of the Student Bar Association and Vice President of the Moot Court Honor Society. Megan also represented Chicago-Kent at the National First Amendment Moot Court Competition in Nashville, Tennessee and the National Cultural Heritage Law Moot Court Competition in Chicago, Illinois.

Megan graduated with High Honors from DePaul University in July 2005, earning her B.S. in Finance.

**DAVID I. MINDELL** is an Associate at EDELSON LLC. David practices in the area of technology and privacy class actions.

David has worked on cases involving fraudulent software products, unlawful collection and retention of consumer data, and mobile-device privacy violations. David also serves as a business consultant to private companies at all stages of development, from start-up to exit.

Prior to joining EDELSON LLC, David co-founded several technology companies that reached multi-million dollar valuations within 12 months of launch. David has advised or created strategic development and exit plans for a variety of other technology companies.

While in law school, David was a research assistant for University of Chicago Law School Kauffman and Bigelow Fellow, Matthew Tokson, and for the preeminent cyber-security professor, Hank Perritt at the Chicago-Kent College of Law. David's research included cyberattack and denial of service vulnerabilities of the Internet, intellectual property rights, and privacy issues.

David has given speeches related to his research to a wide-range of audiences.

**JOHN OCHOA** is an associate at Edelson LLC, focusing his practice on protecting consumers with a special emphasis on plaintiffs' privacy class action litigation, including cases brought under the Telephone Consumer Protection Act. John prosecutes cases in both state and federal courts at the trial and appellate levels.

John has secured important court decisions protecting the rights of consumers, including Elder v.

Pacific Bell Telephone Co., et al., 205 Cal. App. 4th 841 (2012), where the California Court of Appeals held that consumers may pursue claims against telecommunications companies for placing unauthorized charges on consumers' telephone bills, a practice known as "cramming." John was also appointed class counsel in *Lee v. Stonebridge Life Ins. Co., et al*., --- F.R.D. ---, 2013 WL 542854 (N.D. Cal. Feb. 12, 2013), a case where the Defendants are alleged to have caused the transmission of unauthorized text messages to the cellular telephones of thousands of consumers.

He graduated magna cum laude from the John Marshall Law School in May, 2010 and served as Managing Editor for the John Marshall Law Review. His student Comment, which examines bicycling and government tort immunity in Illinois, appears in Vol. 43, No. 1 of the John Marshall Law Review. While in law school, John externed with Judge Thomas Hoffman at the Illinois Court of Appeals, and competed in the ABA National Appellate Advocacy Competition.

John is active in the Illinois legal community, and serves as Co-Chair of the Membership Committee on the Young Professionals Board of Illinois Legal Aid Online (ILAO). ILAO is a non-profit organization committed to using technology to increase access to free and pro bono legal services for underserved communities throughout Illinois.

He received his B.A. with Honors in Political Science from the University of Iowa in 2004.

**ROGER PERLSTADT** is an Associate at EDELSON LLC, where he concentrates on appellate and complex litigation advocacy.  Roger graduated from the University of Chicago Law School, where he was a member of the University of Chicago Law Review.  After law school, he served as a clerk to the Honorable Elaine E. Bucklo of the United States District Court for the Northern District of Illinois.

Prior to joining the firm, Roger spent several years at a litigation boutique in Chicago where his practice included employment and housing discrimination claims, constitutional litigation, and general commercial matters.  In 2011, he was named a Rising Star by Illinois Super Lawyers Magazine.

Roger also spent time as a Visiting Assistant Professor at the University of Florida Law School where he taught Arbitration, Conflict of Laws, and Employment Discrimination, and has published articles on the Federal Arbitration Act in various law reviews.

**EVE-LYNN RAPP** is an Associate at EDELSON LLC. Eve-Lynn focuses her practice in the areas of consumer and technology class action litigation.

Prior to joining EDELSON LLC, Eve-Lynn was involved in numerous class action cases in the areas of consumer and securities fraud, debt collection abuses and public interest litigation.  Eve-Lynn has substantial experience in both state and federal courts, including successfully briefing issues in both the United States and Illinois Supreme Courts.

Eve-Lynn received her J.D. from Loyola University of Chicago-School of Law, graduating cum laude, with a Certificate in Trial Advocacy. During law school, Eve-Lynn was an Associate Editor of Loyola's International Law Review and externed as a "711" at both the Cook County

State's Attorney's Office and for Cook County Commissioner Larry Suffredin. Eve-Lynn also clerked for both civil and criminal judges (The Honorable Judge Yvonne Lewis and Plummer Lott) in the Supreme Court of New York.

Eve-Lynn graduated from the University of Colorado, Boulder, with distinction and Phi Beta Kappa honors, receiving a B.A. in Political Science.

**BENJAMIN H. RICHMAN** is an Associate at EDELSON LLC and is a member of the firm's Corporate Governance and Business Litigation Practice Group. He handles plaintiff's-side consumer class actions, focusing mainly on technology-related cases, represents corporate defendants in class actions, and handles general commercial litigation matters.

On the plaintiff's side, Ben has brought industry-changing lawsuits involving the marketing practices of the mobile industry, print and online direct advertisers, and Internet companies. He has successfully prosecuted cases involving privacy claims and the negligent storage of consumer data. His suits have also uncovered complex fraudulent methodologies of Web 2.0 companies, including the use of automated bots to distort the value of consumer goods and services. In total, his suits have resulted in hundreds of millions of dollars to consumers.

On the defense side, Ben has represented large institutional lenders in the defense of employment class actions. He also routinely represents technology companies in a wide variety of both class action defense and general commercial litigation matters.

Ben received his J.D. from The John Marshall Law School, where he was an Executive Editor of the Law Review and earned a Certificate in Trial Advocacy. While in law school, Ben served as a judicial extern to the Honorable John W. Darrah of the United States District Court for the Northern District of Illinois, in addition to acting as a teaching assistant for Prof. Rogelio Lasso in several torts courses. Ben has since returned to the classroom as a guest-lecturer on issues related to class actions, complex litigation and negotiation. He also lectures incoming law students on the core first year curriculums. Before entering law school, Ben graduated from Colorado State University with a B.S. in Psychology.

Ben is the director of EDELSON LLC'S Summer Associate Program.

**ARI J. SCHARG** is an associate at Edelson LLC. He handles technology-related class actions, focusing mainly on cases involving the unlawful geo-locational tracking of consumers through their mobile devices, the illegal collection, storage, and disclosure of personal information, fraudulent software products, data breaches, and text message spam. His settlements have resulted in tens of millions of dollars to consumers, as well as industry-changing injunctive relief. Ari has been appointed class counsel by state and federal courts in several nationwide class action settlements, including Webb v. Cleverbridge, et al., 11-cv-4141 (N.D. Ill.), Missaghi v. Blockbuster, 11-cv-2559 (D. Minn.), Ledet v. Ascentive, 11-cv-294 (E.D. Penn.), and Drymon v. CyberDefender, 11 CH 16779 (Cook Cnty, Illinois), and was appointed sole-lead class counsel in Loewy v. Live Nation, 11-cv-4872 (N.D. Ill.), where the court praised his work as "impressive" and noted that he "understand[s] what it means to be on a team that's working toward justice." Ari was selected as an Illinois Rising Star (2013) by Super Lawyers.

Prior to joining the firm, Ari worked as a litigation associate at a large Chicago firm, where he represented a wide range of clients including Fortune 500 companies and local municipalities. His work included representing the Cook County Sheriff's Office in several civil rights cases and he was part of the litigation team that forced Craigslist to remove its "Adult Services" section from its website.

Ari is very active in community groups and legal industry associations. He is a member of the Board of Directors of the Chicago Legal Clinic, an organization that provides legal services to low-income families in the Chicago area. Ari acts as Outreach Chair of the Young Adult Division of American Committee for the Shaare Zedek Medical Center in Jerusalem, and is actively involved with the Anti-Defamation League. He is also a member of the Standard Club Associates Committee.

Ari received his B.A. in Sociology from the University of Michigan – Ann Arbor and graduated magna cum laude from The John Marshall Law School where he served as a Staff Editor for The John Marshall Law Review and competed nationally in trial competitions. During law school, he also served as a judicial extern to The Honorable Judge Bruce W. Black of the U.S. Bankruptcy Court for the Northern District of Illinois.

**BEN THOMASSEN** is an Associate at Edelson LLC. At the firm, Ben's practice centers on the prosecution of class actions cases that address federally protected privacy rights and issues of consumer fraud—several of which have established industry-changing precedent. Among other high profile cases, Ben recently played key roles in delivering the winning oral argument before the United States Court of Appeals for the Eleventh Circuit in *Curry v. AvMed*, 693 F.3d 1317 (11th Cir. 2012) (a data breach case that has, following the Eleventh Circuit's decision, garnered national attention both within and without the legal profession) and securing certification of a massive consumer class in *Dunstan v. comScore*, No. 11 C 5807, 2013 WL 1339262 (N.D. Ill. Apr. 2, 2013) (estimated by several sources as the largest privacy case ever certified on an adversarial basis).

Ben received his J.D., magna cum laude, from Chicago-Kent College of Law, where he also earned his certificate in Litigation and Alternative Dispute Resolution and was named Order of the Coif. At Chicago-Kent, Ben was Vice President of the Moot Court Honor Society and earned (a currently unbroken firm record of) seven CALI awards for receiving the highest grade in Appellate Advocacy, Business Organizations, Conflict of Laws, Family Law, Personal Income Tax, Property, and Torts.

Before settling into his legal career, Ben worked in and around the Chicago and Washington, D.C. areas in a number of capacities, including stints as a website designer/developer, a regular contributor to a monthly Capitol Hill newspaper, and a film projectionist and media technician (with many years experience) for commercial theatres, museums, and educational institutions. Ben received his Bachelor of Arts, summa cum laude, from St. Mary's College of Maryland and his Master of Arts from the University of Chicago.

# Exhibit 5

1
2
3
4
5
6
7
8
9
10
11
12

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

13
14
15
16
17
18
19
20
21

| | |
|---|---|
| VIRGINIA KULESA, individually and on behalf of all others similarly situated, | Case No. 8:12-cv-00725-FMO-AN |
| *Plaintiff,* | **DECLARATION OF CASHIER MYRICKS IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| *v.* | |
| PC CLEANER, INC., a California corporation, | Judge: Honorable Fernando M. Olguin Action Filed: May 4, 2012 |
| *Defendant.* | |

22
23
24
25
26
27
28

### DECLARATION OF CASHIER MYRICKS

I, Cashier Myricks, declare:

1.     I am the principal of PC Cleaner, Inc. ("PC Cleaner"), the Defendant in the above-captioned action.   I submit this Declaration in support of the Motion for Preliminary Approval of Class Action Settlement for the above-captioned matter.

2.     In connection with the settlement of the above-captioned matter, I have examined PC Cleaner's sales records in an effort to determine the number of individual purchases of any version of PC Cleaner Pro 2011, 2012, and 2013.

3.     Based on my examination of PC Cleaner's records, to date there have been more than 450,000 transactions (a) that <u>may</u> have involved the purchase of a copy of a version of PC Cleaner Pro and (b) for which a full refund was not credited to the customer.   The reason PC Cleaner is not able to determine with precision which transactions involved the purchase of a version of the PC Cleaner Pro software is that the transactions were coded rather than being identified by the specific products purchased.  Because of the nature of this coding, it is not possible in many instances to determine whether PC Cleaner Pro was purchased, was provided for free, or was not provided at all.

4.     Based on my examination of PC Cleaner's records (including sales records, refund requests, and communications from purchasers), however, I believe that at least tens of thousands of these transactions did involve a purchase of a version of the PC Cleaner Pro software.  Unfortunately, due to the nature of the records, PC Cleaner is not able to determine which of the transactions involved the purchase of a version of the PC Cleaner Pro software and which did not.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed at ____Newport Beach___, _CA_____, on September 26, 2013.


_____
Cashier Myricks

# Exhibit 6

1
2
3
4
5
6

## IN THE UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA

7  | VIRGINIA KULESA, individually and on behalf of all others similarly situated,

8  | Plaintiff,

9

10 | v.

11 | PC CLEANER, INC., a California corporation,

12 | Defendant.

Case No. 12-CV-00725-FMO-AN

**AMENDED DECLARATION OF MALLORY SANDER**

Judge: Honorable Fernando M. Olguin

Action Filed: May 4, 2012

13

14 Pursuant to 28 U.S.C. § 1746, I hereby declare and state as follows:

15        1.      I, Mallory Sander, am a Project Manager at Epiq Systems, Inc. ("Epiq"). I am over

16 the age of eighteen and am fully competent to make this declaration. I make this declaration based

17 upon personal knowledge unless otherwise indicated. I submit this declaration as an amendment to

18 my previous declaration dated July 16, 2013.

        2.      Epiq was retained to, among other tasks, implement and oversee the Notice Plan in

19 this matter, subject to Court approval, which includes: (i) the establishment of a Settlement

20 Website, and (ii) delivering the Notice to Settlement Class Members via e-mail.

21        3.      With respect to the e-mail Notice contemplated by the Parties' Settlement, Epiq

22 will use a multi-faceted process to ensure that the Notice reaches the greatest number of

23 Settlement Class Members possible, while avoiding spam filters and other potential barriers to

24 delivery of the Notice. The practices and procedures outlined herein are those that Epiq typically

25 uses in the normal course of its work as a settlement administrator, and have been implemented

26 successfully in other similar class actions in the past.

27
28

AMENDED DECLARATION OF MALLORY SANDER   1          CASE NO. 12-CV-00725-FMO-AN

4.      First, Epiq will confirm that the list of Settlement Class Members' e-mails to which
the Notice will be sent is free and clear of any duplicative e-mail addresses.

5.      Second, Epiq will populate the "From" display name and "From" display address in
each e-mail with a name and address easily recognizable by Settlement Class Members (e.g.,
"Kulesa Settlement Administrator" and administrator@kulesasettlement.com). In that way,
Settlement Class Members receiving the e-mail Notice will be able to easily identify from whom
the message was sent.

6.      Third, each e-mail Notice will include an option to and instructions on how
Settlement Class Members may remove themselves from future mailings.

7.      Fourth, Epiq will refrain from the use of punctuation in the subject line of the e-
mail Notice, as certain punctuation (e.g., exclamation points) can cause an e-mail to be marked as
spam. Specifically, the subject line of the e-mails in this case will be "Legal Notice Regarding
Class Action Settlement." Based upon our experience with other notice campaigns involving e-
mail notice, we believe this particular subject line will assist in avoiding spam filters and other
similar hindrances to delivery.

8.      Fifth, Epiq will transmit both a text only and HTML version of the e-mail Notice
simultaneously. This will increase the likelihood that the e-mail will be deliverable.

9.      Sixth, the e-mail Notice will be sent in batches of 50,000, also to avoid spam filters,
which are often activated in response to large bulk mailings.

10.     In the event that e-mail Notices are rendered undeliverable, Epiq will attempt to re-
send the emails.  Such e-mails may be successfully delivered on the second transmission.

11.     In the event that e-mail Notice remains undeliverable after a second attempt, Epiq
will use appropriate third party reverse look-up services to determine current names and mailing
addresses for the individuals with an undeliverable e-mail address, where available. If Epiq,
through the reverse look-up process, is able to locate a valid mailing address, Epiq will mail a
Postcard Notice to the Settlement Class Member.

AMENDED DECLARATION OF MALLORY SANDER   2                CASE NO. 12-CV-00725-FMO-AN

1      12.    Separately, once finalized and posted to the Settlement Website, Settlement Class

2 Members will be able to complete the Parties' proposed online Claim Form by filling in the

3 requested information in text boxes, and selecting options from pull-down menus, check boxes,

4 and/or radio buttons as appropriate. By way of example, in order to indicate their verification that

5 the information inputted to the Claim Form is truthful and accurate, subject to penalty of perjury,

6 Settlement Class Members need only check a box confirming the same.

7      13.    Settlement Class Members will be able to complete the Parties' proposed Opt-Out

8 Form online by filling in the requested information in text boxes, and selecting options from pull-

9 down menus, check boxes, and/or radio buttons as appropriate. Settlement Class Members will

10 also be able to download a copy of the Opt-Out Form from the Settlement Website, which can be

11 mailed to the Settlement Administrator.

12              *            *            *

13      I declare under penalty of perjury that the foregoing is true and correct.

14 Executed this 26th day of September 2013 at Beaverton, Oregon.

15

16                      Mallory Sander

17

18

19

20

21

22

23

24

25

26

27

28